UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*Annabelle Suarez*

_____
Write the full name of each plaintiff.

_____CV_____
(Include case number if one has been assigned)

-against-

*New York County Distric Attorney's Office*
*Nitin Savur*
*Nicole Ortsman·Dauer*
*George Argyros*
*Ina Chen*

_____
Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

Do you want a jury trial?
☒ Yes   ☐ No

# EMPLOYMENT DISCRIMINATION COMPLAINT

---

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

## I.    PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

_Annabelle_                                    _Suarez_
First Name                Middle Initial         Last Name

_301 East 66th Street    Apt. # 7B_
Street Address

_New York_              _NY_              _10065_
County, City                         State              Zip Code

_646.707.4606_                    _asuarez@nyc.rr.com_
Telephone Number                 Email Address (if available)

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1: _Mr. Nitin Savur . EEO Officer & Disability Coordinator_
_New York County District Attorney's Office_
Name

_1 Hogan Place    Rm. 856_
Address where defendant may be served

_New York    NY_              _10013_
County, City                State              Zip Code

Defendant 2: _Ms. Nicole Ortsman - Dauer - EEO Officer & Disability_
_New York County District Attorney's Office_              _Coordinator_
Name

_1 Hogan Place    Rm 859_
Address where defendant may be served

_New York    NY._              _10013_
County, City                State              Zip Code

NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE

DEFENDANT 3: MR. GEORGE AROTROS - HUMAN RESOURCES DIRECTOR & EEO COMPLIANCE COORDINATOR
40 WORTH STREET
NEW YORK NY 10013 (RM. SW 927)

Defendant 4

NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE
MS. INA CHEN - EEO PROGRAM COMPLIANCE, REASONABLE ACCOMMODATIONS & PESH COORDINATOR

Name

40 WORTH STREET (Rm. SE 901)

Address where defendant may be served

NEW YORK          N.Y.          10013

| County, City | State | Zip Code |

## II.  PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE

Name

1 HOGAN PLACE

Address

NEW YORK          N.Y.          10013

| County, City | State | Zip Code |

## III.  CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

**X** **Title VII of the Civil Rights Act of 1964,** 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☐ race: _____

☐ color: _____

☐ religion: _____

☐ sex: _____

☐ national origin: _____

Page 3

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

    My race is: _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

    I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

    My disability or perceived disability is: _____

☒ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

    My disability or perceived disability is: _____

☒ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B.  Other Claims

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☒ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

## IV.   STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

☐ did not hire me

☒ terminated my employment

☒ did not promote me

☒ did not accommodate my disability

☒ provided me with terms and conditions of employment different from those of similar employees

☒ retaliated against me

☒ harassed me or created a hostile work environment

☒ other (specify): _Constructive discharge resulted in the loss of Medical Health Insurance (GHI)_

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

_See attached, corresponding information._

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.   ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☒ Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge? *A charge was filed at the same time*

☐ No  *of case with the NEW YORK DIVISION OF Human Rights (NYDHR) was filed in*

Have you received a Notice of Right to Sue from the EEOC? *JAN/February 2021*

☐ Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice?   *SEPT. 22, 2022*

When did you receive the Notice?   *SEPT. 28, 2022*

☐ No

## VI.   RELIEF

The relief I want the court to order is (check only those that apply):

☐ direct the defendant to hire me

☐ direct the defendant to re-employ me

☐ direct the defendant to promote me

☐ direct the defendant to reasonably accommodate my religion

☐ direct the defendant to reasonably accommodate my disability

☒ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

*The behavior of employer was egregious toward a 24 yr. employee and union delegate (LOCAL SSEU 371) of the New York County DA's office. The employer violated federal wages, overtime compensation, and Reasonable Accommodation priviledges as well as Whistle blower*

*• A. Suarez request back pay and all associated benefits that were denied by employer as well as any other appropriate remedy to address wrongful conduct.*

*retaliatory behavior*

Page 6

## VII.   PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| *12/23/22* | *[signature]* |
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| *ANNABELLE* | | *SUAREZ* |
| First Name | Middle Initial | Last Name |

*301   EAST   66TH   ST.   APT.  7B*
Street Address

| | | |
|---|---|---|
| *New York* | *NY* | *10013* |
| County, City | State | Zip Code |

| | |
|---|---|
| *646. 707. 4606* | *asuarez@nyarr.com* |
| Telephone Number | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☒ No

   If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

As a reminder, please feel free to contact the following **EEO Team Members** for related inquiries and concerns.

## EEO Officer and Disability Coordinator:

**Nitin Savur**
Executive Assistant D.A. for Strategic Initiatives
and Deputy Chief of Trial Division
One Hogan Place, Room 856
212-335-4314
savurn@dany.nyc.gov

The EEO Officer has overall responsibility for the development and monitoring of DANY's Equal Employment Opportunity program. The EEO Officer works with agency executive, managerial and supervisory personnel on the program and its goal of achieving and maintaining equal employment opportunity for all persons. The Agency Disability Coordinator develops and implements programs regarding employers and employees' rights, responsibilities, and obligations under the Americans with Disabilities Act, and other legislation as needed.
EEO Booklet

## EEO Compliance Coordinator / Career Counselor / 55-a Coordinator:

**George Argyros**
Director of Human Resources
40 Worth Street, Room SW927
212-335-9883
argyrosg@dany.nyc.gov

The agency EEO Compliance Coordinator monitors and advises on institutional policies, procedures, operations and activities for compliance with EEO policy, including in such areas as developing and recommending changes, and/or update policies and procedures as needed. The agency Career Counselor ensures that all employees have access to information regarding job responsibilities, performance evaluation standards, examinations, training opportunities and job postings; ensures that all new employees are advised of the EEO policies, their rights and responsibilities under such policies and the discrimination complaint procedures. George Argyros also serves as agency 55-a Coordinator, which assures that efforts the agency has made to employ, promote or accommodate qualified individuals with disabilities, are in compliance with the NYC 55-a program.
55-a Booklet

I regret the lose of dignity at work.   Workplace disparities include but are not limited to:

- professional isolation and alienation of employee resulted in the interference of UNION DELEGATE activity.

- Unreasonable with.holding permission to attend DCAS trainings and/or similar events or submit time-sheets expeditiously.

- disporportimate monitoring of timekeeping & denial of overtime request.

- unreasonable pressure to complete task while denied the ability to work a full time schedule.

- invasion of privacy concerns voiced to EEO, NITIN SAVUR. ie. personal medical documents viewed by ALL of Human Resource Department personnel. via internal-office-portal in place. (see attached)

- experienced an unusual amount of computer connectivity issues when working remotely (unlike my colleagues). Thirty (30) separate incident were identified and reported to unit supervisors and IT department.

- failure of employer to respond to second Reasonable ACCOMMODATION REQUEST of JUNE/2022.

- Interruption of DIRECT DEPOSIT of wages as of OCT 1, 2021.

- Dropped from Medical/HEALTH coverage as of JANUARY 2022.

The conduct in question was both extreme and outrageous because:
1) Annabelle Suarez consulted with EQUAL EMPLOYMENT OFFICER's of the NY District Attorney Office    2.) EEO abused their authority over A. Suarez
3) The union delegate, A. Suarez was particularly vulnerable and
4) The conduct was constant & reckless.

Prior to receiving final approval on your request, make sure that all medical documents are sent to HumanResources@dany.nyc.gov. Until then, the request will remain as "Pending".

| | | | |
|---|---|---|---|
| Name | Suarez, Annabelle | Bureau | WASU Notifications/Property Release |
| Title | Senior Victim Notifications Specialist 3 | Location | One Hogan Place |

## Additional Information

| | | | |
|---|---|---|---|
| Civil Service Title | | Phone | 9521 |
| Supervisor | Woodberry, Renee | Other Phone | x3787 |

## Basis of Reasonable Accomodation Request

**Reason for Request**
- ○ Disability
- ◉ Other
- ○ Pregnancy
- ○ Religion
- ○ Status as Victim of Domestic Violence, Sex Offenses, Stalking

**Other**    High Risk category for contracting Covid-19

**Request Type \***
- ○ Attire
- ○ IT (Equipment)
- ○ Modified Workplace Practice, Policy and/or Procedure
- ○ Reassignment
- ○ Furniture
- ○ Leave Request
- ◉ Other
- ○ Schedule Change

**Other**    Remote work requested

**What is the status of the condition?**
- ○ Permanent
- ○ Temporary
- ◉ Unknown

**Identify the situation which requires accommodation and the condition status \***    Due to ongoing, chronic respiratory health status, I am at an increased risk for severe illness from Covid-19.

**Attachments**

**NOTE:** Do not attach any medical documentation to this form. All medical information should be sent to HumanResources@dany.nyc.gov. Include the Reasonable Accommodation Form request number in the email subject line.

**Please describe how this reasonable accommodation request will assist you perform day-to-day functions in your position**    Notification's dept. work productivity will increase when free from exposure to environmental toxins including Covid-19 exposure ,a currently recognized airborn contagion.

*For Reasonable Accommodations based on Disability you may be required to provide verification by a health professional or a disability service provider (e.g. ACCESS-VR, NYS Commission for the Blind and Visually Impaired).*

*This CONFIDENTIAL documentation should be provided to the Disabilities Rights Coordinator or EEO Officer.*

*Documentation **must**:*

- *Be written on the official letterhead of the qualified health professional or health professional's organization.*
- *Identify the health professional's credentials. e.g., M.D., D.O.*
- *Be dated and signed by the health professional*
- *Describe the severity of the disability and its limitations in detail as they currently exist and only in relationship to the job.*
- *State whether the duration of disability is permanent or temporary or unknown*
- *If temporary, specify the date the disability is expected to no longer require accommodation*
- *Indicate the extent to which the accommodation will permit you to perform the essential functions of the job or to enjoy the benefits and privileges of employment.*

☑   Agree    I certify that I have read and understood the information provided in this request, and that it is true to the best of my knowledge, information and belief.

Date    Monday, October 26, 2020

Comments

| Close |
| --- |

## Audit History

Action

From: "nyc.rr.com log in" <asuarez@nyc.rr.com>
To: "healthbenefits@olr.nyc.gov" <healthbenefits@olr.nyc.gov>
Cc:
Bcc:
Priority: 3
Date: Tuesday August 9 2022 1:16:04PM
Assistance with continuity of Health Coverage (GHI)

Sent from Mail for Windows

Good Afternoon,

I require information regarding continued Health Coverage.  After 24 years of NYCity service, I was dropped from The City of New York Health Benefits Program effective Jan. 20, 2022.   I suspect I may have required a form from  my employers' Human Resources  department.  Please advise.

I am 63 years of age and I do not yet qualify for Medicare benefits.

A NYCERS represenitve suggested I call Retiree Health Benefits number, 212 513-0470.  That number led me to the email address above.

Respectfully requesting assistance.

Annabelle Suarez

301 East 66th Street #7B

New York, NY 10065

cell (646) 707- 4606

asuarez@nyc.rr.com

From: asuarez@nyc.rr.com
To: "argyrosg@dany.nyc.gov" <argyrosg@dany.nyc.gov>
Cc: "ASuarez@nyc.rr.com" <ASuarez@nyc.rr.com>
Bcc: "lsuareznyc@yahoo.com" <lsuareznyc@yahoo.com>
Priority: Normal
Date: Monday March 14 2022 12:16:30PM
Annabelle Suarez- Health Insurance Change Form and Retirement inquiry w/ HR Dept. of Dec. 2021

*George Aegreos is the HR Director*

Good day George,

I hope you and yours are fairing well in the New Year 2022.

I retrieved your voice message of Sun. March 13, 2022 at 6:54pm. Thank you for acknowledging my voice mail message of Fri.(3/11) afternoon where I voiced serious concerns regarding the discontinuance of Health Insurance coverage. Per provider; Emblem Health members services (212) 501 4444, medical insurance was discontinued on Jan. 20th 2022.

On the advice of SSEU Local 371, Retirement Specialist, Dennis Deahn I contacted you on or about Dec. 7th 2021 to request assistance with Health Insurance Change Form (from employee to retiree). In our telephone conversation I requested Section J be filed. You reassured me that you are well versed in the process and indicated you "have done this hundreds of times."

Given that December 2021 conversation, I am hopeful the medical benefits for my family can be reactivated as soon as possible (see attached IRS Form).



As you are aware George, six months have passed since my last contact with DANY EEO personnel, a call back from the office does not appear likely. (see attached). As such; I've been forced to explore retirement options.

In our phone discussion on or about Dec.7th 2021, I voiced an interest in "buying back" New York City service time for a more favorable NYCERS retirement package.  I am finalizing those steps and would appreciate any advice from you or an assigned Benefits Coordinator with the office.

As both Health Insurance and Retirement assistance are extremely time sensitive matters, your prompt attention will be appreciated.
Annabelle Suarez

c 646 707 4606
asuarez@nyc.rr.com



**Mail Completed Forms to:**
30-30 47th Avenue, 10th Fl
Long Island City, NY 11101



Save time by applying online.
Log in/register at www.nycers.org



NYCERS USE ONLY

**F521**

## Application for Service Retirement
## Tier 2, 3, 4 and 6 Members

This application is for Tier 2, 3, 4 and 6 members who wish to apply for Service Retirement. Before filing this application with NYCERS, you must check with your agency to determine your last day of pay. This application also allows you to elect one of four temporary options before you elect a permanent option and thereby make a final decision regarding the way in which your retirement benefit will be paid. If you wish to elect a different option, please register for/log in to your MyNYCERS account at www.nycers.org and submit an online Service Retirement Application.

By electing a temporary option, you protect your beneficiary/beneficiaries during the period between your effective retirement date and the date NYCERS receives your Final Retirement Option Election (the "Interim Period"). If you die during the Interim Period, the beneficiary you name below will receive a continuing benefit after your death. **Please carefully read the instructions below and on the last page before completing this form. Sign the form and have it notarized on page 4.**

You must return all pages of this form even if you intentionally left any of them blank. Do not alter anything on this form, as that will render it invalid. **NOTE: If the address you provide on this form is different from your address in NYCERS' system, the new address will become your official address in NYCERS' records.** Contact NYCERS' Call Center at (347) 643-3000 if you have any questions.

> **No advance (partial) pension payment will be sent to you until NYCERS has acceptable proof of your identity and birthdate on file. (See Fact Sheets #709 and #711, available at www.nycers.org, for details.)**

| Member Number | Last 4 Digits of SSN | Home Phone Number | Date of Birth [mm/dd/yyyy] |
|---|---|---|---|
| 6 4 7 0 9 9 | 7630 | 212 249-0511 | 05/02/1959 |

| First Name | M.I. | Last Name |
|---|---|---|
| ANNABELLE | | SUAREZ |

| Address | Apt. Number |
|---|---|
| 301 EAST 66TH STREET | 7B |

| City | State | Zip Code |
|---|---|---|
| NEW YORK | NY | 10065 |

| Agency | Title |
|---|---|
| NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE | 56057 |

I hereby apply to retire from City service, taking effect on  03/21/2022 , with my retirement allowance to begin on the effective date of my retirement, or on the initial date of payability, whichever is later.

### Temporary Options

**Tier 2 members:** If you do not elect a temporary option and you die during the Interim Period, you will be deemed to have elected Option 1 - Return of Annuity Reserve as your temporary option and your membership contributions plus accumulated interest will be paid to the beneficiary/beneficiaries NYCERS has on file for you.

**Tier 3, 4 and 6 members:** If you do not elect a temporary option and you die during the Interim Period, you will be deemed to have elected the Maximum Retirement Allowance as your temporary option and your pension will cease upon your death.

### Temporary Option Election

This form allows you to elect either the Maximum Retirement Allowance, or one of three temporary options: the 100% Joint-and-Survivor Option, the Five-Year Certain Option, or the Ten-Year Certain Option. Please read the descriptions of each option

then choose **only one.** You are required to provide information about your beneficiary/beneficiaries following the option you have elected. Use your beneficiary's given name (e.g., Mary Smith, not Mrs. John Smith).

• If you choose the 100% Joint-and-Survivor Option, you may designate **only one beneficiary.** Under this option, NYCERS requires proof of birthdate for your beneficiary as well as additional valid documentation, such as a marriage certificate(s), for all names that your beneficiary has been known by that are different from the name on the birthdate evidence you submit.

• If you choose the Five- or Ten-Year Certain Option, you may designate **one primary and one contingent beneficiary.** Birthdate evidence for your beneficiary is not required. Tier 2 and 3 members may designate their Estate for the Five- or Ten-Year Certain Option (see page 3); Tier 4 and 6 members may not.


340 Jay Street, Bklyn, NY
Mezzanine level


Forms, Brochures,
Fact Sheets at
www.nycers.org


Upload Documents at
www.mynycers.org


(347) 643-3000
M - F, 8am to 5pm


30-30 47th Avenue, 10th Fl,
Long Island City, NY 11101

 

**NYCERS**
NYC Employees' Retirement System

# FOR YOUR INFORMATION: YOUR DATE OF RETIREMENT HAS CHANGED

5421183
ANNABELLE SUAREZ
301 EAST 66TH STREET
APT #7B
NEW YORK, NY 10065

15041 - 702

March 25, 2022

**Member # 647099**

Dear Annabelle Suarez:

The New York City Employees' Retirement System (NYCERS) received your Application for Service Retirement on March 21, 2022. You indicated your effective date of retirement as March 21, 2022.

Upon reviewing your records, NYCERS changed the effective date of your retirement for the reason shown below.

☐ As a Tier 4 member of this system, the earliest date you can retire is the date we receive your application; therefore, your effective date will be _____.

☑ Your last day on payroll was September 20, 2021. Your effective retirement date has been changed to September 21, 2021, the day **after** your last day paid.

☑ Other: Your agency records states your ceased date of employment is 9/21/21 your retirement date.

If you have any further questions, please contact our Call Center at (347) 643-3000 or visit our Customer Service Center at 340 Jay Street, Brooklyn, NY 11201.

Sincerely,

Retirement Eligibility and Vesting

340 Jay Street, Bklyn, NY
Mezzanine level

Forms, Brochures,
Fact Sheets at
www.nycers.org

Upload Documents at
www.mynycers.org

(347) 643-3000
M - F, 8am to 5pm

30-30 47th Avenue, 10th Fl.
Long Island City, NY 11101

WE ARE YOUR DOL

**NEW YORK STATE** | **Department of Labor**

Kathy Hochul, Governor
Roberta Reardon, Commissioner

**Darren Mrak**
Program Manager 1
Department of Labor
109 South Union Street, Room 402
Rochester, N.Y. 14607
darren.mrak@labor.ny.gov

October 8, 2021

Annabelle Suarez
301 East 66th Street apt. 7B
New York, NY 10065

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
First Class Mail
7016 0600 0000 8631 2800
9590 9402 5202 9122 1287 69

**Re: Suarez v. NY County District Attorney's Office**
**Case Number:  30563621**

Dear Annabelle Suarez:

The New York State Department of Labor Public Employee Safety and Health Bureau (PESH) received your complaint regarding alleged safety and health discrimination in your workplace under section 27-a (10) of the New York State Labor Law on October 4, 2021. In order to proceed with this investigation, please complete and return the enclosed complaint questionnaire within five business days, (10/18/2021) by mail, email, or fax.  You should include any information that you feel is pertinent and not covered in the questionnaire. Your questionnaire will be shared with your employer for their response to your allegations. Please send the completed, signed questionnaire, the release form, and the designation of representative form (if needed) to:

Darren Mrak
New York State Department of Labor | PESH
109 South Union Street, Room 402
Rochester, NY 14607
darren.mrak@labor.ny.gov  Fax: 585-258-4593

Please save any evidence bearing on your complaint such as notes, minutes, discharge slips, pay stubs, etc., and have them ready as needed during the investigation. Every effort will be made to thoroughly review and evaluate your complaint as expeditiously as possible. Your continued cooperation is critical to ensure as complete an investigation as possible.  It is your responsibility to advise the investigator of any changes in your address and/or telephone number.

Sincerely,

Darren Mrak, Program Manager 1

**NYS DEPARTMENT OF LABOR**
**PESH DISCRIMINATION QUESTIONNAIRE**

Instructions: Print or type each answer in black or blue ink.  Answer each question completely.  If you need additional space write on the back of the page or attach sheets as needed.  Be sure to include copies of any documents you feel are pertinent to your case.  Please make sure that you sign and date **this** questionnaire before you return it.  Please answer the questions to the best of your knowledge. **Do not, however, initiate your own investigation.  Any questions which you cannot answer should be left blank.  This document must be returned to the investigator within five (5) days.**

1 Name: _Annabelle_ _Suarez_ Date: _10/18/2021_
    (First)    (MI)    (Last)

Home Address: _301 East 66th Street Apt. # 7B_
    (number)    (street)    (apt.#)

City: _New York_ State: _NY_ Zip Code: _10065_

Date of Birth _5-2-1959_

Date of Hire _9-8-1997_

Telephone Number/s (include area code):

Home _212.249.0511_

Work _____

Cell _646.707.4606_

Other _____

E-Mail Address _asuarez@nycrr.com_

**Name and Phone # of your Union Representative**

_Ms. Qadira Miguel_ _(646) 937.1053_ _Union Organizer_

2- Employer : _Social Services Employees Union (SSEU) Local 371_

Employer Address: _1501 Broadway, Suite 450_
    (number)    (street)

City: _New York_ State: _NY_ Zip Code: _10036_

Phone _____

Name of contact person, title and phone

# _____

**3-** Address of where do you report to work? If different from above

*NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE · 1 Hogan Place NY, NY 10013*

**4-** How many employees work at your work place?  *200 +*

**5-** What type of facility is this? i.e. Highway, Parks, School, Social Service, .DPW

*CRIMINAL JUSTICE AGENCY*

**6-** What was your first date of employment in your current
position?  *4·15·2014*

If applicable; When was your last date of employment?  *forced "leave of absence" status.*

Were you on probation?  *NO*

**7-** What department do/did you work in?  *WITNESS AID SERVICES UNIT, NOTIFICATION DEPT.*

a. What is/was your job title?  *SENIOR VICTIM NOTIFICATION SPECIALIST*

b. Briefly describe your duties  *- Contact victims and witnesses to obtain supporting depositions*
*- inform victims of the wide range of services available*
*- explain the criminal justice system & provide case information.*
*- assist w/ ORDERS OF PROTECTION & Inmate release status.*
*- liaise with witness and Assistant District Attorneys.*

**8- What retaliatory action was taken against you?** For example: Termination,
Suspension, Loss of overtime, Other action that resulted in loss of pay, Disciplinary
procedures, Harassment, etc
**(Attach additional sheets if necessary)**  *- Employer determined use of personal*
*accrued vacation and sick leave, resulting*
*in lost time & wages. Employee was denied all*
*request for OVERTIME compensation.*
*✱ In, A. Suarez's role as a UNION Delegate, she requested HEALTH/SAFETY*
*evaluation reports from 2016 to the present from Human Resources dept.*
*EEO officers & Bureau Chief assigned to oversee operations.*
*NO REPORTS re: HEALTH & SAFETY were forthcoming.*

**9- When did your employer take this action?**  *see supplemental pkt.*

**10- Who took this action against you?**  *Executive & supervisory personnel.*

From: asuarez@nyc.rr.com
To: "ASuarez@nyc.rr.com" <ASuarez@nyc.rr.com>
Cc:
Bcc:
Priority: Normal
Date: Monday October 18 2021 6:30:32PM
FW: New Message

## REBUTTAL BULLET POINTS:

- NYSDHR Complaint is Not an employee performance review.

- Employer continues to not acknowledge how they have misapplied FFCRA to address Reasonable Accommodation Request.

- On the Reasonable Accommodation application provided by the employer, there was and is no indication or explanation that when applied the employer would be approved for FFCRA.

- The option "OTHER" was chosen on the Reasonable Accommodation application because there are no options for telework/remote working

- Please note, on the October 22, 2020 email from Katricia Cunningham (please see attached), I was approved to only work remotely, until my application was completed and fully submitted.

- During this time, I was not permitted to report to my work location and was temporarily given access to work remotely (Monday to Friday, 9 am to 5pm) until my application was fully submitted.

- After I submitted my application fully, I was then told I had been approved for FFCRA.

- Please see the all relevant emails requesting clarification from Unit Director, Mildred Silvie, and SSEU Local 371 regarding serious and punitive conflict of interest concerns re. Reasonable Accommodation Request.

- Please note, the Zoom meeting of Oct 28, 2020 was specifically to discuss the determination of a Reasonable Accommodation Request (RAR), submitted in the format prescribed by Employer. The Employer behaved in a deceptive manner when instituting a policy (FFCRA) that was not intended to address the RAR disability needs of the employee, A.Suarez.

- On October 28, 2020, employee A. Suarez was informed she had been approved for a reasonable accommodation to work remotely from home. Ms. Suarez could not have requested FFCRA as she was unaware of such a policy. Via telephone, Mr. Nitin Savur and Mr. George Argyros discussed this for the very first time.

- According to Families First Coronavirus Response Act: Employee Paid Leave Rights:

   Qualifying Reasons for Leave:

   Under the FFCRA, an employee qualifies for paid sick time if the employee is unable to work (or unable to telework) due to a need for leave because the employee:

   1. is subject to a Federal, State, or local quarantine or isolation order related to COVID-19;

   2. has been advised by a health care provider to self-quarantine related to COVID-19;

   3. is experiencing COVID-19 symptoms and is seeking a medical diagnosis;

4.  is caring for an individual subject to an order described in (1) or self-quarantine as described in (2);

5.  is caring for a child whose school or place of care is closed (or child care provider is unavailable) for reasons related to COVID-19; or

6.  is experiencing any other substantially-similar condition specified by the Secretary of Health and Human Services, in consultation with the Secretaries of Labor and Treasury.

- According to FFCRA, the employee is eligible as a result of a need for leave. The Employee does not require leave or requested leave due to the qualifications above.

- Employer is **deliberately** placing employee on leave and on a separate work schedule, to report to the office. Why place employee on a separate work schedule to come in to the office, when employee is instructed to take the day off?

- Nowhere in the Families First Coronavirus Response Act: Employee Paid Leave Rights, does it state an employer has the right to take an employee's personal time, place the employee on "leave," or create a separate schedule to deliberately create a leave of absence for the employee

- Employer is misapplying FFCRA to their own advantage to punish, interfere with the employee's work duties, and place the employee in financial burden

- If approved to not come in, why place me on a work schedule to come in?

- On October 28, 2020, Ina Chen sent all supervisors an email advising them of an approval for FFCRA leave.

- According to my employer I would be placed on a separate schedule (please see schedules attached) to report to the office

- On the days the employee is placed on the calendar, the employee is asked to take leave

- Employer is misapplying and misinterpreting Reasonable Accommodation, under American Disability Act by forcing employee to be "approved" for FFCRA, therefore, denying reasonable accommodation

- On October 28, 2020 (please see email attached), employer advised supervisors that I have been approved for FFCRA - there was no application submitted by me for FFCRA - the application I filed out was a Reasonable Accommodation application.

- DANY has not accommodated employee reasonably.

- In order for employee to be more efficient in her work duties, it is necessary for me to continue working remotely, Monday to Friday, 9 am to 5 pm

- As a full time employee, employee is only permitted to work 3 to 4 times each week under the employers approval of FFCRA

- On average, employee's colleagues who work remotely and are asked to report to the office, work 5 days a week, that is approximately 20 days out of each month

- The schedule imposed by employer (under the approval of FFCRA), does not allow employee. A. Suarez to fulfill her full- time work duties.

- Employer takes away personal time and full-time work schedule yet continues to uphold her to the same work standards of her full time colleagues not subjected to FFCRA.

- The employee is forced to use my sick leave whenever supervisors create a separate work schedule with her name on it

- After exhausting sick leave balance, the employee is forced to use annual leave

- Employee has acquired her personal time over the 24 years at DANY.

- Employer does not have authority to dictate and instruct how and when her personal time should be used under any circumstances.

- Employer is retaliating against employee for protecting her health and family health during these troubled times.

- Employee's family has been impacted by the CoronaVirus Pandemic and employer chooses to create a climate of emotionally, mentally and financially instability.

- Employee, A. Suarez has experienced disparate treatment.  While another colleague (D. Filipowicz) in the same unit was approved a Reasonable Accommodation as a result of mobility challenges not related to Covid-19.

- Per employers own admission the cases A. Suarez works on are time sensitive and require full time work, Monday through Friday.

- *According to Employers own job posting (please see below), the majority of work duties are satisfied remotely, by the use of phone and emailing:

Responsibilities include but are not limited to:

   * Contact victims and witnesses to obtain a supporting deposition. -> use of phone or email

   * Inform victims of the wide range of services available to them through WASU. -> use of phone or email

   * Explain the criminal justice system and provide case information. -> use of phone or email

   * Assist victims with orders of protection and registration for notification of inmate release. -> use of phone or email

   * Liaise with victims and Assistant District Attorneys. -> use of phone or email

- Out of the 6 work duties and responsibilities, my employer is asking me to take a day off and use my personal time for the work duty below:

 * Perform related administrative duties as assigned.

- This includes receiving and sending mail for other colleagues who are printing the documents from home, remotely. Lastly, Printing out supporting depositions (for another entity at work to come in and pick up), and answering the department's main number.

- The majority of employee's work duties/responsibilities is 98% effective working from home. For reference, please check attached screenshot of employee caseload.)

If the employee was approved to NOT to come in, why place her on a work schedule TO come in?

I regret DANY has undermined my right to dignity at work while I abide by work-place policies and procedures prescribed by the Support Staff Employee Handbook and the incorporation of a 24 year employment history with

DANY.

This is evidenced by;

-isolation from team members and exclusion from Zoom meetings.

-denied numerous request for overtime compensation.

-experienced an unusual amount of computer connectivity issues, unlike my colleagues performing the same remote-work office function.

-failure to approve timely submission of NY City Time - timesheet(s).

-failure to address 2nd Reasonable Accommodation Request of June 29th, 2021.

-Loss of wages, Loss of employment and consequently medical insurance (especially egregious given the persistent and serious Health concerns A. Suarez faces with clinical diagnosis of respiratory failure.)

*Position Summary:The New York County District Attorney's Office (DANY) has an immediate opening for a Victim Notification Specialist in the Witness Aid Service Unit (WASU). In this position the Victim Notification Specialist is responsible for obtaining signed supporting depositions, assisting victims in understanding the criminal justice system, and provides information regarding crime victims' rights.

Responsibilities include but are not limited to:

* Contact victims and witnesses to obtain a supporting deposition.

* Inform victims of the wide range of services available to them through WASU.

* Explain the criminal justice system and provide case information.

* Assist victims with orders of protection and registration for notification of inmate release.

* Liaise with victims and Assistant District Attorneys.

* Perform related administrative duties as assigned.

Qualifications:* Training and or experience in customer service and advocacy preferred.* Experience working with crime victims preferred.* Experience working with victims of domestic violence, sexual assault and or human trafficking preferred.* Familiarity with the criminal justice system preferred.* Ability to demonstrate a high level of confidentiality and sensitivity to victim issues.* Must be able to perform under pressure in a fast paced environment; must be detail oriented self motivated, able to multi task, and high concern for data accuracy.* Dependable team player who works collaboratively and cooperatively with staff in a team oriented environment.* Strong organizational and computer skills.* Ability to follow directions and apply proper policies, procedures, and guidelines.* Ability to handle high caseload and set priorities.* Ability to interact effectively with victims, witnesses, Assistant District Attorneys, law enforcement officers, and criminal justice personnel.* Ability to work overtime and flexible hours including holidays, evenings, and weekends.Educational Requirements:* Bachelor's degree required (in social services, preferred).

ANNABELLE SUAREZ,

In her rebuttal, the complainant states that there has been a violation, misapplication and misinterpretation of her request for a reasonable accommodation covered by the Americans for Disabilities Act ("ADA") by the respondent. She states that the respondent has misapplied the FFCRA and the FMLA. She states that she has the necessary equipment to perform the essential duties of her job from home. She says that her entire unit has functioned exceptionally well while working remotely.

Moreover, the respondent has already made the necessary staffing adjustments to ensure that there is in-person staffing in her unit. She can work remotely and has been working remotely since March 2020. She states that according to the qualifications set forth in the FFCRA/FMLA, she does not require leave nor has she requested leave; that the respondent is placing her on leave by placing her on a work schedule that gradually decreases her sick and annual leave balances.

# EMPLOYEE RIGHTS
## PAID SICK LEAVE AND EXPANDED FAMILY AND MEDICAL LEAVE UNDER THE FAMILIES FIRST CORONAVIRUS RESPONSE ACT

The **Families First Coronavirus Response Act (FFCRA or Act)** requires certain employers to provide their employees with paid sick leave and expanded family and medical leave for specified reasons related to COVID-19. These provisions will apply from April 1, 2020 through December 31, 2020.

### PAID LEAVE ENTITLEMENTS
**Generally, employers covered under the Act must provide employees:**

Up to two weeks (80 hours, or a part-time employee's two-week equivalent) of paid sick leave based on the higher of their regular rate of pay, or the applicable state or Federal minimum wage, paid at:

- 100% for qualifying reasons #1-3 below, up to $511 daily and $5,110 total;
- ⅔ for qualifying reasons #4 and 6 below, up to $200 daily and $2,000 total; and
- Up to 12 weeks of paid sick leave and expanded family and medical leave paid at ⅔ for qualifying reason #5 below for up to $200 daily and $12,000 total.

A part-time employee is eligible for leave for the number of hours that the employee is normally scheduled to work over that period.

### ELIGIBLE EMPLOYEES
In general, employees of private sector employers with fewer than 500 employees, and certain public sector employers, are eligible for up to two weeks of fully or partially paid sick leave for COVID-19 related reasons (see below). *Employees who have been employed for at least 30 days* prior to their leave request may be eligible for up to an additional 10 weeks of partially paid expanded family and medical leave for reason #5 below.

### QUALIFYING REASONS FOR LEAVE RELATED TO COVID-19
An employee is entitled to take leave related to COVID-19 if the employee is unable to work, including unable to telework, because the employee:

| | |
|---|---|
| **1.** is subject to a Federal, State, or local quarantine or isolation order related to COVID-19; | **5.** is caring for his or her child whose school or place of care is closed (or child care provider is unavailable) due to COVID-19 related reasons; or |
| **2.** has been advised by a health care provider to self-quarantine related to COVID-19; | **6.** is experiencing any other substantially-similar condition specified by the U.S. Department of Health and Human Services. |
| **3.** is experiencing COVID-19 symptoms and is seeking a medical diagnosis; | |
| **4.** is caring for an individual subject to an order described in (1) or self-quarantine as described in (2); | |

### ENFORCEMENT

---------------------------------------------

From: asuarez@nyc.rr.com
To: "Jill@kmlaw.net", "Jeff@kmlaw.net"
Cc:
Sent: Tuesday April 27 2021 12:55:13PM
Subject: NYS DHR Rebuttal

It is the position of Annabelle Suarez that the policy set forth by the employer DANY to address a Reasonable
Accommodation Request RAR is flawed and results in disparate impact.

If an alternative employment practice exist and the employer refuses to adopt or consider the alternative practice an
unlawful employment practice of harassment and discrimination has occurred. It is worth noting, that at least two
employees in the same unit have not suffered the same injury.

Harassment becomes unlawful when enduring the offensive conduct becomes a condition of continued employment and
the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider
intimidating, hostile or abusive.

The employer should be liable for employment harassment if the employer knew or should have known the employee
will suffer injury and failed to take prompt and appropriate corrective action.

Since the implementation and misapplication of the Family First Corona Relief Act, the employee has lost over 343
hours of personal accrued time. The DANY Support Staff Employee Handbook governing 'sick leave' does not support
this use of an employees accrued sick leave, nor does it allow the employer to determine or dictate when an employees
personal-accrued-time should be used or applied.(see sick leave policy)

An inherent inequity exists. Please review previous incidents where a pattern or practice of discrimination was noted. In
the enclosed attachment (disparate treatment) the employee voiced a serious wage concern, was invited to a discuss with
the Bureau Chief/ EEO Coordinator and HR Dept., and involuntarily transferred to a different work-site and completely
different job duties after 16years in her position.
In the second example the employee appealed to the Conflict of Interest Officer, B. Sard, with a procedural concern.
The third example illustrates (via memos) the unit's intention to increase wages and assign new work titles. The
employee, was denied this opportunity unlike her colleagues.

The very position statement from the office includes emails that demonstrate disparate treatment. The reporter indicates
that the employee was compensated for the three days she lost conductivity, but fails to indicate, this occurred only after
the advocacy of SSEU Local 371 Organizer, Bob Nwosu called for a meeting with HR Director, George Argyros. Three
hours of overtime remains outstanding. This time was denied by Mr. Argyros although the protocols and procedure for
submitting the request was followed.

A review of the Fair Labor Standards Act (FLSA) establishes minimum wage, overtime and other protections for
workers. Under the FLSA, employees must be paid for all hours worked.

The reporter also alludes to some level of underperformance despite all the metrics to the contrary. The employee,
Annabelle Suarez, granted (on 10/28/20) a reasonable accommodation
to work remote during the Covid-19 Pandemic has logged over 5,982 docketed court case she has actively worked,
thereby advancing the important, time-sensitive work of the office.(see attachment-services provided)

# Social Service Employees Union

**AFSCME AFL-CIO  Local 371**

817 Broadway
New York, NY 10003

Main No: **(212) 677-3900**
Fax No: **(212) 477-9161**



**General Grievance Form**

Not to be used for
Health & Safety Grievances

---

**Type of Grievance** (check appropriate box)    Individual: [X]    Group: [ ]    Union: [ ]    Dist Point: (If salary grievance) [ ]

| MEMBER'S NAME (First, M, Last) *Annabelle Suarez* | SOCIAL SECURITY NUMBER *117·52·7630* | | |
|---|---|---|---|
| MEMBER'S HOME ADDRESS *301 EAST 66TH ST. #7B* | CITY *New York* | STATE *NY* | ZIP *10065* |
| MEMBER'S HOME PHONE *212·249·0511* | MEMBER'S WORK PHONE | | |
| DEPARTMENT | WORK LOCATION ADDRESS *163 WEST 125TH ST. 7TH floor* | *1 HOGAN PLACE NY NY.* | |
| JOB TITLE *Senior community assoc.* | WORK HOURS *35 hrs.* | | |

**Administrative Officer:**

| Step I: [X] | *Audrey Moore, Bureau Chief - Family Violence Unit* *EEO Coordinator* | Step Omitted: [ ] |
|---|---|---|
| Step II: [ ] | | Step Omitted: [ ] |
| Step III: [ ] | | Step Omitted: [ ] |

---

**Statement of Grievance** (attach additional sheets if necessary): There has been a violation, misinterpretation, or misapplication of:

[X]  The DC 37 Citywide Contract, including, but not limited to Article(s): *ARTICLE 9 section 8, art. 4 SECT. 2*

[ ]  The SSEU Local 371 Contract, including, but not limited to Article(s):

[ ]  Rules and regulation, policy, or orders applicable to  (cite agency: e.g., HRA, HHC, etc)

including, but not limited to  (cite rules(s), procedure(s) violated)

**STATEMENT:**

There has been a violation, misinterpretation, or misapplication of the DC 37 Citywide contract, including but not limited to Article 9 Section 8 and Article 4 Section 2, in that the grievant, Annabelle Suarez, worked overtime from 2005 to 2012 and she was not compensated. As required by the agency, Ms Suarez she stayed late to service clients who were in need of social services and also trained new workers.

As a remedy, the grievant is seeking compensation of the overtime hours she worked during the aforementioned period and all other further relief deemed to be just and appropriate.

| Signature of Staff Member: | Date: *1.9.14* | Signature of Representative: | Date: |
|---|---|---|---|

Prepare to appropriate step of grievance procedure    Original to appropriate step of Grievance Procedure; Copy to SSEU Local 371
Copy to Grievant; Copy to previous Step of Grievance Procedure, if appeal is involved

## Suarez, Annabelle

| | |
|---|---|
| **From:** | Suarez, Annabelle |
| **Sent:** | Tuesday, April 08, 2014 2:42 PM |
| **To:** | Moore, Audrey |
| **Subject:** | RE: checking in |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Moore, Audrey | Read: 4/8/2014 2:47 PM |

Hi Audrey,

I have a follow-up scheduled for 3:30pm. However, I think I'll be able to make it by 4pm.

Respectfully,
Annabelle

**From:** Moore, Audrey
**Sent:** Tuesday, April 08, 2014 2:36 PM
**To:** Suarez, Annabelle
**Subject:** checking in

Hi Annabelle,

Can you stop by my office at 4:00 today?

Audrey

Audrey S. Moore
Executive Assistant District Attorney
Chief Diversity Officer
Chief of Special Victims Bureau
New York County District Attorney's Office
(212) 335-4205
(212) 335-4013 (fax)
moorea@dany.nyc.gov

# Involuntary Transitioned to WASU Notifications on April 15,2014 after Mtg with Bureau Chief and EEO Officer Audrey Moore attended by HR Director George Argyros

My Employee Profile as of 04/26/2021

| | | | |
|---|---|---|---|
| CityTime ID: | 70910 | Pay Class: | A |
| Employee Type: | PMS | Positive/Exception Indicator: | Exception |
| Empl ID: | 433068 | Payroll #: | 901 |
| Agency: | NY DA | Payrule: | CITYWIDE |
| Agency Code: | 901 | Pay Rules Processing: | Automated |
| Agency Start Date: | 09/08/1997 | | |
| | | Work Unit Code: | 1723 |
| User Account Status: | Active | Work Unit: | WASU NOTIFICATIONS/PROPERTY |
| Roles: | DCD/Webclock Employee | Effective Date: | 04/15/2014 |
| Reports User: | No | Expiration Date: | 12/31/9999 |
| Validate Labor Allocation Hours: | false | Workers Comp Indicator: | |
| As Of Date: | | Effective Date: | |
| Pay-To Type: | Pay To Punch User Centric | Expiration Date: | |
| Effective Date: | 11/16/2008 | CityTime Active/Inactive Status: | Active |
| Leave Status: | ACTIVE | Effective Date: | 11/16/2008 |

History

# A. Suarez - Personal employee workplace management *Concerns*

**From:** Sard, Bonnie
**Sent:** Friday, June 26, 2020 2:25 PM
**To:** Suarez, Annabelle <SuarezA@dany.nyc.gov>
**Cc:** Savur, Nitin <SavurN@dany.nyc.gov>
**Subject:** RE: A. Suarez - Personal employee workplace management

Thank you for passing this along.

**From:** Suarez, Annabelle
**Sent:** Friday, June 26, 2020 2:10 PM
**To:** Sard, Bonnie <SARDB@dany.nyc.gov>
**Cc:** Savur, Nitin <SavurN@dany.nyc.gov>
**Subject:** A. Suarez - Personal employee workplace management

I hope you and yours are well.

The following is to be reviewed at your leisure, with a view toward a frank discussion on possible remedies to address unorthodox workplace practices.

I have taken the liberty to send you an email chain to illustrate *a recent incident.* It may be worth noting that I represent the SSEU Local 371 Union Delegation since year 2016.

Your thoughtful consideration is sought.

Sincerely,

Annabelle Suarez

**From:** Suarez, Annabelle
**Sent:** Thursday, June 25, 2020 2:50 PM
**To:** Argyros, George <argyrosg@dany.nyc.gov>
**Subject:** Re: A. Suarez - Personal employee workplace management

Good Day George,

As you know, WASU Notification Unit is supervised by three capable managers, R. Woodberry, M. Bolona, G. Cornielle and Deputy Director, M. Silvie. All persons mentioned, oversee the daily function of WASU Notification Unit.

While I appreciate you weighing in and *ultimately* concluding that a shift change request was reasonable and did not deviate from previously discussed and established unit protocol; I'm not clear why The Human Resource (HR) Director for The New York County District Attorney's Office *is consulting on a personal employee matter*.

I experienced a similar situation in 2019 where Deputy Director Silvie provided a reasonable remedy to a work concern, only to have the decision usurped and rescinded after a discussion with the HR dept.

Please note; that this management style only serves to undermine confidence in my immediate supervisors. Furthermore; my having to go through many levels of approval is not consistent with office best practice and protocols.

In an attempt to reduce any future workplace stressor, management complications and/or conflict of interest concerns; I *remain available for a thoughtful discussion on the matter*.

Respectfully,

Annabelle Suarez

**From:** Silvie, Mildred
**Sent:** Friday, June 19, 2020 2:16 PM
**To:** Suarez, Annabelle <SuarezA@dany.nyc.gov>; Woodberry, Renee <WoodberryR@dany.nyc.gov>; Bolona, Marie <BolonaM@dany.nyc.gov>; Cornielle, Genesis <CornielleG@dany.nyc.gov>
**Subject:** RE: Shift change request for next week Mon 6/22 and Wed. 6/24

Good afternoon Annabelle,

You shift change request has been approved.

Mildred

**From:** Silvie, Mildred
**Sent:** Friday, June 19, 2020 1:35 PM
**To:** Suarez, Annabelle <SuarezA@dany.nyc.gov>; Woodberry, Renee <WoodberryR@dany.nyc.gov>; Bolona, Marie <BolonaM@dany.nyc.gov>; Cornielle, Genesis

<CornielleG@dany.nyc.gov>
**Subject:** RE: Shift change request for next week Mon 6/22 and Wed. 6/24

Good afternoon Anabelle,

At this point based on the information provided we not be able to extend the shift change.

Be well.

Mildred

**From:** Suarez, Annabelle
**Sent:** Friday, June 19, 2020 1:23 PM
**To:** Woodberry, Renee <WoodberryR@dany.nyc.gov>; Bolona, Marie <BolonaM@dany.nyc.gov>; Cornielle, Genesis <CornielleG@dany.nyc.gov>
**Cc:** Silvie, Mildred <SilvieM@dany.nyc.gov>
**Subject:** Shift change request for next week Mon 6/22 and Wed. 6/24

Hello Ladies,

Respectfully requesting shift change **for Mon. June 22nd** and **Wed. June 24th** to reflect 12pm - 8pm.

Your consideration will be greatly appreciated.

Annabelle Suarez

**From:** Suarez, Annabelle
**Sent:** Friday, June 19, 2020 2:18 PM
**To:** Argyros, George <argyrosg@dany.nyc.gov>
**Subject:** Remote Work schedule

FYI

**From:** Suarez, Annabelle
**Sent:** Friday, March 27, 2020 12:24 PM
**To:** Woodberry, Renee <WoodberryR@dany.nyc.gov>; Cornielle, Genesis <CornielleG@dany.nyc.gov>; Bolona, Marie <BolonaM@dany.nyc.gov>
**Cc:** Silvie, Mildred <SilvieM@dany.nyc.gov>
**Subject:** RE: Remote Work schedule

Thank you.  Health and sound, mind, body and spirit to all !


**From:** Woodberry, Renee
**Sent:** Friday, March 27, 2020 12:22 PM
**To:** Suarez, Annabelle <SuarezA@dany.nyc.gov>; Cornielle, Genesis <CornielleG@dany.nyc.gov>; Bolona, Marie <BolonaM@dany.nyc.gov>
**Cc:** Silvie, Mildred <SilvieM@dany.nyc.gov>
**Subject:** RE: Remote Work schedule

That sounds fine Annabelle.


**From:** Suarez, Annabelle
**Sent:** Friday, March 27, 2020 12:11 PM
**To:** Cornielle, Genesis <CornielleG@dany.nyc.gov>; Woodberry, Renee <WoodberryR@dany.nyc.gov>; Bolona, Marie <BolonaM@dany.nyc.gov>
**Cc:** Silvie, Mildred <SilvieM@dany.nyc.gov>
**Subject:** Remote Work schedule

Good morning Ladies,

During the time working from home, I'd like approval for a **9am-5pm** work schedule going forward.

I would also appreciate consideration for a *preapproved* time-shift in the future, should I require to avail myself of early morning runs to the Supermarket/Pharmacy, etc.  As I live alone, the time flexibility would be helpful.

Thank you in advance for your thoughtful consideration.

Annabelle

# Notification Department Monthly Staff Meeting
## June 16, 2016
## Minutes

1. Welcoming Maggie, new Assistant Supervisor!
   a. Including her on all emails requiring a supervisor's attention or response.
   b. Notifying both supervisors via email/text/phone call if you are running late or will be out – Maggie will provide her cell phone number to the staff via email. Phone calls and text messages to supervisors should be made/sent between 7 a.m. and 11 p.m. during the week.
   c. She will continue shadowing staff for the next few weeks.

2. WASU Redesign
   a. The redesign increases will replace the Office Step Upgrades. These upgrades, however, are still in effect for the rest of the Office per WASU Director and Deputy Director.
   b. Any further questions/concerns should be directed at the WASU Director and Deputy Director.

3. Notification Databases
   a. CWS
      i. Almost 100% completed – still waiting on the follow-up letter, email template to be added to the documents; "Reports" function; Multi-Defendant icon to be added to the "New Cases" working list next to the D's name.
   b. PCS
      i. Currently, there is no release date but it should be soon.
   c. OPS
      i. IT and upper management are still working on it.

4. Intake for Victim Notification Specialists
   a. CWS team currently splitting up new cases everyday
      i. A. Suarez is the only specialist not on Intake. She will continue handling BW cases without a bureau and/or ADA assignment and QoL (Quality of Life) cases.
   b. If an ADA emails *WASU Notifications*, any specialist available should immediately respond to email. If email is a request to work on a new case requiring a CW corrob, any VNS can take the case. Please respond by selecting "Reply All" so that everyone else is aware that the request is being handled.
   c. Corrobs from Harlem and WHO – any notification specialists available should immediately respond to emails with attached corrobs sent to the *WASU Notifications* email group. Please respond by selecting "Reply All" so that everyone else is aware that the corrob has been printed for filing.

5. Trainings
   a. MFJC trainings are open to all WASU team members. Supervisors will continue to forward emails when trainings are available. If you are interested in attending, you must notify supervisors of interest before registering so we can assess coverage needs for the department.
   b. DCAS Trainings – the catalog for Spring and Summer 2016 is available to all; it was emailed to all DANY support staff by HR. We highly encourage staff to attend workshops that they may be of interest to them. Supervisor will mandate some workshops for the entire team such as the Customer Services workshop.

6. WASU Director's Return
   a. No set date but we will be notified via email from director in the next couple of weeks of her return.

## Notification Department Monthly Staff Meeting
## September 15, 2016
## Minutes

1. Mandated Reporters in WASU
   a. Supervisor received clarification from WASU Director that staff in the Notification Dept. are not considered mandated reporters.  WASU – VAC and WASU – Counseling are mandated reporters
   b. However, if any Notification staff member witnesses an incident while meeting with a CW, it must be reported to the supervisors as soon as possible. Supervisor will then reach out to the VAC to have a Victim Services Advocate report to ACS.
   c. If a CW reports an incident that is related to a case to a Notification staff member, that staff member must report it to the assigned ADA as soon as possible.

2. Submitting Leave or Overtime Requests via CityTime
   a. New Notification Dept. protocol: staff must first request approval for leave, such as annual and comp time, from supervisors and then submit request via CityTime. Requests can be done in person/verbal requests, not necessary to send email, unless supervisors are not available.
   b. Staff must first request approval for voluntary overtime in person/verbally from supervisors and then submit via CityTime once overtime has been completed.
   c. If overtime is involuntary, staff must notify supervisor as soon as possible in person/verbally or via email if supervisors are not available.

3. emPerform – Log-in to accept T & E's
   a. Supervisor explained that the office is rolling out a new electronic system of doing performance review.
   b. First step is for supervisors to confirm each staff member's T & E's. The system will then send an automatic email to staff to log in so they can acknowledge and accept their T & E's.
   c. Supervisor asked staff to check their Outlook inbox for emails from DANYPerformaceReview regarding log-in username and temporary password.  If you have not received an email, to let supervisors know.

4. 2016 Holiday Vacation Requests
   a. Staff was reminded that requests are due 10/14/16 per the email that was sent in late September.
   b. Supervisor asked that "buddies" communicate with each out before requesting time off so buddies are not out at the same time.

5. Check-in with WASU Director
   a. Supervisor notified staff that Director would like to meet with each staff member for about 15 minutes each to check-in.  Director will send Outlook Calendar invites.

6. Reminders
   a. Upcoming Events: Brides' March, Shine the Light – Overtime will be given to those that volunteer.
   b. 2016 Rookie Training and Tour

7. For Victim Notification Specialists
   a. Reminder to be careful about numbering corrobs for the next calendar day and putting in the correct court part folder.
   b. Witness Fees Protocol with the VAC – not necessary to bring CW down, can have Notification supervisors sign witness fees form and then go to the VAC to get fees.
   c. If a CW prefers to go to one of the uptown offices (Harlem, WHO) for services, please email specific WASU staff member at those respective offices and CC WASU-VAC/Counseling.

**11- In your opinion, *why* did the employer take adverse actions against you? What did you do, or what does the employer think you did, that caused your employer or supervisor to retaliate against you? Try to list events in chronological order. Include dates, time, witnesses and other information that would support your allegation.**

**(Attach additional sheets if necessary)**

✱ Employee requested HEALTH/SAFETY evaluation reports of Air & Water quality. Previous reports demonstrated substandard, hazardous environmental conditions. Employee suffers from respiratory failure, as per her treating PULMONARY SPECIALIST, Dr. Kaner.

**12- What will *your employer* say is the reason the adverse action was taken against you?**

  For example:
  a- Excessive absenteeism or tardiness
  b- Confrontations with supervisor, other employees, the public, others
  c- Violations of workplace rules or code of conduct.

**(Attach additional sheets if necessary)**

No performance issues have ever been reported to employee A. Suarez

**13- Have any of the above incidences been documented in your personal file?**

N/A   Personal file has not been viewed by A. Suarez

**14- Do you think your employer/supervisor will deny that he/she knows that you did what you said you did.       If yes answer question 15.**

N/A

**15- What evidence or information do you have that will support your allegation that your employer knew what you did?**

**16- Who is your immediate supervisor?**

Ms. RENEE Woodberry, Witness Aid Services Unit - NOTIFICATION SUPERVISOR
(name and title)

**17- What is or was your wage rate?:** $ 1,600.00 per bi-weekly (week, month, hour, etc.)

 a. When was your last pay raise? RAISE DENIED _____ Type:(contractual, merit, cost of living)

b. Usual number of hours per week worked? 35 hour work week - DENIED BY EMPLOYER PER FFCRA POLICY IMPOSED UNDER DURESS.

c. How many hours of overtime usually worked? OVERTIME DENIED

d. Overtime pay rate? _DENIED. See Social Services Employees Union Local 371 - SECTION 1_

**18-** Are you still working for the same employer against whom you are filing this complaint? If yes, in what capacity? (Title and work location if it has changed.)
_Employer has forced a "leave of absence", a consequence of misapplied FFCRA policy. NO WAGES FORTHCOMING._

**19- If you were terminated, provide a copy of the Letter of Termination. _and_**

a. Where have you worked since leaving this employer? (start with present employment) _N/A_

b. When did you begin subsequent employment? _N/A_

c. Where have you applied for jobs? _N/A_

d. Did you file for unemployment compensation? _NO_

**20- If you filed Safety or Health complaints with your _employer,_ answer the following?**

a. What was the complaint? _See supplemental pkt, sent via mail_

b. Who did you make the complaint to?

c. When?

d. Did any one else know you made the complaint? Who? (name, address, position)

(1) Will they testify?

e. Did anyone else complain about the same or similar issue?

(1) Who?

(2) Were they retaliated against?

Published on *Social Service Employees Union Local 371* ([http://www.sseu371.org](http://www.sseu371.org))

Home > Section 1

# Section 1

a. There shall be a shift differential of ten percent (10%) for all employees covered by this Agreement for all scheduled hours worked between 6 P.M. and 8 A.M. with more than one hour of work between 6 P.M. and 8 A.M. This provision shall not apply to employees in the titles of Houseparent and Senior Houseparent.
   i. For all employees newly hired after July 14, 1996, this provision shall apply to scheduled hours of work between 8:00 P.M. and 8:00 A.M.
   ii. For employees covered by Unit Agreements that expire March 31, 2000, subsection 1(a)(i) shall be in effect from July 15, 1996 to March 31, 2000.
   iii. For employees covered by Unit Agreements that expire December 31, 1999, subsection 1(a)(i) shall be in effect from July 15, 1996 to December 31, 1999.
b. An employee working overtime shall only receive a shift differential if the employee is receiving straight time cash compensation. In such cases the shift differential shall be calculated separately from the overtime compensation. In all other cases, the employee shall receive only the compensatory time or premium overtime pay provided for in Article IV.



**Source URL (retrieved on *07/03/2015 - 11:04am*):** [http://www.sseu371.org/node/561](http://www.sseu371.org/node/561)

**21- If you filed a complaint with PESH or any other agency? (State, Federal, OSHA, DEC, EPA etc.)  answer questions (a-e)**

a. Who did you file with?                *N/A*

b. What was the result of your complaint?  Was there an inspection?

c. When?

d.. Who knew you complained?  (name, address, position)

   (1)  How did they know?

   (2)  Are there any witnesses who will testify to this?   If yes, please forward name, address and position.

e. Did anyone else file a complaint with PESH or any other agency?   (State, Federal, OSHA, etc.)   *Unknown*

   (1)  Who?  (name, address, position)

   (2)  Who else knew that the complaint was filed?

   (3)  Result?

**22-  Did you  refuse to perform an assigned task or  work assignment?**  If No , go to question 23,  If yes, cover  questions a. through j.        *NO*

a. What was the work you refused to perform?

b. When did you refuse the work?

c.  Why did you refuse the work?

**23- Do you belong to a Labor Union?** Yes ✓ No_____ If yes what union? (name and local number)

a. Are you an officer in the union? Yes ✓ No_____ If you are what is your position.
*SSEU LOCAL 371 UNION DELEGATE*

**24- Did you file a Union Grievance?**
**(Please provide a copy of grievance)** *UNION GRIEVANCE WAS DISCOURAGED*
*By V.P. of grievances & legal Services,*
a. When was it filed? *cell (646)431-7197 MR. DAREK ROBINSON, While awaiting a determination from a Complaint filed w/*
b. What is the status of the grievance? *New York Division of Human Rights case no.*
*102109501    drobinson@sseu371.org*

c. What is the name, address, and telephone number of the union representative?
*[QADIRA MIGUEL  646-937-1083  UNION ORGANIZER]*
d. If not accepted, why not? *qmiguel@sseu371.org*
*[awells@sseu371.org Anthony Wells PRESIDENT]*
e. When was your last performance evaluation? Please provide a copy. *NONE*

f. Were there other performance evaluations? If yes, please provide a copy. *NONE*

**g. Is there written employee handbook, or are there written polices and/or rules?**
**Please provide two copies if you have them.**

**25- Has anyone else been disciplined for the same or similar offense for which you were disciplined? If yes , answer a-b**
*Yes, colleague NEERESHA Adams was subjected to the same punitive requirements after filing a Reasonable Accommodation request.*
a. Who, when, what were the offense(s), and what was the disciplinary action? *(See determination of Investigation*
*Case no. 102 10051.)*

b. Have you or the others committed the same or similar acts previously?


(1) If so, who, when, how many times, and what was the disciplinary action?


**26- Is there anything else your employer will tell us about you?**


**27-** List the names, addresses, and telephone numbers of any witnesses not previously given. Briefly explain what each witness will testify to:


**28-** Is there anything else you want us to know about in connection with your complaint?
*Yes, please see emails ; DANT OFFICE PREPARES TO DISMISS EMPLOYEE A. Suarez from employment.*



**Division of
Human Rights**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

NEERESHA ADAMS,

                        Complainant,

             v.

NEW YORK COUNTY, DISTRICT ATTORNEY'S
OFFICE,

                        Respondent.

---

**DETERMINATION AFTER
INVESTIGATION**

Case No.
10210051

Federal Charge No. 16GC100440

On 11/6/2020, Neeresha Adams filed a verified complaint with the New York State
Division of Human Rights ("Division"), charging the above-named Respondent with an unlawful
discriminatory practice relating to employment because of disability in violation of N.Y. Exec.
Law, art. 15 ("Human Rights Law").

After investigation, the Division has determined that it has jurisdiction in this matter and
that <u>PROBABLE CAUSE</u> exists to believe that the Respondent has engaged in or is engaging in
the unlawful discriminatory practice complained of.

Pursuant to the Human Rights Law, this matter is recommended for public hearing.  The
parties will be advised of further proceedings.

Dated:     09/13/21
          Brooklyn, New York

                            STATE DIVISION OF HUMAN RIGHTS

        By:          _____
                    William LaMot
                    Regional Director

## STANDARD RELEASE FORM

I hereby give the New York State Department of Labor, Public Employee Safety and Health Bureau, and its representatives, permission to have access to my personnel, payroll and other pertinent files kept on me by my employer at any level of supervision including affirmative action files.

NAME _Annabelle Suarez_

SIGNATURE _____

DATE _10/18/2021_

WITNESS SIGNATURE AND DATE

NAME _Lauren J. Suarez_

SIGNATURE _____

DATE _10·18·21_

From: asuarez@nyc.rr.com
To: "ASuarez@nyc.rr.com" <ASuarez@nyc.rr.com>
Cc:
Bcc:
Priority: Normal
Date: Monday October 11 2021 12:18:53PM
DANY Office prepares to dismiss employee A. Suarez from employment

**From:** Jill Mendelberg [mailto:Jill@kmlaw.net]
**Sent:** Tuesday, September 28, 2021 10:40 AM
**To:** Argyros, George <argyrosg@dany.nyc.gov>; Suarez, Annabelle <SuarezA@dany.nyc.gov>; Isaac, Steven
<IsaacS@dany.nyc.gov>; Ortsman-Dauer, Nicole <OrtsmanDauerN@dany.nyc.gov>; Chen, Ina <ChenI@dany.nyc.gov>;
Sard, Bonnie <SARDB@dany.nyc.gov>
**Cc:** Jeffrey Kreisberg <jeff@kmlaw.net>; Isaac, Steven <IsaacS@dany.nyc.gov>; Ortsman-Dauer, Nicole
<OrtsmanDauerN@dany.nyc.gov>; Chen, Ina <ChenI@dany.nyc.gov>; Sard, Bonnie <SARDB@dany.nyc.gov>
**Subject:** [EXTERNAL] RE: Office sends; Clearance Form is Awaiting HR Verification for Annabelle Suarez

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the
sender and know the content is safe.  Forward suspect email to phish@cyber.nyc.gov as an attachment (Click the More button, then
forward as attachment).

Good morning Mr. Argyros,

My name is Jill Mendelberg and I am one of the attorneys representing Ms. Suarez in her case currently pending with the
New York State Division of Human Rights.  My client does not wish to be placed on any involuntary leave of absence and
can perform the duties of her position if her request for a reasonable accommodation of working from home is granted.

Thanks in advance for your consideration.

Regards,

Jill Mendelberg

Jill Mendelberg, Esq.

jill@kmlaw.net

KREISBERG MAITLAND

MENDELBERG & O'HEARN, LLP

ATTORNEYS AT LAW

75 Maiden Lane

NEW YORK, NY 10038

(212) 629-4970

FACSIMILE (212) 268-0544

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. No representation is made by the sender that any e-mails and/or attachments are virus free, and are used at the intended recipient's sole risk. Unauthorized interception of this e-mail is a violation of federal criminal law.

**From:** Suarez, Annabelle
**Sent:** Tuesday, September 28, 2021 10:10 AM
**To:** Argyros, George <argyrosg@dany.nyc.gov>
**Cc:** 'jkreisberg@kmlaw.net' <jkreisberg@kmlaw.net>; 'Jill@kmlaw.net' <Jill@kmlaw.net>; Isaac, Steven <IsaacS@dany.nyc.gov>; Ortsman-Dauer, Nicole <OrtsmanDauerN@dany.nyc.gov>; Sard, Bonnie <SARDB@dany.nyc.gov>; Chen, Ina <ChenI@dany.nyc.gov>
**Subject:** FW: Office sends; Clearance Form is Awaiting HR Verification for Annabelle Suarez

Glorious morning George,

Thank you for your prompt response.

Given the open NYSDHR  case no.10210950 it is advisable to schedule a teleconference meeting. I would prefer that my legal advocate(s); Jeffrey L. Kreisberg, Esq. and/or Jill Mendelberg ,Esq. be in attendance.

As always, your kind attention is appreciated,

Annabelle Suarez

**From:** Argyros, George
**Sent:** Monday, September 27, 2021 3:37 PM
**To:** Suarez, Annabelle <SuarezA@dany.nyc.gov>; Isaac, Steven <IsaacS@dany.nyc.gov>; Ortsman-Dauer, Nicole <OrtsmanDauerN@dany.nyc.gov>; Chen, Ina <ChenI@dany.nyc.gov>
**Cc:** 'jkreisberg@kmlaw.net' <jkreisberg@kmlaw.net>; 'Jill@kmlaw.net' <Jill@kmlaw.net>; Isaac, Steven <IsaacS@dany.nyc.gov>; Ortsman-Dauer, Nicole <OrtsmanDauerN@dany.nyc.gov>; Chen, Ina <ChenI@dany.nyc.gov>; Sard, Bonnie <SARDB@dany.nyc.gov>
**Subject:** RE: Office sends; Clearance Form is Awaiting HR Verification for Annabelle Suarez

My dear Annabelle after reviewing your weekly timesheets we understand that recently you are not submitting any hours of work.

In an effort to preserve your health insurance  and possibly any other important benefit to you, we are attempting to place you on

Special Leave of Absence Coverage (SLOAC).  As part of this process it is important that we get in touch with you to make sure you understand the SLOAC process

and for you to be able to make additional decisions.


Please call me with any additional question at 914-336-6284.


Regards,




George Argyros
Director of Human Resources

Agency EEO Compliance Coordinator

Career Counselor and Program 55-a Coordinator
New York County District Attorney's Office
40 Worth Street
New York, NY 10013
Tel   914-336-6284
Tel   212-335-9883




**From:** Suarez, Annabelle
**Sent:** Monday, September 27, 2021 3:21 PM
**To:** Argyros, George <argyrosg@dany.nyc.gov>; Isaac, Steven <IsaacS@dany.nyc.gov>; Ortsman-Dauer, Nicole <OrtsmanDauerN@dany.nyc.gov>; Chen, Ina <ChenI@dany.nyc.gov>; Sard, Bonnie <SARDB@dany.nyc.gov>
**Cc:** 'jkreisberg@kmlaw.net' <jkreisberg@kmlaw.net>; 'Jill@kmlaw.net' <Jill@kmlaw.net>
**Subject:** RE: Office sends; Clearance Form is Awaiting HR Verification for Annabelle Suarez



Good afternoon ,

Please review the office generated email sent to me on Fri.,Sept.24th 2021. I am being informed of my last day of work. The date indicated is past due.

Please be advised that I *have not requested or submitted* a leave of absence or any severance of employment from the New York County District Attorney's Office.

I am not familiar with the 'Clearance Form' referenced below, consequently; no such form was ever submitted by me or on my behalf.

I respectfully request immediate clarification pertaining to this critical employment matter.

Sincerely,

Annabelle Suarez

646 707 4606

-------------------------------------------

**From:** no-reply@dany.nyc.gov [mailto:no-reply@dany.nyc.gov]

**Sent:** Friday, September 24, 2021 1:07 PM
**To:** Suarez, Annabelle <SuarezA@dany.nyc.gov>
**Subject:** Employee Clearance Instructions

DANYNET - HR Clearance

*** Please do not reply to this automated email ***

# NOTIFICATION

HR Clearance

**Notification Date & Time:** 9/24/2021 1:06 PM
**Clearance Number:** CL20210924170516
**Approval Status:** Awaiting Clearance
**Request Type:** Leave of Absence

Dear Annabelle,

Your 'Leave of Absence' request was successfully reviewed and verified by Human Resources. As stated on the form, your last day will be '9/10/2021'.

Prior to your last day, please complete activities listed below by the corresponding due dates.

| Tasks | Due Date |
|-------|----------|
| Return all signed out case evidence pertaining to Investigations Equipment to Steve Akselrod located at One Hogan Place, Room 736 | 09/08/2021 |
| Return all laptops, tablets and computer or any other IT equipment to Pamela DiStefano at 80 | 09/08/2021 |

| | |
|---|---|
| Centre Street, Room 408 | |
| Turn in all blackberries / cellphones and access cards to Illeana Cardona or Telecommunications located at One Hogan Place, Room 775A | 09/09/2021 |
| Return all office keys and key FOBs to Illeana Cardona or Telecommunications located at One Hogan Place, Room 775A | 09/09/2021 |
| Please contact Illeana Cardona or Telecommunications if you have received special furniture or equipment through a Reasonable Accommodation Request | 09/09/2021 |
| On your last day, visit Jorge Sanchez at 40 Worth Street, Room SW 928 to conduct your exit interview | 09/10/2021 |

You may receive separate emails, if any additional Tasks need to be completed.

Please click here to access the form.

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

**From:** no-reply@dany.nyc.gov [mailto:no-reply@dany.nyc.gov]
**Sent:** Friday, September 24, 2021 1:05 PM
**To:** Suarez, Annabelle <SuarezA@dany.nyc.gov>
**Subject:** Clearance Form is Awaiting HR Verification

DANYNET - HR Clearance

*** Please do not reply to this automated email ***

# NOTIFICATION
HR Clearance

**Notification Date & Time: 9/24/2021 1:05 PM**
**Request Number:** CL20210924170516
**Approval Status:** Awaiting HR Verification
**Request Type:** Leave of Absence

Dear Annabelle:

Thank you for submitting your clearance form. This email confirms that we recieved your submission through the Human Resources Clearance Form on DANYNET.

Human Resources will review your form then get back to you with further instructions regarding your clearance.

To access your submission, please click here.

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

From: asuarez@nyc.rr.com
To: "ASuarez@nyc.rr.com" <ASuarez@nyc.rr.com>
Cc:
Bcc:
Priority: Normal
Date: Thursday October 14 2021 3:57:04PM
FW: November Schedule--Annabelle

**From:** Silvie, Mildred


**Sent:** Thursday, November 5, 2020 8:16 AM
**To:** Suarez, Annabelle <SuarezA@dany.nyc.gov>
**Cc:** Woodberry, Renee <WoodberryR@dany.nyc.gov>; Bolona, Marie <BolonaM@dany.nyc.gov>
**Subject:** RE: November Schedule--Annabelle

Good morning Annabelle,

I am referring you to speak with Nitin and George regarding your questions of FFCRA policy clarification as it relates to your (RAR) Reasonable Accommodation Request; - and the (ADA)- Americans with Disabilities Act for determination.

Be well,

Mildred Silvie, MS

Director Witness Aid Services Unit

New York County District Attorney's Office

One Hogan Place, RM 766

New York, NY 10013

(P) 212.335.9028

(F) 212.335.9955


**From:** Suarez, Annabelle
**Sent:** Wednesday, November 4, 2020 4:25 PM
**To:** Silvie, Mildred <SilvieM@dany.nyc.gov>
**Cc:** Woodberry, Renee <WoodberryR@dany.nyc.gov>; Bolona, Marie <BolonaM@dany.nyc.gov>
**Subject:** FW: November Schedule--Annabelle

Dearest Mildred,

Per November 2020, In-Office Calendar attached, I have been **preassigned** to work tomorrow, Thurs. **Nov. 5th 2020**, in addition; I have been preassigned **Nov.10th, Nov. 17th, Nov. 23rd, Nov. 27th** and **Dec. 3rd** thus far. After the initial 10 days, I will then be asked to deduct from my personal accrued time.

Please provide further clarification re. FFCRA (Family First Corona Response Act) policy which is being implemented **simultaneously** with a pre-approved RAR (Reasonable Accommodation Request), thereby rendering any RAR consideration null and void.

The RAR, protected under the (ADA) American for Disability Act should not subject an employee to undue injury. The injury in this case would be financial loss.

Your thoughtful consideration and objective review is sought.

Respectfully,

Annabelle Suarez

**From:** Chen, Ina
**Sent:** Wednesday, October 28, 2020 11:31 AM
**To:** Suarez, Annabelle <SuarezA@dany.nyc.gov>
**Cc:** Gilchrist, Beverly <GilchristB@dany.nyc.gov>; Silvie, Mildred <SilvieM@dany.nyc.gov>; Woodberry, Renee <WoodberryR@dany.nyc.gov>; Savur, Nitin <SavurN@dany.nyc.gov>; Argyros, George <argyrosg@dany.nyc.gov>; Cunningham, Katricia <CUNNINGHAMK@dany.nyc.gov>; Isaac, Steven <IsaacS@dany.nyc.gov>; Chan, David <CHAND@dany.nyc.gov>; Iznyuk, Mark <IznyukM@dany.nyc.gov>
**Subject:** FFCRA/FMLA ---- Approved

Good afternoon Annabelle,

Please be advised that your request for Family First Coronavirus Response Act/Family Medical Leave Act leave was approved by our EEO Officer and our Human Resources Department.

To use this benefit, you must be included in the schedule of employees who are assigned to report to an office location.

On the days, you are assigned to report to an office location, you may take FFCRA/FMLA leave.

In Citytime you may claim the first ten days of your FFCRA/FMLA leave as excuse leave. This means your leave balances will not be charged for the first ten days. In Citytime the first ten days can be charged as "excuse leave/ other."

After the first ten days of excused leave, you will be advised to use sick leave for any additional leave incidents. If you do **not have any** sick leave balances available, you will use your annual leave.

If you **do not have** sick or annual leave balances available, the office will advance you up to 30 days of leave.

HR **Payroll Supervisor,** Mark Iznyuk is readily available to assist with any of your Citytime questions.

You are not expected to telework on the days you are on FFCRA/FMLA leave.

Should **you require** additional guidance or have any FFCRA/FMLA benefit questions please email Human Resources.

*Thank you,*

Ina Chen

HCMS Analytics and Employee Engagement Analyst

EEO Program Compliance, Reasonable Accommodation & PESH Coordinator

New York County District Attorney's Office | Human Resources Department

40 Worth Street SE 901 | Office: (212) 335-9266 |Cell: (347) 366-2260

**From:** Bolona, Marie
**Sent:** Friday, October 30, 2020 4:12 PM
**To:** Suarez, Annabelle <SuarezA@dany.nyc.gov>
**Cc:** Woodberry, Renee <WoodberryR@dany.nyc.gov>; Silvie, Mildred <SilvieM@dany.nyc.gov>
**Subject:** November Schedule--Annabelle

Good Afternoon Annabelle,

**From:** Bolona, Marie
**Sent:** Friday, October 30, 2020 4:12 PM
**To:** Suarez, Annabelle <SuarezA@dany.nyc.gov>
**Cc:** Woodberry, Renee <WoodberryR@dany.nyc.gov>; Silvie, Mildred <SilvieM@dany.nyc.gov>
**Subject:** November Schedule--Annabelle

Good Afternoon Annabelle,

Please find attached a November schedule that includes you in the office rotation so that you are advised when to utilize your FFCRA leave days.

*The employer is placing the worker on a month-to-month schedule that gradually decreases sick and annual leave balance.*

Thank you,

Marie Bolona

Assistant Supervisor

Witness Aid Services Unit- Notifications/Property Release

New York County District Attorney's Office

Phone: (212)-335-4019

Fax: (212)-385-4150 or 212-335-9252

*According to the qualifications set forth in the FFCRA/FMLA The worker, A Suarez does not require leave nor has requested leave.*

*This results in thief of wages, and is contrary to a Reasonable Accommodation because the employee is "punished" for being disabled.*

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

From: asuarez@nyc.rr.com
To: "ASuarez@nyc.rr.com" <ASuarez@nyc.rr.com>
Cc:
Bcc:
Priority: Normal
Date: Monday October 11 2021 1:18:30PM
November Schedule assigned --Annabelle

**From:** Suarez, Annabelle
**Sent:** Wednesday, November 4, 2020 4:25 PM
**To:** Silvie, Mildred <SilvieM@dany.nyc.gov>
**Cc:** Woodberry, Renee <WoodberryR@dany.nyc.gov>; Bolona, Marie <BolonaM@dany.nyc.gov>
**Subject:** FW: November Schedule--Annabelle

Dearest Mildred,

Per November 2020, In-Office Calendar attached, I have been **preassigned** to work tomorrow,  Thurs. **Nov. 5th 2020**, in addition;  I have been preassigned **Nov.10th, Nov. 17th, Nov. 23rd, Nov. 27th** and **Dec. 3rd** thus far.  After the initial 10 days, I will then be asked to deduct from my personal accrued time.

Please provide further clarification re. FFCRA (Family First Corona Response Act) policy which is being implemented **simultaneously** with a pre-approved RAR (Reasonable Accommodation Request), thereby rendering any RAR consideration null and void.

The RAR, protected under the (ADA) American for Disability Act should not subject an employee to undue injury.  The injury in this case would be financial loss.

Your thoughtful consideration and objective review is sought.

Respectfully,

Annabelle Suarez

**From:** Chen, Ina
**Sent:** Wednesday, October 28, 2020 11:31 AM
**To:** Suarez, Annabelle <SuarezA@dany.nyc.gov>
**Cc:** Gilchrist, Beverly <GilchristB@dany.nyc.gov>; Silvie, Mildred <SilvieM@dany.nyc.gov>; Woodberry, Renee <WoodberryR@dany.nyc.gov>; Savur, Nitin <SavurN@dany.nyc.gov>; Argyros, George <argyrosg@dany.nyc.gov>;

Cunningham, Katricia <CUNNINGHAMK@dany.nyc.gov>; Isaac, Steven <IsaacS@dany.nyc.gov>; Chan, David <CHAND@dany.nyc.gov>; Iznyuk, Mark <IznyukM@dany.nyc.gov>
**Subject:** FFCRA/FMLA ---- Approved

**Good afternoon Annabelle,**

Please be advised that your request for Family First Coronavirus Response Act/Family Medical Leave Act leave was approved by our EEO Officer and our Human Resources Department.

To use this benefit, you must be included in the schedule of employees who are assigned to report to an office location.

On the days, **you** are assigned to report to an office location, you may take FFCRA/FMLA leave.

In Citytime you may claim the first ten days of your FFCRA/FMLA leave as excuse leave. This means your leave balances will not be charged for the first ten days. In Citytime the first ten days can be charged as "excuse leave/ other."

After the first ten days of excused leave, you will be advised to use sick leave for any additional leave incidents. If you do not have any sick leave balances available, you will use your annual leave.

If you **do** not have sick or annual leave balances available, the office will advance you up to 30 days of leave.

HR Payroll Supervisor, Mark Iznyuk is readily available to assist with any of your Citytime questions.

~~You are not required to telework, on the days you are on FFCRA/FMLA leave.~~  *The Employer chooses the days on the calender you WILL NOT be allowed to work !!*

Should **you require** additional guidance or have any FFCRA/FMLA benefit questions please email Human Resources.

*Thank you,*

Ina Chen

HCMS Analytics and Employee Engagement Analyst

EEO Program Compliance, Reasonable Accommodation & PESH Coordinator

New York County District Attorney's Office | Human Resources Department

40 Worth Street SE 901 | Office: (212) 335 9266 | Cell: (347) 366 2260

## November 2020
## In Office/ Follow Up/ Late Night Schedule

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| 1 | 2 **In Office:** Marie, Mildred, Neeresha, Carisa **Late Night:** Sofia | 3 VOTE | 4 **In Office:** Sofia & Steven **Follow Up:** Cancelled **Late Night:** Neeresha **TOPs:** Diane J. | 5 **In Office:** Mildred, Diane S. & Annabelle **Follow Up** Sofia **Late Night:** Carisa | 6 **In Office:** Marie, Sabrina, Neeresha **Follow Up:** Carisa | 7 **TOPs:** Diane J. |
| 8 | 9 **In Office:** Marie, Mildred, Sofia, Carisa **Late Night:** Diane S. | 10 **In Office** Renee, Diane S., Annabelle **Follow Up:** Diane S. **Late Night:** Steven | 11 VETERANS DAY | 12 **In Office:** Mildred, Steven, Sabrina **Follow Up** Cancelled **Late Night:** Annabelle | 13 **In Office:** Renee, Neeresha, Sofia **Follow Up:** Steven | 14 **TOPs:** Diane J. |
| 15 | 16 **In Office:** Marie, **Mildred**, Carisa, **Diane S.** **Late Night:** Sofia | 17 **In Office** Renee, Steven, Annabelle **Follow Up:** Annabelle **Late Night:** Neeresha | 18 **In Office:** Sabrina & Neeresha **Follow Up:** Neeresha **Late Night:** Carisa **TOPs:** Diane J. | 19 **In Office:** Mildred, Sofia, Carisa **Follow Up:** Sofia **Late Night:** Diane S. | 20 **In Office:** Marie, Diane S., Steven **Follow Up:** Carisa | 21 **TOPs:** Diane J. |
| 22 | 23 **In Office:** Renee, **Mildred**, Annabelle, Sabrina **Late Night:** Steven | 24 **In Office** Renee, Neeresha, Sofia **Follow Up:** Diane S. **Late Night:** Annabelle | 25 **In Office:** Carisa & Diane S. **Follow Up:** Steven **Late Night:** Cancelled **TOPs:** Diane J. | 26 | 27 **In Office:** Renee, Steven, Annabelle **Follow Up:** Cancelled | 28 **TOPs:** Diane J. |
| 29 | 30 **In Office:** Renee, Mildred, Sabrina, Neeresha **Late Night:** Sofia | 1 **In Office:** Renee, Sofia, Carisa **Follow Up:** Annabelle **Late Night:** Neeresha | 2 **In Office:** Diane S. & Steven **Follow Up:** Neeresha **Late Night:** Carisa **TOPs:** Diane J. | 3 **In Office:** Mildred, Annabelle, Sabrina **Follow Up:** Sofia **Late Night:** Diane S. | 4 **In Office:** Renee, Neeresha, Sofia **Follow Up:** Carisa | 5 **TOPs:** Diane J. |

# December 2020
## In Office/ Follow Up/ Late Night Schedule

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| 29 | 30 **In Office:** Renee, Sabrina, Diane S., **Late Night:** Sofia | 30 **In Office:** Renee, Sofia, Carisa **Follow Up:** Annabelle **Late Night:** Neeresha | 1 **In Office:** Steven & Sofia **Follow Up:** Neeresha **Late Night:** Carisa **TOPs:** Diane J. | 2 **In Office:** Mildred, Carisa, Steven, Annabelle **Follow Up:** Sofia **Late Night:** Diane S. | 3 **In Office:** Renee, Diane S., Sabrina, **Follow Up:** Carisa | 4 **TOPs:** Diane J. | 5 |
| 6 | 7 **In Office:** Renee, Steven, Sofia **Late Night:** Annabelle | 8 **In Office** Renee, Carisa, Sabrina, Annabelle **Follow Up:** Diane S. **Late Night:** Steven | 9 **In Office** Diane S. & Steven, **Follow Up:** Steven **Late Night:** Sabrina **TOPs:** Diane J. | 10 **In Office:** Mildred, Diane S., Carisa **Follow Up** Annabelle **Late Night:** Neeresha | 11 **In Office:** Renee, Sofia, Sabrina, Annabelle **Follow Up:** Sabrina | 12 **TOPs:** Diane J. |
| 13 | 14 **In Office:** Marie, Steven, Sofia **Late Night:** Carisa | 15 **In Office** Marie, Carisa, Sabrina, Annabelle **Follow Up:** Neeresha **Late Night:** Diane S. | 16 **In Office** Diane S. & Steven, **Follow Up:** Diane S. **Late Night:** Sofia **TOPs:** Diane J. | 17 **In Office:** Mildred, Diane S., Carisa **Follow Up:** Sofia **Late Night:** Steven | 18 **In Office:** Marie, Sofia, Sabrina, **Follow Up:** Carisa | 19 **TOPs:** Diane J. |
| 20 | 21 **In Office:** Marie, Steven, Sofia **Late Night:** Annabelle | 22 **In Office** Marie, Carisa, Sabrina, Annabelle **Follow Up:** Steven **Late Night:** Neeresha | 23 **In Office:** Diane S. & Steven, **Follow Up:** Annabelle **Late Night:** Sabrina **TOPs:** Diane J. | 24 **In Office** Mildred, Diane S., Steven **Follow Up:** Sabrina **Late Night:** Cancelled | 25 | 26 **TOPs:** Diane J. |
| 27 | 28 **In Office:** Marie, Steven, Sofia **Late Night:** Carisa | 29 **In Office:** Marie, Carisa, Sabrina, Annabelle **Follow Up:** Neeresha **Late Night:** Steven | 30 **In Office:** Diane S. & Steven, **Follow Up:** Carisa **Late Night:** Sofia **TOPs:** Diane J. | 31 **In Office:** Mildred, Diane S., Sofia **Follow Up:** Sofia **Late Night:** Cancelled | 1 | 2 **TOPs:** Diane J. |

From: asuarez@nyc.rr.com
To: "ASuarez@nyc.rr.com" <ASuarez@nyc.rr.com>
Cc:
Bcc:
Priority: Normal
Date: Monday October 11 2021 8:36:57AM
EEO Zoom invitation to discuss RAR - September 20, 2021



Good afternoon,

I am scheduling a Zoom meeting on behalf of DANY EEO Officer Nicole Ortsman-Dauer to discuss your reasonable accommodation request.
Please have the Zoom application downloaded to your electronic device prior to the meeting. Please let me know if you have any questions or concerns.

Join Zoom Meeting

Meeting ID: 760 994 1455
Passcode: 11229

Dial by your location
    +1 929 436 2865 US (New York)
    +1 312 626 6799 US (Chicago)
    +1 301 715 8592 US (Washington DC)
    +1 346 248 7799 US (Houston)
    +1 669 900 6833 US (San Jose)
    +1 253 215 8782 US (Tacoma)
Meeting ID: 760 994 1455
Passcode: 11229

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

# January 2021
## In Office/ Follow Up/ Late Night Schedule

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| **27** | **28** In Office: Marie, Steven, Sofia Late Night: Carisa | **29** In Office: Marie, Carisa, Sabrina, Annabelle Follow Up: Neeresha Late Night: Neeresha | **30** In Office: Diane S. & Steven Follow Up: Carisa Late Night: Sofia TOPs: Diane J. | **31** In Office: Mildred, Diane S., Sofia Follow Up: Sofia Late Night: Cancelled | **1** 2021 | **2** TOPs: Diane J. |
| **3** | **4** In Office: Marie, Steven, Sofia Late Night: Diane S. | **5** In Office Renee, Carisa, Sabrina, Annabelle Follow Up: Diane S. Late Night: Neeresha | **6** In Office Diane S. & Steven Follow Up: Steven Late Night: Annabelle TOPs: Diane J. | **7** In Office: Mildred, Diane S., Carisa Follow Up: Annabelle Late Night: Sabrina | **8** In Office: Renee, Sofia, Sabrina, Annabelle Follow Up: Sabrina | **9** TOPs: Diane J. |
| **10** | **11** In Office: Marie, Steven, Sofia Late Night: Carisa | **12** In Office Renee, Carisa, Sabrina, Annabelle Follow Up: Neeresha Late Night: Sofia | **13** In Office Diane S. & Steven Follow Up: Sofia Late Night: Annabelle TOPs: Diane J. | **14** In Office: Mildred, Diane S., Carisa Follow Up Carisa Late Night: Steven | **15** In Office: Marie, Sofia, Sabrina Follow Up: Diane S. | **16** TOPs: Diane J. |
| **17** | **18** MLK | **19** In Office Renee, Carisa, Sabrina, Annabelle Follow Up: Steven Late Night: Diane S. | **20** In Office Diane S. & Steven Follow Up: Sabrina Late Night: Annabelle TOPs: Diane J. | **21** In Office: Mildred, Diane S., Carisa Follow Up: Annabelle Late Night: Sabrina | **22** In Office: Renee, Sofia, Sabrina, Annabelle Follow Up: Neeresha | **23** TOPs: Diane J. |
| **24** | **25** In Office: Marie, Steven, Sofia Late Night: Neeresha | **26** In Office Renee, Carisa, Sabrina, Annabelle Follow Up: Sofia Late Night: Sofia | **27** In Office Diane S. & Steven Follow Up: Diane S. Late Night: Carisa TOPs: Diane J. | **28** In Office: Mildred, Diane S., Carisa Follow Up: Carisa Late Night: Steven | **29** In Office: Marie, Sofia, Sabrina Follow Up: Steven | **30** TOPs: Diane J. |

# February 2021
## In Office/ Follow Up/ Late Night Schedule

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| 31 | 1 **In Office:** Marie, Steven, Sofia<br><br>**Late Night:** Annabelle | 2 **In Office:** Marie, Carisa, Sabrina, Annabelle<br>**Follow Up:** Sabrina<br>**Late Night:** Sofia | 3 **In Office:** Diane S. & Steven<br>**Follow Up:** Annabelle<br>**Late Night:** Sabrina<br>**TOPs:** Diane J. | 4 **In Office:** Mildred, Diane S., Sofia<br>**Follow Up:** Sofia<br>**Late Night:** Neeresha | 5 **In Office:** Renee, Sofia, Sabrina, Annabelle<br>**Follow Up:** Neeresha | 6 **TOPs:** Diane J. |
| 7 | 8 **In Office:** Marie, Steven, Sofia<br><br>**Late Night:** Carisa | 9 **In Office** Renee, Carisa, Sabrina, Annabelle<br>**Follow Up:** Carisa<br>**Late Night:** Diane S. | 10 **In Office** Diane S. & Steven<br>**Follow Up:** Diane S.<br>**Late Night:** Annabelle<br>**TOPs:** Diane J. | 11 **In Office:** Mildred, Diane S., Carisa<br>**Follow Up:** Annabelle<br>**Late Night:** Steven | 12 | 13 **TOPs:** Diane J. |
| 14 | 15 | 16 **In Office** Renee, Carisa, Sabrina, Annabelle<br><br>**Late Night:** Neeresha | 17 **In Office** Diane S. & Steven<br>**Follow Up:** Steven<br>**Late Night:** Annabelle<br>**TOPs:** Diane J. | 18 **In Office:** Mildred, Diane S., Carisa<br>**Follow Up:** Sofia<br>**Late Night:** Sofia | 19 **In Office:** Marie, Sofia, Sabrina<br>**Follow Up:** Carisa | 20 **TOPs:** Diane J. |
| 21 | 22 **In Office:** Marie, Steven, Sofia<br><br>**Late Night:** Carisa | 23 **In Office** Renee, Carisa, Sabrina, Annabelle<br>**Follow Up:** Neeresha<br>**Late Night:** Diane S. | 24 **In Office** Diane S. & Steven<br>**Follow Up:**. Sofia<br>**Late Night:** Annabelle<br>**TOPs:** Diane J. | 25 **In Office:** Mildred, Diane S., Carisa<br>**Follow Up:** Diane S.<br>**Late Night:** Steven | 26 **In Office:** Renee, Sofia, Sabrina, Annabelle<br>**Follow Up:** Steven | 27 **TOPs:** Diane J. |

# March 2021
## In Office/ Follow Up/ Late Night Schedule

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| 28 | 1<br>**In Office:** Marie, Steven, Sofia<br><br>**Late Night:** Sabrina | 2<br>**In Office:** Renee, Sofia, Sabrina, Annabelle<br>**Follow Up:** Sabrina<br>**Late Night:** Neeresha | 3<br>**In Office:** Steven<br>**Follow Up:** Sofia<br>**Late Night:** Annabelle<br>**TOPs:** Diane J. | 4<br>**In Office:** Mildred & Carisa<br>**Follow Up:** Annabelle<br>**Late Night:** Sofia | 5<br>**In Office:** Renee, Carisa, Sabrina<br>**Follow Up:** Carisa | 6<br>**TOPs:** Diane J. |
| 7 | 8<br>**In Office:** Marie, Steven, Sofia<br><br>**Late Night:** Carisa | 9<br>**In Office** Renee, Sofia, Sabrina, Annabelle<br>**Follow Up:** Neeresha<br>**Late Night:** Steven | 10<br>**In Office** Steven<br>**Follow Up:** Sabrina<br>**Late Night:** Annabelle<br>**TOPs:** Diane J. | 11<br>**In Office:** Mildred & Carisa<br>**Follow Up:** Steven<br>**Late Night:** Sabrina | 12<br>**In Office:** Marie, Carisa, Sabrina, Annabelle<br>**Follow Up:** Sofia | 13<br>**TOPs:** Diane J. |
| 14 | 15<br>**In Office:** Marie, Steven, Sofia<br><br>**Late Night:** Neeresha | 16<br>**In Office** Renee, Sofia, Sabrina, Annabelle<br>**Follow Up:** Neeresha<br>**Late Night:** Carisa | 17<br>**In Office:** Steven<br>**Follow Up:** Diane S.<br>**Late Night:** Sofia<br>**TOPs:** Diane J. | 18<br>**In Office:** Mildred & Carisa<br>**Follow Up:** Carisa<br>**Late Night:** Diane S. | 19<br>**In Office:** Marie, Carisa Sabrina<br>**Follow Up:** Steven | 20<br>**TOPs:** Diane J. |
| 21 | 22<br>**In Office:** Marie, Steven, Sofia<br><br>**Late Night:** Sabrina | 23<br>**In Office** Renee, Sofia, Sabrina, Annabelle<br>**Follow Up:** Sabrina<br>**Late Night:** Steven | 24<br>**In Office:** Steven<br>**Follow Up:** Neeresha<br>**Late Night:** Annabelle<br>**TOPs:** Diane J. | 25<br>**In Office:** Mildred & Carisa<br>**Follow Up:** Annabelle<br>**Late Night:** Neeresha | 26<br>**In Office:** Renee, Carisa, Sabrina, Annabelle<br>**Follow Up:** Sofia | 27<br>**TOPs:** Diane J. |
| 28 | 29<br>**In Office:** Marie, Steven, Sofia<br><br>**Late Night:** Carisa | 30<br>**In Office** Renee, Sofia, Sabrina, Annabelle<br>**Follow Up:** Carisa<br>**Late Night:** Steven | 31<br>**In Office** Diane S. & Steven<br>**Follow Up:** Diane S.<br>**Late Night:** Sabrina<br>**TOPs:** Diane J. | 1<br>**In Office:** Mildred, Diane S., Carisa<br>**Follow Up:** Annabelle<br>**Late Night:** Sofia | 2<br>**In Office:** Renee, Carisa, Sabrina<br>**Follow Up:** Steven | 3<br>**TOPs:** Diane J. |

## April 2021
## In Office/ Follow Up/ Late Night Schedule

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| **28** | **29** <br> In Office: Marie, Steven, Sofia <br><br> Late Night: Carisa | **30** <br> In Office Renee, Sofia, Sabrina, Annabelle <br> Follow Up: Carisa <br> Late Night: Neeresha | **31** <br> In Office Diane S. & Steven <br> Follow Up:. Diane S. <br> Late Night: Sabrina <br> TOPs: Diane J. | **1** <br> In Office: Mildred, Diane S., Carisa <br> Follow Up: Annabelle <br> Late Night: Sofia | **2** <br> In Office: Marie, Carisa, Sabrina, <br> Follow Up: Steven | **3** <br> TOPs: Diane J. |
| **4** | **5** <br> In Office: Marie, Steven, Sofia <br><br> Late Night: Diane S, | **6** <br> In Office: Renee, Sofia, Sabrina, Annabelle <br> Follow Up: Diane S. <br> Late Night: Neeresha | **7** <br> In Office: Diane S & Steve, <br> Follow Up: Sabrina <br> Late Night: Annabelle <br> TOPs: Diane J. | **8** <br> In Office: Mildred, Carisa, Diane S. <br> Follow Up: Neeresha <br> Late Night: Sofia | **9** <br> In Office: Renee, Carisa, Sabrina, Annabelle <br> Follow Up: Sofia | **10** <br> TOPs: Diane J. |
| **11** | **12** <br> In Office: Marie, Steven, Sofia <br><br> Late Night: Carisa | **13** <br> In Office Renee, Sofia, Sabrina, Annabelle <br> Follow Up: Carisa <br> Late Night: Diane S. | **14** <br> In Office Diane S. & Steven <br> Follow Up: Sabrina <br> Late Night: Annabelle <br> TOPs: Diane J. | **15** <br> In Office: Mildred, Carisa, Diane S. <br> Follow Up: Annabelle <br> Late Night: Steven | **16** <br> In Office: Marie, Carisa, Sabrina <br> Follow Up: Diane S. | **17** <br> TOPs: Diane J. |
| **18** | **19** <br> In Office: Marie & Diane S. <br> Late Night: Sabrina | **20** <br> In Office Renee, Sabrina, Annabelle <br> Follow Up: Steven <br> Late Night: Neeresha | **21** <br> In Office: Diane S. <br> Follow Up: Annabelle <br> Late Night: Carisa <br> TOPs: Diane J. | **22** <br> In Office: Mildred & Carisa <br> Follow Up: Neeresha <br> Late Night: Sabrina | **23** <br> In Office: Marie, Carisa, Sabrina, Annabelle <br> Follow Up: Carisa | **24** <br> TOPs: Diane J. |
| **25** | **26** <br> In Office: Marie & Steven <br><br> Late Night: Diane S. | **27** <br> In Office Renee, Sabrina, Annabelle <br> Follow Up: Steven <br> Late Night: Sabrina | **28** <br> In Office: Diane S. & Steven <br> Follow Up:. Sabrina <br> Late Night: Annabelle <br> TOPs: Diane J. | **29** <br> In Office: Mildred, Carisa, Diane S. <br> Follow Up: Sofia <br> Late Night: Steven | **30** <br> In Office: Renee, Carisa, Sabrina <br> Follow Up: Diane S. | **1** <br> TOPs: Diane J. |

# May 2021
## In Office/ Follow Up/ Late Night Schedule

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| **2** | **3** In Office: Marie, Steven, Cristian / Late Night: Neeresha | **4** In Office Renee, Neeresha, Carisa / Follow Up: Annabelle / Late Night: Steven | **5** In Office Diane S. & Sofia / Follow Up: Neeresha / Late Night: Diane S. | **6** In Office: Mildred, Dee, Sabrina / Follow Up: Sofia / Late Night: Diane S. | **7** In Office: Renee, Annabelle, Carisa / Follow Up: Diane S. | **8** TOPs: Diane J. |
| **9** In Office: Marie, Steven, Cristian / Late Night: Sofia | **10** In Office: Marie, Neeresha, Carisa / Follow Up: Steven / Late Night: Sabrina | **11** In Office Renee, Neeresha, Carisa / Follow Up: Carisa / Late Night: Annabelle / TOPs: Diane J. | **12** In Office: Diane S. & Sofia / Follow Up: Sabrina / Late Night: Neeresha / TOPs: Diane J. | **13** In Office: Mildred, Dee, Sabrina / Follow Up: Annabelle / Late Night: Neeresha | **14** In Office: Marie, Annabelle, Sofia / Follow Up: Sabrina | **15** TOPs: Diane J. |
| **16** In Office: Marie Steven, Cristian / Late Night: Diane S. | **17** In Office Renee, Neeresha, Carisa / Follow Up: Sofia / Late Night: Steven | **18** In Office Renee, Neeresha, Carisa / Follow Up: Steven / Late Night: Carisa / TOPs: Diane J. | **19** In Office Diane S & Sofia / Follow Up: Carisa / Late Night: Sofia / TOPs: Diane J. | **20** In Office: Mildred, Dee, Sabrina / Follow Up: Carisa / Late Night: Sofia | **21** In Office: Renee, Annabelle, Sofia / Follow Up: Steven | **22** TOPs: Diane J. |
| **23** In Office: Marie Steven, Cristian / Late Night: Annabelle | **24** In Office Renee, Neeresha, Carisa / Follow Up: Diane S. / Late Night: Sabrina | **25** In Office Renee, Neeresha, Carisa / Follow Up: Sabrina / Late Night: Neeresha / TOPs: Diane J. | **26** In Office: Diane S. & Sofia / Follow Up: Annabelle / Late Night: Sofia | **27** In Office: Mildred, Dee, Sabrina / Follow Up: Annabelle / Late Night: Sofia | **28** In Office: Marie, Annabelle, Steven / Follow Up: Neeresha | **29** TOPs: Diane J. |
| **30**  MEMORIAL DAY | **31** | **1** | **2** | **3** | **4** | **5** TOPs: Diane J. |

## June 2021
## In Office/ Follow Up/ Late Night Schedule

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| 30 | 31 MEMORIAL DAY | 1 **In Office:** Renee, Carisa, Steven, Cristian **Follow Up:** Cancelled **Late Night:** Diane S. | 2 **In Office:** Mildred, Diane S., Carisa **Follow Up:** Sofia **Late Night:** Steven **TOPs:** Diane J. | 3 **In Office:** Mildred, Marie, Sofia, Steven, Cristian, Annabelle **Follow Up:** Diane S. **Late Night:** Carisa | 4 **In Office:** Marie, Diane S., Sofia, Sabrina, Carisa **Follow Up:** Carisa | 5 **TOPs:** Diane J. |
| 6 | 7 **In Office:** Renee, Carisa, Sabrina, Cristian **Late Night:** Annabelle | 8 **In Office:** Renee, Carisa, Steven, Cristian **Follow Up:** Annabelle **Late Night:** Sabrina | 9 **In Office:** Mildred, Diane S., Carisa **Follow Up:** Steven **Late Night:** Sofia **TOPs:** Diane J. | 10 **In Office:** Mildred, Marie, Sofia, Steven, Annabelle **Follow Up:** Sabrina **Late Night:** Neeresha | 11 **In Office:** Marie, Diane S., Sofia, Annabelle **Follow Up:** Neeresha | 12 **TOPs:** Diane J. |
| 13 | 14 **In Office:** Renee, Carisa, Sabrina, Cristian **Late Night:** Diane S. | 15 **In Office:** Renee, Carisa, Steven, Cristian **Follow Up:** Sofia **Late Night:** Annabelle | 16 **In Office:** Mildred, Diane S., Sabrina **Follow Up:** Steven **Late Night:** Carisa **TOPs:** Diane J. | 17 **In Office:** Mildred, Marie, Sofia, Steven, Annabelle **Follow Up:** Carisa **Late Night:** Sabrina | 18 **In Office:** Marie, Diane S., Sofia, Annabelle **Follow Up:** Sabrina | 19 **TOPs:** Diane J. |
| 20 | 21 **In Office:** Renee, Carisa, Sabrina, Cristian **Late Night:** Steven | 22 **In Office:** Renee, Carisa, Steven, Cristian **Follow Up:** Annabelle **Late Night:** Sofia | 23 **In Office:** Mildred, Diane S., Sabrina **Follow Up:** Sofia **Late Night:** Carisa **TOPs:** Diane J. | 24 **In Office:** Mildred, Marie, Sofia, Steven, Annabelle **Follow Up:** Carisa **Late Night:** Neeresha | 25 **In Office:** Marie, Diane S., Sofia, Annabelle **Follow Up:** Neeresha | 26 **TOPs:** Diane J. |
| 27 | 28 **In Office:** Renee, Carisa, Sabrina, Cristian **Late Night:** Diane S. | 29 **In Office:** Renee, Carisa, Steven, Cristian **Follow Up:** Diane S. **Late Night:** Annabelle | 30 **In Office:** Mildred, Diane S., Sabrina **Follow Up:** Annabelle **Late Night:** Steven **TOPs:** Diane J. | 1 **In Office:** Mildred, Marie, Sofia, Steven Annabelle **Follow Up:** Neeresha **Late Night:** Sabrina | 2 **In Office:** Marie, Diane S., Sofia, Annabelle **Follow Up:** Seven | 3 **TOPs:** Diane J. |

# July 2021
## In Office/ Follow Up/ Late Night Schedule

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| **27** | **28** In Office: Renee, Carisa, Sabrina, Cristian<br>Late Night: Diane S. | **29** In Office: Renee, Carisa, Diane S., Cristian<br>Follow Up: Diane S.<br>Late Night: Annabelle | **30** In Office: Mildred, Diane S., Sabrina<br>Follow Up: Annabelle<br>Late Night: Steven<br>TOPs: Diane J. | **1** In Office: Mildred, Marie, Sofia, Steven, Annabelle<br>Follow Up: Neeresha<br>Late Night: Sabrina | **2** In Office: Marie, Steven, Sofia, Annabelle<br>Follow Up: Seven | **3** TOPs: Diane J. |
| **4** | **5** | **6** In Office: Renee, Marie, Cristian, Sofia, Diane S., Sabrina<br>Follow Up: Cancelled<br>Late Night: Carisa | **7** In Office: Renee, Mildred, Cristian, Sofia, Carisa, Steven, Annabelle<br>Follow Up: Sabrina<br>Late Night: Diane S.<br>TOPs: Diane J. | **8** In Office: Marie, Mildred, Diane S., Steven, Sabrina, Annabelle<br>Follow Up: Carisa<br>Late Night: Sofia | **9** In Office: Marie, Carisa, Steven, Sabrina, Annabelle<br>Follow Up: Sofia<br><br>TOPs: Diane J. | **10** |
| **11** | **12** In Office: Renee, Mildred, Sofia, Carisa, Diane S.<br><br>Late Night: Annabelle<br>TOPs: Diane J. | **13** In Office: Renee, Marie, Cristian, Sofia, Diane S., Sabrina<br>Follow Up: Annabelle<br>Late Night: Steven | **14** In Office: Renee, Mildred, Cristian, Sofia, Carisa, Steven, Annabelle<br>Follow Up: Diane S.<br>Late Night: Sabrina<br>TOPs: Diane J. | **15** In Office: Marie, Mildred, Cristian, Diane S., Steven, Sabrina, Annabelle<br>Follow Up: Neeresha<br>Late Night: Neeresha | **16** In Office: Marie, Carisa, Steven, Sabrina, Annabelle<br>Follow Up: Sofia<br><br>TOPs: Diane J. | **17** |
| **18** | **19** In Office: Renee, Mildred, Sofia, Carisa, Diane S.,<br><br>Late Night: Steven<br>TOPs: Diane J. | **20** In Office: Renee, Marie, Cristian, Sofia, Diane S., Sabrina<br>Follow Up: Steven<br>Late Night: Carisa | **21** In Office: Renee, Mildred, Cristian, Sofia, Carisa, Steven, Annabelle<br>Follow Up: Steven<br>Late Night: Sabrina<br>TOPs: Diane J. | **22** In Office: Marie, Mildred, Cristian, Diane S., Steven, Sabrina, Annabelle<br>Follow Up: Sabrina<br>Late Night: Sofia | **23** In Office: Marie, Carisa, Steven, Sabrina, Annabelle<br>Follow Up: Diane S.<br><br>TOPs: Diane J. | **24** |
| **25** | **26** In Office: Renee, Mildred, Sofia, Carisa, Diane S.<br><br>Late Night: Annabelle<br>TOPs: Diane J. | **27** In Office: Renee, Marie, Cristian, Sofia, Diane S., Sabrina<br>Follow Up: Carisa<br>Late Night: Carisa | **28** In Office: Renee, Mildred, Cristian, Sofia, Carisa, Steven, Annabelle<br>Follow Up: Diane S.<br>Late Night: Sabrina<br>TOPs: Diane J. | **29** In Office: Marie, Mildred, Cristian, Diane S., Steven, Sabrina, Annabelle<br>Follow Up: Sofia<br>Late Night: Neeresha | **30** In Office: Marie, Carisa, Steven, Sabrina, Annabelle<br>Follow Up: Neeresha<br><br>TOPs: Diane J. | **31** |

From: asuarez@nyc.rr.com
To: "Jill@kmlaw.net" <Jill@kmlaw.net>, "Jeff@kmlaw.net" <Jeff@kmlaw.net> → *attorney's previous representing Annabelle Suarez*
Cc:
Bcc: "'ASuarez@nyc.rr.com'" <ASuarez@nyc.rr.com>
Priority: Normal
Date: Tuesday July 27 2021 10:11:00AM
August 2021 Schedule -*no option for telework on highlighted days reflected in the schedule

FYI


**From:** Bolona, Marie


**Sent:** Monday, July 19, 2021 2:45 PM
**To:** Suarez, Annabelle <SuarezA@dany.nyc.gov>
**Cc:** Woodberry, Renee <WoodberryR@dany.nyc.gov>; Silvie, Mildred <SilvieM@dany.nyc.gov> → *UNIT SUPERVISORS*
**Subject:** August 2021 Schedule


Good Afternoon Annabelle!


Please find attached your copy of the August 2021 schedule.


Thank you,

Marie Bolona

Assistant Supervisor

Witness Aid Services Unit- Notifications/Property Release

New York County District Attorney's Office

Phone: (212)-335-4019

Fax: 212-335-9252


This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

## August 2021
### In Office/ Follow Up/ Late Night Schedule

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| 1 | 2<br>**In Office:** Renee, Mildred, Sofia, Carisa, Diane S., Sabrina<br><br>**Late Night:** Steven<br>**TOPs:** Diane J. | 3<br>**In Office:** Renee, Marie, Mildred, Carisa, Diane S., Steven, Sabrina Annabelle,<br>**Follow Up:** Diane S.<br>**Late Night:** Sofia<br>**TOPs:** Diane J. | 4<br>**In Office:** Renee, Marie, Mildred, Sofia, Carisa, Diane S., Steven Annabelle<br>**Follow Up:** Steven<br>**Late Night:** Sabrina<br>**TOPs:** Diane J. | 5<br>**In Office:** Renee, Mildred, Marie, Sofia, Diane S., Steven, Sabrina Annabelle<br>**Follow Up:** Sabrina<br>**Late Night:** Carisa | 6<br>**In Office:** Marie, Sofia, Carisa, Steven, Sabrina Annabelle<br>**Follow Up:** Sofia<br><br>**TOPs:** Diane J. | 7 |
| 8 | 9<br>**In Office:** Renee, Mildred, Cristian, Sofia, Carisa, Steven, Sabrina<br><br>**Late Night:** Annabelle<br>**TOPs:** Diane J. | 10<br>**In Office:** Renee, Marie, Mildred, Cristian, Sofia, Carisa, Diane S., Sabrina Annabelle<br>**Follow Up:** Carisa<br>**Late Night:** Steven<br>**TOPs:** Diane J. | 11<br>**In Office:** Renee, Marie, Mildred, Cristian, Carisa, Diane S., Steven, Sabrina Annabelle<br>**Follow Up:** Diane S.<br>**Late Night:** Sofia<br>**TOPs:** Diane J. | 12<br>**In Office:** Renee, Mildred, Marie, Cristian, Sofia, Carisa, Diane S., Steven<br>**Follow Up:** Steven<br>**Late Night:** Neeresha | 13<br>**In Office:** Marie, Sofia, Diane S., Steven, Sabrina Annabelle<br>**Follow Up:** Sabrina<br><br>**TOPs:** Diane J. | 14 |
| 15 | 16<br>**In Office:** Renee, Mildred, Cristian, Sofia, Diane S., Steven<br><br>**Late Night:** Sabrina<br>**TOPs:** Diane J. | 17<br>**In Office:** Renee, Marie, Mildred, Cristian, Sofia, Steven Annabelle<br>**Follow Up:** Sofia<br>**Late Night:** Diane S.<br>**TOPs:** Diane J. | 18<br>**In Office:** Renee, Marie, Mildred, Cristian, Sofia, Diane S., Sabrina Annabelle<br>**Follow Up:** Carisa<br>**Late Night:** Steven<br>**TOPs:** Diane J. | 19<br>**In Office:** Renee, Marie, Cristian, Diane S., Sabrina Annabelle<br>**Follow Up:** Diane S.<br>**Late Night:** Sofia | 20<br>**In Office:** Marie, Sofia, Diane S., Sabrina Annabelle<br>**Follow Up:** Steven<br><br>**TOPs:** Diane J. | 21 |
| 22 | 23<br>**In Office:** Renee, Cristian, Sofia, Carisa, Diane S.,<br><br>**Late Night:** Annabelle<br>**TOPs:** Diane J. | 24<br>**In Office:** Renee, Marie, Cristian, Sofia, Diane S., Sabrina Annabelle<br>**Follow Up:** Sabrina<br>**Late Night:** Carisa<br>**TOPs:** Diane J. | 25<br>**In Office:** Renee, Marie, Cristian Sofia, Carisa, Sabrina Annabelle<br>**Follow Up:** Sofia<br>**Late Night:** Diane S.<br>**TOPs:** Diane J. | 26<br>**In Office:** Renee, Marie, Cristian, Sofia, Carisa, Diane S., Sabrina Annabelle<br>**Follow Up:** Carisa<br>**Late Night:** Neeresha | 27<br>**In Office:** Marie, Carisa, Diane S., Sabrina Annabelle<br>**Follow Up:** Diane S.<br><br>**TOPs:** Diane J. | 28 |
| 29 | 30<br>**In Office:** Renee, Cristian, Carisa, Diane S., Steven, Sabrina<br><br>**Late Night:** Sofia<br>**TOPs:** Diane J. | 31<br>**In Office:** Renee, Marie, Mildred, Cristian, Sofia, Carisa, Diane S., Steven Annabelle<br>**Follow Up:** Steven<br>**Late Night:** Sabrina<br>**TOPs:** Diane J. | 1<br>**In Office:** Renee, Marie, Mildred, Cristian, Sofia, Diane S., Steven, Sabrina Annabelle<br>**Follow Up:** Sabrina<br>**Late Night** Carisa<br>**TOPs:** Diane J. | 2<br>**In Office:** Renee, Mildred, Marie, Cristian, Sofia, Carisa, Steven, Sabrina Annabelle<br>**Follow Up:** Sofia<br>**Late Night:** Diane S. | 3<br>**In Office:** Marie, Sofia, Carisa, Diane S., Sabrina Annabelle<br>**Follow Up:** Carisa<br><br>**TOPs:** Diane J. | 4 |

## September 2021
## In Office/ Follow Up/ Inbox/Late Night Schedule

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| **29**<br>INBOX & E-FAX:<br><br>Sofia & Carisa | **30**<br>In Office: Renee, Cristian, Carisa, Diane S., Steven, Sabrina, Natasha, Brianna<br><br>Late Night: Sofia<br>TOPs: Diane J. | **31**<br>In Office:  Renee, Mildred, Cristian, Sofia, Carisa, Diane S., Steven, Natasha, Brianna, Annabelle<br>Follow Up: Steven<br>Late Night: Sabrina<br>TOPs: Diane J. | **1**<br>In Office: Renee, Marie, Mildred, Cristian, Sofia, Diane S., Steven, Sabrina, Natasha, Brianna Annabelle<br>Follow Up: Sabrina<br>Late Night: Carisa<br>TOPs: Diane J. | **2**<br>In Office: Renee, Mildred, Marie, Cristian, Sofia, Carisa, Steven, Sabrina, Natasha, Brianna Annabelle<br>Follow Up: Sofia<br>Late Night: Diane S. | **3**<br>In Office: Marie, Sofia, Carisa, Diane S., Sabrina, Annabelle<br><br>Follow Up: Carisa<br><br>TOPs: Diane J. | **4** |
| **5**<br>INBOX & E-FAX:<br><br>Diane S. & Natasha | **6**<br>HAPPY LABOR DAY | **7**<br>In Office:  Renee, Marie, Mildred, Cristian, Sofia, Carisa, Diane S., Steven, Natasha, Brianna, Annabelle<br>Follow Up:  Cancelled<br>Late Night: Steven<br>TOPs: Diane J. | **8**<br>In Office: Renee, Marie, Mildred, Cristian, Carisa, Diane S., Steven, Sabrina, Natasha, Brianna, Annabelle<br>Follow Up:  Diane S.<br>Late Night: Sofia<br>TOPs: Diane J. | **9**<br>In Office: Renee, Mildred, Marie, Cristian, Sofia, Carisa, Steven, Sabrina, Natasha, Brianna, Annabelle<br>Follow Up: Steven<br>Late Night: Neeresha | **10**<br>In Office: Marie, Sofia, Diane S., Steven, Sabrina, Annabelle<br><br>Follow Up:  Sabrina<br><br>TOPs: Diane J. | **11** |
| **12**<br>INBOX & E-FAX:<br>Steven & Sabrina | **13** | **14** | **15** | **16** | **17** | **18** |
| **19**<br>INBOX & E-FAX:<br>Sofia & Carisa | **20**<br>*EEO: RAR Zoom Meeting scheduled* | **21** | **22** | **23**<br>*EEO: Reasonable Accomodation Request(determination) has been CANCELED* | **24** | **25** |
| **26**<br>INBOX & E-FAX:<br>Diane S. & Natasha | **27** | **28** | **29** | **30** | **1** | **2** |

From: asuarez@nyc.rr.com
To: "ASuarez@nyc.rr.com" <ASuarez@nyc.rr.com>
Cc:
Bcc:
Priority: Normal
Date: Monday October 11 2021 8:49:03AM
EEO: RAR meeting of Sept. 23, 2021-12pm is Canceled by management


From: "Suarez, Annabelle"

To: "asuarez@nyc.rr.com"
Cc:
Sent: Thursday September 23 2021 12:19:46PM
Subject:



This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.

From: asuarez@nyc.rr.com
To: "ASuarez@nyc.rr.com" <ASuarez@nyc.rr.com>
Cc:
Bcc:
Priority: Normal
Date: Monday October 11 2021 8:36:57AM
EEO Zoom invitation to discuss RAR - September 20, 2021



Good afternoon,

I am scheduling a Zoom meeting on behalf of DANY EEO Officer Nicole Ortsman-Dauer to discuss your reasonable accommodation request.
Please have the Zoom application downloaded to your electronic device prior to the meeting. Please let me know if you have any questions or concerns.

Join Zoom Meeting

Meeting ID: 760 994 1455
Passcode: 11229

Dial by your location
    +1 929 436 2866 US (New York)
    +1 312 626 6799 US (Chicago)
    +1 301 715 8592 US (Washington DC)
    +1 346 248 7799 US (Houston)
    +1 669 900 6833 US (San Jose)
    +1 253 215 8782 US (Tacoma)
Meeting ID: 760 994 1455
Passcode: 11229

This email communication and any files transmitted with it contain privileged and confidential information from the New York County District Attorney's Office and are intended solely for the use of the individuals or entity to whom it has been addressed. If you are not the intended recipient, you are hereby notified that any dissemination or copying of this email is strictly prohibited. If you have received this email in error, please delete it and notify the sender by return email.



Good afternoon,

We will be rescheduling today's EEO Reasonable Accommodation Request meeting. We will reach out to provide a new time and date for this meeting.

September 23rd, 2021
Cancelation



September 23rd 2021
Invite

Good afternoon,

I am scheduling a Zoom meeting on behalf of DANY EEO Officer Nichol Ortman-Dauer to discuss your reasonable accommodation request. Please have the Zoom application downloaded to your electronic device prior to the meeting. Please let me know if you have any questions or concerns.

Join Zoom Meeting

Meeting ID: 760 991 1455
Passcode: 11229

Dial by your location
+1 929 436 2866 US (New York)
+1 312 626 6799 US (Chicago)
+1 301 715 8592 US (Washington DC)
+1 346 248 7799 US (Houston)
+1 669 900 6833 US (San Jose)
+1 253 215 8782 US (Tacoma)
Meeting ID: 760 991 1455
Passcode: 11229

From: "Fechter-Leggett, Ethan (CDC/NIOSH/RHD)" <iun8@cdc.gov>
To: "asuarez@nyc.rr.com" <asuarez@nyc.rr.com>
Cc:
Bcc:
Priority: Normal
Date: Friday December 9 2016 2:18:51PM
RE: NIOSH HHE 2016-0210-Manhattan District Attorney's Office

Hello Annabelle,

I wanted to let you know that I am still working to collate all of the information I have received and am still writing the report. I do have one clarifying question: are most of the window air conditioning units in the lower portion of the window, or in the upper portion of the window?

Sincerely,

Ethan Fechter-Leggett, DVM, MPVM
Epidemiologist
Field Studies Branch
Respiratory Health Division
National Institute for Occupational Safety and Health (NIOSH)
Centers for Disease Control and Prevention (CDC)
1095 Willowdale Road; Mailstop H2800
Morgantown, WV 26505
Phone: (304) 285-6030
Fax: (304) 285-5820
Email: iun8@cdc.gov

-----Original Message-----
From: asuarez@nyc.rr.com [mailto:asuarez@nyc.rr.com]
Sent: Thursday, October 13, 2016 10:48 AM
To: Fechter-Leggett, Ethan (CDC/NIOSH/RHD) <iun8@cdc.gov>
Subject: RE: NIOSH HHE 2016-0210-Manhattan District Attorney's Office

Good morning Ethan,

Thank you for your efforts to assist with the health concerns voiced by employees of this agency. I have no doubt of full compliance by my employer after the reporting of environmental concerns in our workspace.

I have provided updates to my coworkers. They are eagerly awaiting the report of your findings.
best regards,

Annabelle Suarez

From: "Fechter-Leggett, Ethan (CDC/NIOSH/RHD)" <iun8@cdc.gov>
To: "asuarez@nyc.rr.com" <asuarez@nyc.rr.com>
Cc:
Bcc:
Priority: **Normal**
Date: **Monday September 26 2016 1:14:15PM**
RE: **NIOSH HHE 2016-0210**

Hello Annabelle,

I wanted to provide you with an update on the Health Hazard Evaluation request you submitted.

Today I spoke with individuals from both management and operations, and I received many details of the issues you and I spoke about and what has been done in response to those issues. I am going to begin writing up all of the findings. They are going to gather a couple more reports for me that will help with some of the details, too.

Thank you for your patience,

Ethan Fechter-Leggett

Ethan Fechter-Leggett, DVM, MPVM

Epidemiologist

*Field Studies Branch*

*Respiratory Health Division*

*National Institute for Occupational Safety and Health (NIOSH)*

*Centers for Disease Control and Prevention (CDC)*

*1095 Willowdale Road; Mailstop H2800*

*Morgantown, WV 26505*

*Phone: (304) 285-6030*

*Fax: (304) 285-5820*

*Email: iun8@cdc.gov*

-----Original Message-----
From: Fechter-Leggett, Ethan (CDC/NIOSH/RHD)
Sent: Monday, August 29, 2016 8:41 AM
To: 'asuarez@nyc.rr.com' <asuarez@nyc.rr.com>
Subject: RE: NIOSH HHE 2016-0210

From: "Fechter-Leggett, Ethan (CDC/NIOSH/RHD)" <iun8@cdc.gov>
To: "asuarez@nyc.rr.com" <asuarez@nyc.rr.com>
Cc:
Bcc:
Priority: Normal
Date: Monday August 29 2016 8:40:38AM
RE: NIOSH HHE 2016-0210

Hi Annabelle,

I spoke with a couple of people in the HR office and described the issues you and I had talked about. They agreed to gather more information about the issues, including the environmental reports, and speak with the main facilities person to find a good time for another call to discuss the issues with me more in depth. I contacted them last week to check in and have not yet heard back so I will be contacting them again this week.

Sincerely,
Ethan Fechter-Leggett


-----Original Message-----
From: asuarez@nyc.rr.com [mailto:asuarez@nyc.rr.com]
Sent: Monday, August 29, 2016 8:29 AM
To: Fechter-Leggett, Ethan (CDC/NIOSH/RHD) <iun8@cdc.gov>
Subject: RE: NIOSH HHE 2016-0210

Dear Ethan,

I hope you are well. I am eager for any updates on the previous concerns discussed with you.

Respectfully,
Annabelle


---- asuarez@nyc.rr.com wrote:
> Great! Thanks very much.
>
> Annabelle
>
>
>
> ---- "Fechter-Leggett wrote:
> > Thank you very much. My next step will be to contact her, and I will keep you updated on my progress.
> >
> > -Ethan
> >
> >
> > -----Original Message-----
> > From: asuarez@nyc.rr.com [mailto:asuarez@nyc.rr.com]
> > Sent: Wednesday, August 03, 2016 8:13 AM
> > To: Fechter-Leggett, Ethan (CDC/NIOSH/RHD) <iun8@cdc.gov>
> > Subject: RE: NIOSH HHE 2016-0210
> >
> > Good morning Ethan,
> >
> > Your attention to this matter is greatly appreciated. The following information is provided as discussed.
> >
> >

> > Katricia Cunningham, M.S. HRM
> > Supervising HRIS & Labor Relations Analyst Right to Know/Public
> > Employee Safety & Health (PESH) Liaison/ Workplace Violence
> > Coordinator Human Resources Department
> > 40 Worth Street, S933
> > Human Resources: 212-335-3333
> > Direct Line: 212-335-9260 /917-297-8635 DANYNet - HR DANY Site
> >
> > e-mail address: Cunninghamk@dany.nyc.gov
> >
> > Respectfully,
> > Annabelle
> >
> >
> > ---- "Fechter-Leggett wrote:
> > > Hello Annabelle,
> > >
> > > Just as a reminder, will you please send me confirmation of the email address we spoke about (K. Cunningham)? That way, I can move forward with my next steps in this process.
> > >
> > > Sincerely,
> > > Ethan Fechter-Leggett
> > >
> > >
> > > -----Original Message-----
> > > From: Fechter-Leggett, Ethan (CDC/NIOSH/RHD)
> > > Sent: Monday, August 01, 2016 9:54 AM
> > > To: 'asuarez@nyc.rr.com' <asuarez@nyc.rr.com>
> > > Subject: RE: NIOSH HHE 2016-0210
> > >
> > > Great, I will call you at 2:00pm today at the number you provided via email.
> > >
> > > -Ethan
> > >
> > >
> > > -----Original Message-----
> > > From: asuarez@nyc.rr.com [mailto:asuarez@nyc.rr.com]
> > > Sent: Saturday, July 30, 2016 9:36 AM
> > > To: Fechter-Leggett, Ethan (CDC/NIOSH/RHD) <iun8@cdc.gov>
> > > Subject: RE: NIOSH HHE 2016-0210
> > >
> > > Yes, 2pm will be fine. I will arrange a lunch hour in anticipation of your call. Your kind attention to this matter is greatly appreciated.
> > >
> > > Respectfully,
> > > Annabelle Suarez
> > >
> > >
> > > ---- "Fechter-Leggett wrote:
> > > > Hello,
> > > >
> > > > Does 2pm work for you?
> > > >
> > > > Sincerely,
> > > >
> > > > Ethan Fechter-Leggett, DVM, MPVM Epidemiologist Field Studies
> > > > Branch Respiratory Health Division National Institute for

> > > > Occupational Safety and Health (NIOSH) Centers for Disease
> > > > Control and Prevention (CDC)
> > > > 1095 Willowdale Road; Mailstop H2800 Morgantown, WV 26505
> > > > Phone: (304) 285-6030
> > > > Fax: (304) 285-5820
> > > > Email: iun8@cdc.gov
> > > >
> > > >
> > > >
> > > > -----Original Message-----
> > > > From: asuarez@nyc.rr.com [mailto:asuarez@nyc.rr.com]
> > > > Sent: Wednesday, July 27, 2016 10:03 AM
> > > > To: Fechter-Leggett, Ethan (CDC/NIOSH/RHD) <iun8@cdc.gov>
> > > > Subject: Re: NIOSH HHE 2016-0210
> > > >
> > > > Dear Ethan Fechter-Leggett,
> > > >
> > > > Thank you in advance for your attention to the workplace concerns indicated in the below referenced summary. I will eagerly await your call on Mon. August 1st, 2016. A good contact number for me is (646) 707-4606.
> > > >
> > > > Enjoy your time away from the office!
> > > >
> > > > Sincerely,
> > > > Annabelle Suarez
> > > > Witness Aid Services Unit
> > > > Notifications Dept.
> > > > The New York County District Attorney's Office
> > > >
> > > >
> > > >
> > > > ---- "Fechter-Leggett wrote:
> > > > > Dear Annabelle Suarez,
> > > > >
> > > > >
> > > > >
> > > > > The National Institute for Occupational Safety and Health (NIOSH) received your request to conduct a health hazard evaluation. A summary of the request is below:
> > > > >
> > > > >
> > > > >
> > > > > Summary of Request
> > > > >
> > > > > Company Name: District Attorney's Office County of New York
> > > > >
> > > > > Address: One Hogan Place, New York, NY 10013
> > > > >
> > > > > Type of work done at this location: General office clerical
> > > > > duties performed by support staff
> > > > >
> > > > > Company or official responsible for employee health and safety:
> > > > > Katricia Cunningham, Human Resources (under direction of
> > > > > George Argyros, Director of Human Resources), Right to
> > > > > Know/Public Employee Safety & Health Liaison (212-335-9000)
> > > > >
> > > > > Hazardous substances, agents, or work conditions of concern: Current 2015-2016 environmental report has not been made available to work staff.
> > > > >

> > > > > Work area where hazard is located: Room 785, 7th floor (other
> > > > > areas in same bldg.. have been identified as hazardous as per
> > > > > Human Resources Health and Safety Coordinator, Deborah
> > > > > Williams,
> > > > > 212-598-7049)
> > > > >
> > > > > Number of people working in this area: 50-99
> > > > >
> > > > > Description of what people do in this area: General office
> > > > > clerical duties performed by support staff
> > > > >
> > > > > Health concerns of people in this area: Skin rashes and irritation, nasal allergy, watery eyes, headaches,
significant upper respiratory distress, confusion and fatigue. Significant incidence of hospitalization by staff personnel
has been noted.
> > > > >
> > > > > Has another agency evaluated this workplace? Do not know
> > > > >
> > > > > Is a request for the hazard being filed with another agency?
> > > > > No
> > > > >
> > > > > I look forward to talking with you. I will be out of the office next week (week of July 25th) so I would like to
set up a time to talk with you the following week (week of August 1st). Are you available Monday, August 1st or
Tuesday, August 2nd to discuss the request? If not, please let me know some convenient times to talk.
> > > > >
> > > > > Sincerely,
> > > > >
> > > > > Ethan Fechter-Leggett, DVM, MPVM Epidemiologist Field Studies
> > > > > **Branch** Respiratory Health Division National Institute for
> > > > > **Occupational** Safety and Health (NIOSH) Centers for Disease
> > > > > **Control** and Prevention (CDC)
> > > > > 1095 Willowdale Road; Mailstop H2800 Morgantown, WV 26505
> > > > > Phone: (304) 285-6030
> > > > > Fax: (304) 285-5820
> > > > > Email: iun8@cdc.gov<mailto:iun8@cdc.gov>
> > > > >
> > > >
> > > >
> > >
> > >
> >



**DEPARTMENT OF HEALTH & HUMAN SERVICES**                    **Public Health Service**

Centers for Disease Control
  and Prevention (CDC)
National Institute for Occupational
  Safety and Health (NIOSH)
1095 Willowdale Road
Morgantown, WV 26505-2888
Phone:  (304) 285-5751
Fax:  (304) 285-5820

December 20, 2016
HETA 2016-0210

Steven C. Isaac
Deputy Director HR-Labor Relations
New York County District Attorney's Office
Human Resources Department
40 Worth Street, Room SW 926
New York, NY  10013

Dear Mr. Isaac:

This letter is in response to a union request received on July 18, 2016 for the National Institute for Occupational Safety and Health (NIOSH) to conduct a health hazard evaluation at the District Attorney's Office, County of New York, located at One Hogan Place, New York, NY. The concerns included indoor environmental conditions of Room 785 on the 7th floor as well as other areas in the same building identified as hazardous by various employees and that environmental reports had not been made available to staff. Health concerns included skin rashes and irritation, nasal allergies, upper respiratory problems, watery eyes, headaches, confusion, fatigue, and hospitalization of employees.

## BACKGROUND

The building located at One Hogan Place, New York, NY is owned by the city of New York and is managed by the Department of Citywide Administrative Services. The building was built in 1939, and the New York County District Attorney's Office occupies all of the 6th, 7th, and 8th floors and parts of the basement, 2nd, 9th, and 15th floors, for an approximate total occupied square footage of 220,640 square feet. The building is environmentally controlled via a combination of gas fired heat, chilled water air-conditioning, ductless split air-conditioning systems, window air-conditioning units, and perimeter radiators supplied by boilers in the basement.

Room 785 is a large, non-carpeted room containing multiple cubicles that has both window air-conditioning units (serving the back side of the room) and split system air-conditioning (serving the front side of the room, with multiple vents). Some of the window air-conditioning units are installed in the lower portions of the windows so that the upper portions of the window can be opened if occupants desire. In addition, Room 785 has accessory fans mounted on the

walls that oscillate to provide additional air movement. The primary work done Room 785 is general office and clerical work.

During a phone interview with a union representative, I learned that there were four main concerns:
1) In July 2015, a pipe burst affecting the 7th, 8th, and 9th floors. The remediation that occurred in response to this event had not been communicated to employees.
2) In July 2016, a leak affected a security staff changing room. The remediation that occurred in response to this event had not been communicated to employees.
3) Mold/mildew was noted on tiles in a 7th floor women's restroom.
4) Concerns about general ventilation, window air-conditioning unit maintenance, and musty odors had been reported throughout the building.

I sent you an email about this health hazard evaluation request on August 3, 2016, and on August 8, 2016, I talked with you and other management officials on the phone to make you aware of the issues raised by the union representative. You indicated you would gather the necessary information and send me relevant environmental reports in preparation for another phone call to discuss the issues in more detail at a later date. Following this initial call, you sent me email message trails addressing the burst pipe affecting the 7th, 8th, and 9th floors; the leak in the security staff changing room; and the mold/mildew in the 7th floor women's restroom. You also sent me two environmental reports: an indoor air quality survey of Room 703 (at One Hogan Place) and an industrial hygiene survey of Room B-39 (basement of 80 Centre Street, New York, NY, which is another building occupied by the New York County District Attorney's Office).

On September 26, 2016, we, along with other management officials from the Human Resources and Operations departments, spoke in a conference call to discuss the employee concerns and remediation that had occurred. At the conclusion of the call, you indicated you would send me copies of additional reports, including asbestos sampling reports for Room 875 and an indoor air quality survey report for Room 785. You also said you would send me confirmations that the mold/mildew in the 7th floor women's restroom was resolved and the vacuuming of air supply and return vents in the building had been completed. On September 27, 2016, you sent me the asbestos-related reports, and on October 13, 2016, you sent me the remaining reports and confirmations.

The requestor had concerns about a pipe that burst in July 2015 that affected the 7th, 8th, and 9th floors, resulting in temporary relocation of Room 785 employees while repairs were made. The requestor stated that the employees were relocated for approximately one-half day while remediation occurred and that she had been unable to obtain information about what remediation activities had taken place. Email trails that you sent me described a chilled water pipe leak on the 9th floor on July 24, 2015. When you and I spoke during the management conference call, it was stated that there was minimal water leakage down a side wall onto the 7th floor and no water damage to the ceiling material of the 7th floor. It was described during our conference call that once the water was vacuumed up from the 8th and 9th floors, the water leakage down the side wall of the 7th floor stopped, and the water on the 7th floor was then mopped up. It was reported that there are no water leakage issues or stained building materials on the 7th floor from this water leakage event.

You also sent me two asbestos-related reports that address clean up on the 8th floor after this chilled water pipe leak on the 9th floor. This flood caused a ceiling tile in Room 875 to fall down; asbestos testing was performed the same day by J.C. Broderick & Associates, and the ceiling plaster of Room 875 tested positive for asbestos. Employees in Room 875 were relocated, and on August 1, 2015 abatement of Room 875 occurred. Saban Engineering Group sampled for asbestos during and after abatement and then provided a clearance letter documenting that the area met the requirements for re-occupancy, based on visual observation of the work performed and the asbestos air sampling results.

The requestor also had concerns about a leak affecting a security staff changing room in July 2016 that reportedly resulted in foul-smelling brown fluid leaking onto the floor. The requestor stated she had been unable to obtain information on what remediation had taken place. Email trails that you sent me described an issue on July 26, 2016 in the 6th floor men's locker room occupied by security staff. Security staff were relocated the following day to a temporary space. It was described during our conference call that the only fluid leaking was water, and the water was leaking into this locker room from a broken faucet handle in an upstairs restroom, likely over one weekend. For remediation, the faucet handle in the upstairs restroom was fixed, and this repair stopped the leak. In the affected locker room, the ceiling was scraped, repaired, and painted, and the walls and floors were cleaned. The cleaning of the locker room was completed on September 23, 2016, and it was reported during our call that there are no leaks or building issues in this area. The security staff are continuing to use the temporary space, and there are no current plans to move staff back to the locker room, although repairs are complete.

The requestor mentioned that mold/mildew was noted on tiles in a 7th floor women's restroom. The email trails you provided me indicate one ceiling tile that had mold or a dried water stain (but no active water leak) was replaced at the beginning of calendar year 2016 as part of "beautification" of the room. During our conference call, it was stated that there are no active water leaks in the 7th floor women's restroom. I asked you to confirm that the restroom is free from mold/mildew on both ceiling tiles and wall tiles, and on October 13, 2016, you sent me email confirmation that cleaning of black mildew stains on the ceramic tile was completed.

Finally, the requestor expressed concerns about general air quality in the building, especially Room 785, window air-conditioning unit maintenance, and musty odors throughout the building. During our conference call, it was stated that the window air-conditioning unit filters are changed two times per year by building managers, and preventive maintenance on split systems (such as are present in Room 785) are performed every six to eight months. In response to this health hazard evaluation request, vacuuming of all fresh air supply and return vents in main corridors and all bathrooms on the 2nd, 6th, 7th, 8th, and 9th floors was performed to remove dust build up on the vents. On October 13, 2016, you sent me email confirmation that the building Engineer had completed vacuuming of the ceiling fresh air vents in the main corridors and men's and women's restrooms. Regarding employee comfort, during our conference call, it was stated that if employees are too cold or too hot, employees can either (1) report to their administration, who will then email operations, or (2) email operations directly about the issue. Operations will then assign a technician to modify the ventilation.

You sent me a total of four environmental/air sampling reports of surveys conducted by the Department of Citywide Administrative Services, Citywide Office of Safety and Health:  two indoor air quality surveys performed in Room 785, one indoor air quality survey performed in Room 703, and an industrial hygiene report for Room B-39 (basement of another building occupied by the New York County District Attorney's Office at 80 Centre Street, New York, NY). During our conference call, it was mentioned that these environmental tests are performed when employees file complaints of breathing problems, and the results are given directly to Human Resources and the Right to Know Officer; however, the reports are not released to other employees to protect confidentiality of the requestor.

The first indoor air quality report, dated May 27, 2015, of an evaluation in Room 785 on May 18, 2015, documented that the temperature and relative humidity were within ASHRAE comfort guidelines and that the carbon dioxide level in the air of Room 785 was acceptable as it was below the ASHRAE recommended maximum for the environment. Additionally, the oxygen level in the air was acceptable. The report described finding a window air-conditioning unit that was off and the vent closed, thus restricting fresh air intake, near an employee experiencing discomfort. During the evaluation, the window air-conditioning unit was turned on and the vent opened, producing noticeable comfort. The report recommendations included opening all window air-conditioning vents to facilitate fresh air entering the room and considering repositioning window air-conditioning units to the upper section of the window so that air is not directed onto employees close to the units. The second indoor air quality report, dated March 29, 2016, of an evaluation in Rooms 229, 231, and 785 on March 15, 2016, documented that the temperature and relative humidity in Rooms 229 and 785 were within ASHRAE comfort guidelines and that the carbon dioxide levels in the air of Rooms 229, 231, and 785 were acceptable as they were below the ASHRAE recommended maximum for the environment. The report was confusing regarding the temperature levels in Room 231. The report's table of air monitoring results indicates Room 231 was warmer than the ASHRAE comfort guidelines, and temperatures recorded were as high as 80.1°F. However, the report text refers to Room 233 and stated that at least two thermostats in Room 233 appeared to be malfunctioning. The second report's recommendations were to ensure that all thermostats are functioning properly and to notify the building engineer to correct any seasonal discomfort.

The indoor air quality report, dated August 16, 2016, of an evaluation in Room 703 on July 25, 2016, described temperature and relative humidity levels within ASHRAE comfort guidelines for the season and carbon dioxide levels as acceptable as they were below the ASHRAE recommended maximum. Carbon monoxide levels were also acceptable for an office setting [Illinois Department of Public Health 2016]. Volatile organic compounds were not detected. Particulates in the air were measured and found to be at levels similar to typical outdoor levels. During the evaluation, an open window was allowing humid air into the office area from the outside. Rust and mold were also noted on the ceiling due to water condensation of the humid air on the cold air vent. The report recommendations included closing windows during humid days, keeping windows closed during non-business hours, and cleaning mold from surfaces.

The industrial hygiene report, dated August 24, 2016, of an evaluation in Room B-39 (at 80 Centre Street, New York, NY) on July 21, 2016, described the room as a storage room for files and IT equipment that is visited by District Attorney employees a few hours per week to retrieve

files. The report documented dust and construction debris on the floor, file cabinets, shelves, and file storage boxes, some of which were from construction activities a few years ago in the room to route pipes through to an adjacent room. Two dust wipe samples collected from the room were positive for silica. Recommendations in the report included cleaning the surfaces in the room using wet methods such as mopping and wiping, then high-efficiency particulate air (HEPA) vacuuming if needed, while wearing appropriate personal protective clothing and to regularly remove dust from the boxes and other surfaces.

## DISCUSSION

We commend the efforts taken to correct the concerns mentioned by the requestor and encourage continued response until all issues reported have been resolved. While some of the concerns listed have been addressed, there are still some issues to be discussed.

### Dampness in Buildings
The requestor expressed concerns about water leakage events that occurred in July 2015 and July 2016. Research has found that damp building conditions can lead to respiratory illnesses in occupants. Dampness in buildings can occur for a variety of reasons such as high indoor humidity, condensation, and roof leaks. Damp building conditions promote the growth of mold, bacteria, and other microbial agents, as well as dust mites and cockroaches. Dampness can also contribute to the breakdown of building materials and furniture. Musty odors are a sign of microbial contamination. Building occupants in damp buildings can be exposed to pollutants in the air from biological contaminants and the breakdown of building materials.

### *Building-related Symptoms*
Comprehensive reviews have been conducted of previous scientific studies evaluating the development of health effects caused by exposures from damp indoor conditions. The findings comprise risks of developing upper and lower respiratory symptoms. Additional illnesses associated with damp indoor conditions are asthma development and exacerbation, hypersensitivity pneumonitis, respiratory infections, allergic rhinitis, bronchitis, and eczema [Mendell et al. 2011; WHO 2009]. NIOSH has published an Alert, *Preventing Occupational Respiratory Disease from Exposures Caused by Dampness in Office Buildings, Schools, and Other Nonindustrial Buildings,* that may be helpful to you. The enclosed Alert provides information on respiratory disease related to indoor dampness and recommendations for preventing and remediating damp buildings [NIOSH 2012].

### *Routine Visual Inspections*
It was reported that there are currently no water leakage issues or stained building materials on the 7th floor or in the security staff changing room from the previous water leakage events. Still, implementing periodic room inspections for dampness can help to identify trouble areas before they become major problems. For example, conducting observational inspections in buildings quarterly or two times per year (spring and fall) provides documentation of dry versus damp areas and helps to prioritize maintenance and repair. As a resource for monitoring dampness in buildings, I have enclosed the *NIOSH Dampness and Mold Assessment Tool* which is currently a NIOSH Public Health Practice project. The tool provides an inexpensive mechanism to track, record, and compare conditions over time. Software for data entry, management, and reporting is

currently being developed. The software will be available to download from the NIOSH indoor environmental quality website (http://www.cdc.gov/niosh/topics/indoorenv/) upon completion. Using moisture meters and infrared cameras can also sometimes identify sources of dampness.

*Remediation*
Wetted materials need to be dried within 48 hours of getting wet or subsequently removed, and necessary repairs need to be made to prevent further water entry into the building. If mold is identified on materials, appropriate remediation guidelines with proper containment are recommended to minimize exposure to building occupants. The enclosed document, *Guidelines on Assessment and Remediation of Fungi in Indoor Environments*, developed by the New York City Department of Health and Mental Hygiene (NYCDH&MH), provides guidance for cleaning mold-damaged materials [NYCDH&MH 2008]. Inappropriate remediation (e.g., painting over water-damaged materials or moldy surfaces) can cause further problems with building degradation and symptoms in occupants. If not already completed, the moldy spots on the ceiling metal surface noted in Room 703 should be remediated appropriately. It was stated via email that cleaning of black mildew stains on the ceramic tile in the 7th floor women's restroom was completed.

*After Remediation*
After repairs and remediation are completed, employees and management often wish to know if the building is "safe." Building consultants often recommend and perform "clearance" air sampling for mold after remediation work has been completed in an attempt to demonstrate that the building is safe for occupants. However, there is no scientific basis for the use of air sampling for this purpose. Once remediation is completed (moldy and damaged materials removed; musty odors no longer evident), the best evidence that the building is safe may be that employees no longer experience building-related symptoms. In large populations of workers, using employee health questionnaires might be helpful to collect information on building-related symptoms, particularly among persons new to the building after remediation (i.e., those without "sensitizing" historical exposures during a period of water damage). Unfortunately, even if most employees experience improvement in their symptoms, and new employees remain free of building-related symptoms, some employees with allergic conditions might not notice an improvement because their immune systems might continue to react to very small amounts of allergens. Such individuals might have to avoid the building even after an otherwise successful remediation. An individualized management plan (such as assigning an affected employee to a different work location, perhaps at home or a remote site) is sometimes required, depending upon medical findings and recommendations of the individual's physician.

NIOSH has evaluated numerous buildings and has found that, if building dampness is not neglected, these problems can generally be corrected using remediation practices (with appropriate containment to minimize exposure of building occupants) that are fairly standardized. In addition to the other enclosed documents, I have enclosed the U.S. Environmental Protection Agency (EPA) publication, *Mold Remediation in Schools and Commercial Buildings* [EPA 2008]. Moreover, the EPA's publication, *Moisture Control Guidance for Building Design, Construction and Maintenance,* also provides useful information on controlling moisture in buildings and can be found at https://www.epa.gov/sites/production/files/2014-08/documents/moisture-control.pdf [EPA

2013]. For additional information, you might want to visit the NIOSH Indoor Environmental Quality website at http://www.cdc.gov/niosh/topics/indoorenv/, the EPA website at http://www.epa.gov/iaq/, or the Occupational Safety and Health Administration (OSHA) website at http://www.osha.gov/SLTC/indoorairquality/.

**Asbestos**
You provided reports regarding asbestos sampling in Room 875. The water leakage event on the 9th floor caused a ceiling tile to fall in Room 875, and the ceiling plaster tested positive for asbestos. Asbestos exposure is a well-known health hazard. Asbestos is commonly used as an acoustic insulator, in thermal insulation, and in fire proofing and other building materials. Many products in use today contain asbestos. The EPA website has information about asbestos on their website at www.epa.gov/asbestos.

Asbestos is made up of microscopic bundles of fibers that may become airborne when asbestos-containing materials are damaged or disturbed. Exposure to airborne friable asbestos may result in a potential health risk because persons breathing the air may breathe in asbestos fibers. Continued exposure can increase the amount of fibers that remain in the lung. Fibers embedded in lung tissue over time may cause serious lung diseases including asbestosis, lung cancer, or mesothelioma. Smoking increases the risk of developing lung cancer from asbestos exposure. Asbestos exposure has been linked to laryngeal cancer and ovarian cancer [IARC 2012; Weissman et al. 2014]. Additional information about asbestos-related cancer risk can be on the National Cancer Institute website at https://www.cancer.gov/about-cancer/causes-prevention/risk/substances/asbestos/asbestos-fact-sheet [NCI 2009] and in a consensus report about asbestos, asbestosis, and cancer published in 2014 [Finnish Institute of Occupational Health 2014].

If you feel that asbestos is a problem in your workplace, you can contact New York's Public Employee Safety and Health Bureau at 518-457-1263 or visit https://www.osha.gov/dcsp/osp/stateprogs/new_york.html to learn more about New York's OSHA-approved State Plan.

**Building Ventilation and Indoor Environmental Quality**
Poor ventilation in buildings is a common problem and is frequently due to lack of proper attention to the building's heating, ventilation, and air-conditioning (HVAC) system. HVAC systems include all of the equipment used to ventilate, heat, and cool the building; to move the air around the building (ductwork); and to filter and clean the air. These systems can have a significant impact on how pollutants are distributed in and removed from spaces. They can even act as sources of pollutants in some cases, such as when ventilation air filters become contaminated with dirt and/or moisture, when microbial growth results from stagnant water in drain pans, or from uncontrolled moisture inside of air ducts.

*Ventilation System Design*
The air delivery capacity requirements of an HVAC system are based in part on the projected number of people and the area of the occupied space. Proper distribution of ventilation air throughout all occupied spaces is essential. When areas in a building are used differently than their original purpose, the HVAC system may require modification to accommodate these

changes. For example, if a storage area is converted into space occupied by people, the HVAC system may require alteration to deliver enough conditioned air to the space.

*Outdoor Air Supply*
Adequate supply of outdoor air, typically delivered through the HVAC system, is necessary in any office environment to dilute pollutants that are released by equipment, building materials, furnishings, products, and people. Carbon dioxide ($CO_2$) is a normal constituent of exhaled breath; thus, $CO_2$ will also increase during building occupancy. $CO_2$ levels are routinely collected in air quality studies because they can indicate whether a sufficient quantity of outdoor air is being introduced to an occupied space for acceptable odor control. The American National Standards Institute (ANSI) and ASHRAE have developed consensus standards and guidelines for HVAC systems. ASHRAE notes in an informative appendix to *ANSI/ASHRAE Standard 62.1-2016: Ventilation for Acceptable Indoor Air Quality* that indoor $CO_2$ concentrations no greater than 700 parts per million (ppm) above outdoor $CO_2$ concentrations will satisfy a substantial majority (about 80%) of occupants [ANSI/ASHRAE 2016]. This would typically correspond to indoor concentrations below 1200 ppm since outdoor $CO_2$ concentrations usually range between 375 to 500 ppm. The carbon dioxide levels in the air of Room 785 were below the ASHRAE recommended maximum for the environment in the indoor air quality survey reports you sent me, dated May 2015 and March 2016. However, $CO_2$ is not an effective indicator of ventilation adequacy if the ventilated area is not occupied at its usual occupant density at the time the $CO_2$ is measured. Elevated $CO_2$ concentrations suggest that other indoor contaminants may also be increased. If $CO_2$ concentrations are elevated, the amount of outdoor air introduced into the ventilated space may need to be increased.

In some cases, building owners/managers or occupants will open doors or windows to increase the amount of outdoor air coming into their building. However, relying on open doors may cause problems. For example, the air coming into the building through the doors may not reach all of the office areas in the building. The incoming air is unfiltered and may contain outdoor air pollutants such as pollen and dust. Additionally, open doors may affect the ability of the HVAC system to adequately control temperatures and humidity. ASHRAE guidelines provide specific details on ventilation for acceptable indoor environmental quality. A ventilation system expert can help meet ASHRAE ventilation guidelines in the building. ANSI/ASHRAE 62.1-2016 recommends outdoor air supply rates that take into account people-related sources as well as building-related sources. For office spaces, conference rooms, and reception areas, five cubic feet per minute of outdoor air per person (cfm/person) is recommended for people-related sources, and an additional 0.06 cfm for every square foot (cfm/ft$^2$) of occupied space is recommended to account for building-related sources. To find rates for other indoor spaces, refer to Table 6.2.2.1 which is found in ANSI/ASHRAE 62.1-2016 [ANSI/ASHRAE 2016].

*Maintenance of HVAC Equipment*
Diligent maintenance of HVAC equipment is essential for the adequate delivery and quality of building air. All well-run buildings have preventive maintenance programs that help ensure the proper functioning of HVAC systems.

*Window Air-Conditioners*

Window air-conditioners have a cooling system that refrigerates the air entering the unit and then expels the heat from the back of the air-conditioner unit. Window units can run as often as you need; however, it is not normal for units to run continuously. A continuously running unit indicates it is struggling to meet the temperature set-point. The unit's efficiency is measured by the energy efficiency ratio (EER) which is the ratio of the cooling capacity (in British thermal units (Btu) per hour) to the power input (in watts). The higher the EER rating, the more efficient the air-conditioning unit [U.S. Department of Energy 2016a].

The required cooling capacity for a room air conditioner depends on the size of the room being cooled. Window air-conditioners generally have cooling capacities that range from 5,500 Btu per hour to 14,000 Btu per hour. An undersized air conditioner has to work harder and is not energy efficient resulting in more cost while an oversized unit will cycle too quickly and may not run long enough to remove humidity in the air. A properly sized unit running for an extended period operates more efficiently and is more effective at dehumidifying the indoor air. Based solely on size, an air conditioner generally needs approximately 20 Btu for each square foot of space. Window air-conditioners operate on 115-volt or 230-volt circuits. Large units rated at 115 volts may require a dedicated circuit, and units rated at 230 volts may require a special circuit [U.S. Department of Energy 2016a].

It was stated during our conference call that the window air-conditioning unit filters are changed two times per year by building managers. Room air-conditioners need regular maintenance for the unit to function effectively and efficiently (reduce energy consumption). One of the most important maintenance tasks is to routinely replace or clean its filters. Clogged, dirty filters reduce the unit's efficiency, and the air that bypasses the dirty, clogged filters may carry dirt directly into the evaporator coil and impair the coil's heat-absorbing capacity. Window air conditioners have a filter in the grill that faces into the room. Some types of filters are reusable while others must be replaced. Generally, the filter should be cleaned or replaced every month or two during the cooling season [U.S. Department of Energy 2016b]. We recommend following manufacturers' recommended maintenance schedules for window air conditioners, including care of the filters, water drip pan, evaporator coils (located near the front of the air conditioner), and condenser coils (located near the back of the unit). Leaving window air conditioners in windows during the winter can cause drafts and lead to increased energy consumption. If an air conditioner unit is left in place during the off season, consider using an air-conditioner cover.

*Temperature and Relative Humidity*
Temperature and relative humidity measurements are often collected as part of an indoor environmental quality investigation because these parameters affect the perception of comfort in an indoor environment. The perception of thermal comfort is related to one's metabolic heat production, the transfer of heat to the environment, physiological adjustments, and body temperature. Heat transfer from the body to the environment is influenced by factors such as temperature, humidity, air movement, personal activities, and clothing. The *ANSI/ASHRAE Standard 55-2013: Thermal Environmental Conditions for Human Occupancy* specifies the combinations of indoor environmental and personal factors that produce acceptable thermal conditions to a majority of occupants within a space [ANSI/ASHRAE 2013]. Assuming slow air movement (less than 40 feet per minute) and 50% indoor relative humidity, the operative temperatures recommended by ASHRAE range from 68.5ºF to 75ºF in the winter and from 75ºF

to 80.5°F in the summer. The difference in temperature ranges between the seasons is largely due to clothing selection. ASHRAE also recommends that indoor relative humidity be maintained at or below 65% [ANSI/ASHRAE 2013]. The EPA recommends maintaining indoor relative humidity between 30% and 60% to reduce mold growth [EPA 2012a]. According to the indoor air quality reports that you sent me, the temperature and humidity levels measured were within these guidelines for Rooms 785 and 229. However, Room 231 was warmer than these guidelines. Additionally, the March 2016 indoor air quality survey report described that at least two thermostats appeared to be malfunctioning in Room 233. We recommend reviewing this March 2016 indoor air quality survey report to clarify which rooms were affected by malfunctioning thermostats and repairing and maintaining them as necessary to maintain appropriate indoor temperature levels in all rooms.

## Dust

You provided a report regarding silica in settled dust in Room B-39 (basement of 80 Centre Street, New York, NY). This room is in another building that was not mentioned in the health hazard evaluation request; however, during our conference call it was stated that this report was provided to be transparent about issues that have been reported by employees.

Dusty environments can be problematic especially when the dust is stirred-up and suspended into the air allowing dust particles to be inhaled. This can subsequently cause a reaction in some people, particularly those who suffer from dust allergies. If the dust in the work environment is not due to the recent renovations then management should establish a routine cleaning schedule that includes dusting of surfaces and vacuuming using a vacuum with a HEPA filter in order to not re-suspend the dust. Keep the floors and surface areas free of clutter on days the work area is cleaned; this will make it easier to dust and vacuum. If cleaning products are used when cleaning work areas, be sure they are used according to the manufacturer's directions.

## Communication

Through health hazard evaluation investigations, NIOSH frequently finds a breakdown in communication between management and employees regarding building-related problems. Employees sometimes fear being singled out or fear repercussion from management or from other employees when they speak up about their concerns. Early and frequent communication with building occupants is important both to prevent indoor environmental quality problems from occurring and to secure cooperation when solving existing problems. Occupant complaints about indoor environmental quality should be taken seriously and investigated fully. It is important that clear procedures for recording and responding to indoor environmental quality complaints be established to ensure adequate and timely response and to prevent small complaints from becoming major health or comfort problems. If building occupants know that their concerns will receive a response, they will be more likely to provide prompt, helpful input about building conditions. Communicating with building employees and involving them in the process of addressing indoor environmental quality problems is essential. Employees should be notified of any remediation work and given access to any industrial hygiene or workplace investigation reports. In a facility that has a unionized workforce, like yours, open communication with union representatives is critical.

The requestor mentioned that starting in July 2016, a quarterly email has been sent to employees that includes information about how to submit concerns about building conditions through an online system. We commend this engagement of employees about building concerns. Management typically has more success when they establish an indoor environmental quality team consisting of a coordinator, representatives of the building employees, employers, and building management. The EPA's Indoor Air Quality Tools for Schools Program provides guidelines on how to set up such a team and how to implement a program in a school setting, which can easily be modified for your facility [EPA 2012b]. These guidelines can be found on EPA's website at https://www.epa.gov/iaq-schools/indoor-air-quality-tools-schools-action-kit.

## RECOMMENDATIONS

1. Follow the manufacturer's recommended maintenance schedules for all ventilation system types in the building, including replacing air filters, checking drip pans, ensuring thermostats are in working order, and checking and cleaning ventilation system dampers to ensure proper functioning.

2. Maintain indoor temperature and relative humidity levels according to the guidelines discussed.

3. Follow recommendations as suggested in the May 2015 indoor air quality survey report for Room 785:
   a. Adjust window air-conditioning unit vents to the open position to facilitate fresh air entering the space.
   b. Consider repositioning window air-conditioning units to the upper section of the windows so conditioned air will not be directed onto employees close to the units.

4. Review the March 2016 indoor air quality survey report, clarify which rooms on the second floor were affected, and follow the recommendation to ensure all thermostats are functioning property and maintained to acquire appropriate indoor temperature levels.

5. Encourage employees to follow the recommendation as suggested in the March 2016 indoor air quality survey for Room 785 to notify the building management to correct seasonal discomfort in affected areas.

6. Remove or clean any mold and moisture-damaged materials using the appropriate containment to minimize exposure for remediation workers, building occupants, and unaffected sections of the building. For cleaning mold contaminated surfaces, we recommend using soap and water or a detergent solution. Please review the enclosed NYCDH&MH guidelines on assessment and remediation of fungi. If not already completed, the moldy spots on the ceiling metal surface noted in Room 703 should be remediated appropriately.

7. Routinely inspect the building for water intrusion and damage and high relative humidity and correct these upon discovery. During and after heavy rains, walk through the building and check for water incursion.

    a. Identify any potential sources of dampness or mold through visual inspection and make proper repairs to prevent further problems from occurring.
    b. If dampness or mold is not identified during visual inspections but is suspected because of musty odors or continued health complaints, consider other methods (e.g., infrared camera or borescope) to look for hidden problems.
    c. Monitor repaired areas to ensure repairs and remedial actions are effective.
    d. Keep a record of when and where mold or water-damaged materials are discovered and what has been done to promptly fix the underlying problem leading to the water damage.

8. Maintain a communication system with employees for use when building-related issues arise. Make sure to provide information on response actions to all employees, including posting exposure and environmental assessment reports. If not already done so, consider starting a health and safety committee which consists of employees, management, and maintenance. This can help increase communication between employees and management and help alleviate concerns.

9. Follow recommendations as suggested in the August 2016 industrial hygiene survey report for Room B-39, basement of 80 Centre Street, New York, NY:
    a. Clean the surfaces in the room using wet methods such as mopping and wiping, then HEPA vacuuming if needed. Clean the highest surface first, then work down, and clean the floor last. Clean the farthest corner first and work towards the door.
    b. Wear appropriate personal protective equipment while cleaning, including a NIOSH-approved N95 respirator, gloves, goggles, and protective clothing. A listing of NIOSH-approved particulate filtering facepiece respirators can be found at https://www.cdc.gov/niosh/npptl/topics/respirators/disp_part/n95list1.html.
    c. Regularly remove dust from the boxes and other surfaces.

10. Contact New York's Public Employee Safety and Health Bureau regarding questions about asbestos regulations in your state.

    Public Employee Safety and Health Bureau, State Office Campus, Room 158, Albany, NY 12240, (518) 457-1263
    https://www.health.ny.gov/environmental/indoors/asbestos/contacts.htm

11. Encourage employees to report new, persistent, or worsening symptoms, particularly those with a work-related pattern, to their personal physicians and, as instructed by their employer, to a designated individual at their workplace.

12. Post copies of this letter in a prominent place accessible to employees for a period of 30 calendar days.

This letter will serve to close out this health hazard evaluation request. If you have additional questions or concerns, please contact me at (304) 285-6030.

Sincerely,

Ethan Fechter-Leggett, DVM, MPVM
Epidemiologist
Respiratory Health Hazard Evaluation and
     Technical Assistance Program
Field Studies Branch
Respiratory Health Division

cc:
Annabelle Suarez, Union Delegate, Social Services Employees Union – Local 371
Katricia Cunningham, Right to Know/Public Employee Safety & Health (PESH) Liaison
New York State Department of Health
OSHA, Region 2
Close-out file (2016-0210)

**Enclosures**
NIOSH Alert - *Preventing Occupational Respiratory Disease from Exposures Caused by
Dampness in Office Buildings, Schools, and Other Nonindustrial Buildings* – NIOSH
*NIOSH Dampness and Mold Assessment Tool* – NIOSH
*Guidelines on Assessment and Remediation of Fungi in Indoor Environments* – NYCDH&MH
*Mold Remediation in Schools and Commercial Buildings* – EPA


**References**
ANSI (American National Standards Institute)/ASHRAE [2013]. Thermal environmental
conditions for human occupancy, standard 55-2013. Atlanta, GA: ASHRAE.

ANSI/ASHRAE [2016]. Ventilation for acceptable indoor air quality, standard 62.1-2016.
Atlanta, GA: ASHRAE.

EPA (Environmental Protection Agency) [2008]. Mold remediation in schools and commercial
buildings. EPA Publication No. 402-K-01-001
[http://www.epa.gov/mold/mold-remediation-schools-and-commercial-buildings-guide]
Date accessed: December 2016.

EPA [2012a]. The inside story: A guide to indoor air quality
[http://www.epa.gov/indoor-air-quality-iaq/inside-story-guide-indoor-air-quality]. Date accessed:
December 2016.

EPA [2012b]. A guide to implementing an IAQ indoor air quality: IAQ tools for schools action
kit [https://www.epa.gov/iaq-schools/indoor-air-quality-tools-schools-action-kit]. Date assessed:
December 2016.

EPA [2013]. Moisture control guidance for building design, construction and maintenance [http://usgbc-centraltexas.org/wp-content/uploads/2014/02/moisture-control_EPA_Dec_2013.pdf]. Date accessed: December 2016.

Finnish Institute of Occupational Health [2015]. The consensus report: asbestos, asbestosis, and cancer, the Helsinki criteria for diagnosis and attribution 2014 [http://dx.doi.org/10.5271/sjweh.3462]. Date accessed: December 2016.

IARC (International Agency for Research on Cancer) [2012]. IARC monographs on the evaluation of the carcinogenic risks to humans. A review of human carcinogens:  Arsenic, metals, fibres and dust. Vol. 100 part C. Lyon, France: World Health Organization, International Agency for Research on Cancer, pp. 219–307 [http://monographs.iarc.fr/ENG/Monographs/vol100C/mono100C.pdf]. Date accessed: December 2016.

Illinois Department of Public Health [2016]. Illinois department of public health guidelines for indoor air quality [http://dph.illinois.gov/topics-services/environmental-health-protection/toxicology/indoor-air-quality-healthy-homes/idph-guidelines-indoor-air-quality]. Date accessed: December 2016.

Mendell MJ, Mirer AG, Cheung K, Tong M, Douwes J [2011]. Respiratory and allergic health effects of dampness, mold and dampness-related agents: a review of the epidemiologic evidence. Environ Health Perspect *119*(6):748-756.

NCI (National Cancer Institute) [2009]. Asbestos exposure and cancer risk [http://www.cancer.gov/about-cancer/causes-prevention/risk/substances/asbestos/asbestos-fact-sheet]. Date accessed: December 2016.

NIOSH (National Institute for Occupational Safety and Health) [2012]. NIOSH Alert: Preventing occupational respiratory disease from exposures caused by dampness in office buildings, schools, and other nonindustrial buildings. DHHS (NIOSH) Publication No. 2013-102 [http://www.cdc.gov/niosh/docs/2013-102/]. Date accessed: December 2016.

NYCDH&MH (New York City Department of Health and Mental Hygiene) [2008]. Guidelines on assessment and remediation of fungi in indoor environments [https://www1.nyc.gov/assets/doh/downloads/pdf/epi/epi-mold-guidelines.pdf]. Date accessed: December 2016.

U.S. Department of Energy [2016a]. Room air conditioners [http://energy.gov/energysaver/room-air-conditioners]. Date accessed: December 2016.

U.S. Department of Energy [2016b]. Maintaining your air conditioner [http://energy.gov/energysaver/maintaining-your-air-conditioner]. Date accessed: December 2016.

Weissman D, Gustavsson P, Miller A, Rushton L, Stayner L, Pallasaho P, Wolff H  [2014]. New asbestos related disease entities. In: Oksa P, Woolff H, Vehmas T, Pallasaho P, Frilander H, eds. Asbestos, asbestosis, and cancer. Helsinki criteria for diagnosis and attribution 2014. Helsinki, Finland: Finnish Institute of Occupational Health, pp. 49-121 [http://dx.doi.org/10.5271/sjweh.3462]. Date accessed: December 2016.

WHO (World Health Organization) [2009]. WHO guidelines for indoor air quality: dampness and mould [http://www.who.int/indoorair/publications/7989289041683/en/]. Date accessed: December 2016.