UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNABELLE SUAREZ,

                    Plaintiff,

          - against -

NEW YORK COUNTY DISTRICT
ATTORNEY'S OFFICE, et al.,

                    Defendants.

**ORDER**

22 Civ. 10855 (PGG) (OTW)

PAUL G. GARDEPHE, U.S.D.J.:

          In this action, Plaintiff Annabelle Suarez – a former Victim Notifications

Specialist at the New York County District Attorney's Office – raises discrimination and

retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the

Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (the "ADA"), the New York

State Human Rights Law, N.Y. Exec. L. § 290 et seq. (the "NYSHRL"), and the New York City

Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. (the "NYCHRL") against Defendants

New York County District Attorney's Office ("DANY") and DANY employees Nitin Savur,

Nicole Ortsman-Dauer, George Argyros, and Ina Chen (collectively "Defendants").  (Cmplt.

(Dkt. No. 1))  Suarez also alleges interference and retaliation claims under the Family and

Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. (the "FMLA"), and a claim under the Whistleblower Protection Act of 1989, 5 U.S.C. § 2302(b).[1]  (Id.)[2]

During the relevant time period, Defendants Savur and Ortsman-Dauer were Equal Employment Opportunity ("EEO") Officers and Disability Coordinators at DANY; Argyros was the Human Resources Director and EEO Compliance Coordinator; and Chen was the EEO Program Compliance, Reasonable Accommodations, and Public Employee Safety and Health ("PESH") Coordinator.  (Id. at 2-3)[3]

Defendants moved to dismiss (Def. Mot. (Dkt. No. 24)), and this Court referred the motion to Magistrate Judge Ona Wang for a Report and Recommendation ("R&R").  (Dkt. No. 27)  Judge Wang recommends that this Court dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (R&R (Dkt. No. 50))  Judge Wang further recommends that leave to amend be granted only as to Plaintiff's ADA disability discrimination claim.  (Id.)  No party has objected to the R&R.

This Court will adopt the R&R in part.  Defendants' motion to dismiss will be granted except as to Plaintiff's ADA retaliation claim.  Leave to amend will be granted as to Plaintiff's ADA disability discrimination claim.

---

[1]  In the Complaint, Suarez alleges that "[t]he employer violated . . . whis[t]leblower retaliatory behavior" (Cmplt. (Dkt. No. 1) at 6), an allegation that this Court construes as raising a Whistleblower Protection Act claim.  (See Pltf. Opp. (Dkt. No. 46) at 2) ("In addition, the Whistleblower Protection Act prevents employers from retaliating against employees who complain about discrimination or point out other misconduct in the workplace.")

[2]  Suarez filed the Complaint pro se.  On May 2, 2024 – after Judge Wang had issued a Report and Recommendation advising that Defendants' motion to dismiss should be granted – Suarez notified the Court that she had retained counsel.  (See May 2, 2024 Pltf. Ltr. (Dkt. No. 58))

[3]  The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

## BACKGROUND

I.    <u>FACTS</u>[4]

As of the Complaint's filing date, Plaintiff Annabelle Suarez was approximately 63 years old.  She had been employed at DANY for 24 years.  (Cmplt. (Dkt. No. 1) at 6, 12)  For five years, Suarez served as a union delegate for Local 371 of the Social Services Employees Union ("SSEU").  (<u>Id.</u> at 28)  As of October 26, 2020, Suarez served as a "Senior Victim Notifications Specialist 3" at DANY, and worked in DANY's Witness Aid Service Unit, Notifications/Property Release Bureau, at One Hogan Place in Manhattan.  (<u>Id.</u> at 10-11)

### A.    <u>Suarez Requests a Remote Work Accommodation</u>

On October 26, 2020, Suarez submitted a reasonable accommodation request form seeking permission to work remotely.[5]  (<u>Id.</u>)  In the form, Suarez states that, "[d]ue to ongoing, chronic respiratory health status, [she is] at an increased risk for severe illness from

---

[4]  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010) (citing <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002) and <u>Hayden v. Cty. of Nassau</u>, 180 F.3d 42, 54 (2d Cir. 1999)). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." <u>Id.</u> (quoting <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir. 2006)). A court may also "consider 'matters of which judicial notice may be taken.'" <u>Greenblatt v. Gluck</u>, No. 03-CV-597 (RWS), 2003 WL 1344953, at *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting <u>Hertz Corp. v. City of New York</u>, 1 F.3d 121, 125 (2d Cir. 1993)); <u>see also</u> <u>Vargas v. Reliant Realty</u>, No. 13-CV-2341 (PGG), 2014 WL 4446165, at *1 n.2 (S.D.N.Y. Sept. 9, 2014) ("'[A] court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment.'") (quoting <u>Evans v. N.Y. Botanical Garden</u>, No. 02 Civ. 3591(RWS), 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002)). "On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 306 (2d Cir. 2015).

[5]  On October 22, 2020, Suarez received interim approval to work remotely until her reasonable accommodation request was completed and fully submitted. (<u>See</u> Cmplt. (Dkt. No. 1) at 19)

Covid-19." (Id. at 10)  Suarez did not check off the box on the form indicating that the applicant

suffers from a "[d]isability." (Id.)  Instead, she checked off the box for "[o]ther" category,

writing that she was in a "[h]igh [r]isk category for contracting Covid-19." (Id.)  In response to a

question instructing the applicant to "describe how this reasonable accommodation request will

assist you perform day-to-day functions in your position," Suarez wrote that the "[n]otification[]

dept.['s] work productivity will increase when free from exposure to environmental toxins

including Covid-19 exposure, a currently recognized airborn[e] contagion." (Id.)

**B.    Suarez is Told to Take Families First Coronavirus Response Act
("FFCRA")/Family Medical Leave Act ("FMLA") Leave**

On October 28, 2020, Defendants Savur and Argyros informed Suarez that she

had been approved for a reasonable accommodation to work remotely, but that she would be

required to use Families First Coronavirus Response Act ("FFCRA") paid leave. (See id. at 19)

And in an October 28, 2020 email advising Suarez that her request for FFCRA/FMLA leave had

been approved, Defendant Chen explained that – when Suarez was assigned to report to the

office – she could take FFCRA/FMLA leave. (Id. at 48)  The first ten days of her

FFCRA/FMLA leave would be designated "excuse leave," which meant that her normal "leave

balances [would] not be charged." (Id.)  After Suarez depleted her excuse leave, she could use

her sick leave.  After Suarez depleted her sick leave, she would be required to use annual leave if

she did not wish to report to the office. (Id.)  If Suarez exhausted her annual leave, DANY

would "advance [her] up to 30 days of leave." (Id.)

In November 2020, DANY announced a "hybrid" schedule, in which employees

worked in-person certain days of the week and remotely on other days. (Pltf. Opp. (Dkt. No. 46)

at 12)  Between November 2020 and September 2021, Suarez was designated for in-office work

between one and four days per week. (Cmplt. (Dkt. No. 1) at 47-64)  In a document attached to

her Complaint, Suarez asserts that DANY "plac[ed] [her] on a month-to-month schedule that gradually decrease[d] [her] sick and annual leave balance.  According to the qualifications set forth in the FFCRA/FMLA[,] the worker, A. Suarez[,] does not require leave nor has requested leave.  This results in th[eft] of wages[] and is contrary to a [r]easonable [a]ccomodation because the employee is 'punished' for being disabled."  (Id. at 49) (emphasis in original)

On February 17, 2021, Suarez filed a complaint with the New York State Division of Human Rights alleging that she was suffering unlawful discrimination, because DANY was forcing her to use her earned leave on days she was scheduled to work in-person.  (Bonaparte Decl., Ex. A (Division of Human Rights Subm.) (Dkt. No. 26-1) at 10-33; see also id., Ex. B (Division of Human Rights Determinations) (Dkt. No. 26-2) at 1) ("On 2/17/2021, Annabelle Suarez filed a verified complaint with the New York State Division of Human Rights"); Pltf. Opp. (Dkt. No. 46) at 12)  Suarez asserted that – given her alleged heart and pulmonary conditions – she was entitled to an accommodation that would permit her to work remotely every work day, and should not be forced to use any earned leave.[6]  (Bonaparte Decl., Ex. A (Division of Human Rights Subm.) (Dkt. No. 26-1) at 15-16)

After Suarez filed her Division of Human Rights complaint, DANY began scheduling Suarez to work more days in-person, and eventually she was scheduled for remote work only two days per week.  (Pltf. Opp. (Dkt. No. 46) at 12)  Suarez alleges that – because her caseload was not reduced – she had to complete a full week's worth of work in the two days that

---

[6]  As to her alleged heart condition, Suarez attached an October 14, 2020 doctor's note to her February 17, 2021 Division of Human Rights submission.  The doctor's note states that at Suarez's "last office visit, she was found to be hypertensive. . . . [She] is in the process of undergoing a cardiac workup including a stress test."  (Bonaparte Decl., Ex. A (Oct. 14, 2020 Doctor's Note) (Dkt. No. 26-1) at 21)

she was permitted to work remotely.  (Id.)  DANY also denied Suarez's requests to work extra

hours on the days she was permitted to work remotely.  (Id.)

Suarez says that in June 2021, she received a diagnosis of respiratory failure.

Suarez's doctor advised her "to severely limit her time in public, as a potential COVID-19

infection would have a more devastating effect on her due to her medical condition."  (Id. at 12-

13)

On June 29, 2021, Suarez again requested a remote work accommodation.

(Bonaparte Decl., Ex. A (June 29, 2021 Reasonable Accommodation Req.) (Dkt. No. 26-1) at

69-70; see also Cmplt. (Dkt. No. 1) at 22)  In that request, Suarez included additional

information about her respiratory condition.  (See Bonaparte Decl., Ex. A (June 29, 2021

Reasonable Accommodation Req.) (Dkt. No. 26-1) at 69-70; see also Pltf. Opp. (Dkt. No. 46) at

13)  DANY confirmed receipt of Suarez's request, but did not otherwise respond.  (Pltf. Opp.

(Dkt. No. 46) at 13)

On September 10, 2021, Suarez filed another complaint with the New York State

Division of Human Rights.  (Bonaparte Decl., Ex. A (Division of Human Rights Subm.) (Dkt.

No. 26-1) at 43-84; see also id., Ex. B (Division of Human Rights Determinations) (Dkt. No. 26-

2) at 4) ("On 9/10/2021, Annabelle Suarez filed a complaint with the New York State Division

of Human Rights")  In her September 10, 2021 submission, Suarez repeats her claim that she is

suffering unlawful discrimination because DANY is forcing her to use her earned leave on days

she is scheduled for in-person work.  (Bonaparte Decl., Ex. A (Division of Human Rights Subm.)

(Dkt. No. 26-1) at 48-50)  Suarez also says that – after she submitted a second reasonable

accommodation request on June 29, 2021 – DANY confirmed receipt of her request but did not

otherwise respond.  (Id. at 49)

In her second Division of Human Rights complaint, Suarez further alleges that she was only permitted to work remotely one day per week in August 2021. Although Suarez submitted her timesheets for August in the normal fashion, her timesheets went unapproved, which delayed her paychecks. (See id. at 49, 76-79) According to Suarez, her assignment of only one day a week of remote work in August, and the failure to approve her August timesheets, were retaliation for the February 17, 2021 Division of Human Rights complaint that she had submitted. (Id. at 49). Suarez also attaches to her September 10, 2021 complaint doctor's notes from a June 5, 2021 office visit. The doctor stated that Suarez had reported shortness of breath, "fatigue," and "feel[ing] winded" after "walk[ing] a couple of blocks." The doctor also noted that her "[r]espirations are labored." (Bonaparte Decl., Ex. A (June 5, 2021 Doctor's Note) (Dkt. No. 26-1) at 71-74)

On September 16, 2021, the Division of Human Rights informed Suarez that it had found no probable cause for her February 17, 2021 complaint. (Bonaparte Decl., Ex. B (Division of Human Rights Determinations) (Dkt. No. 26-2) at 1-3 ("After investigation . . . the Division has determined that there is NO PROBABLE CAUSE to believe that [DANY] has engaged in or is engaging in the unlawful discriminatory practice complained of."); see also Pltf. Opp. (Dkt. No. 46) at 13)

On September 20, 2021, Defendant Ortsman-Dauer informed Suarez that DANY had scheduled a meeting on September 23, 2021, to discuss Suarez's reasonable accommodation request. (Pltf. Opp. (Dkt. No. 46) at 13) However, when Suarez attempted to log into the scheduled Zoom meeting on September 23, 2021, she learned that DANY had canceled the meeting. (Id.)

### C.    DANY Places Suarez on Leave

In a September 27, 2021 email to Defendants Argyros, Ortsman-Sauer, Chen and others, Suarez states that she has received an "office[-]generated email" notice that she is being placed on a leave of absence, and that her last day at work will be September 10, 2021. (Cmplt. (Dkt. No. 1) at 43-44) Suarez further states that she has "not requested or submitted a leave of absence or any severance of employment from the New York County District Attorney's Office[,]" and she requests "immediate clarification pertaining to this critical employment matter." (Id. at 44) (emphasis in original)

Defendant Argyros responds to Suarez's email that same day as follows: "after reviewing your weekly timesheets[,] we understand that recently you are not submitting any hours of work. In an effort to preserve your health insurance and possibly any other important benefit to you, we are attempting to place you on Special Leave of Absence Coverage (SLOAC)." (Id. at 42-43) In a September 28, 2021 email to Argyros, Suarez requests that a teleconference be scheduled for her and her lawyers, citing her Division of Human Rights complaint. (Id. at 42)

On September 28, 2021, the Division of Human Rights informed Suarez that it had found no probable cause for her September 10, 2021 complaint. (Bonaparte Decl., Ex. B (Division of Human Rights Determinations) (Dkt. No. 26-2) at 4) ("After investigation . . . the Division has determined that there is NO PROBABLE CAUSE to believe that [DANY] has engaged in or is engaging in the unlawful discriminatory practice complained of.")

Suarez alleges that Defendants stopped her wages as of October 1, 2021. (Cmplt. (Dkt. No. 1) at 9)

### D.      Suarez Files a Complaint with the
      Public Employee Safety and Health Bureau

On October 4, 2021, Suarez filed a complaint with the New York State

Department of Labor's Public Employee Safety and Health Bureau, alleging "safety and health

discrimination in [her] workplace under section 27-a (10) of the New York State Labor Law."

(Id. at 16)  In responding to a questionnaire that she received from the Safety and Health Bureau,

Suarez alleges that DANY denied her a reasonable accommodation under the ADA by forcing

her to use FFCRA leave when she had not requested it, rather than permitting her "to continue

working remotely, Monday to Friday, 9 am to 5 pm."  (Id. at 20)[7]  Suarez complains that DANY

is "deliberately placing [her] on leave and on a separate work schedule," and forcing her to use

her personal and sick leave "whenever supervisors create a separate work schedule with her

name on it."  (Id. at 20-21) (emphasis in original)  Suarez further complains that she is not able

to complete her work responsibilities under the schedule imposed by DANY.  (Id. at 20)

In the questionnaire, Suarez also alleges that DANY is "retaliating against [her]

for protecting her health and family health during these troubled times[,]" and that she is

experiencing disparate treatment because "another colleague . . . in the same unit was approved

[for] a [r]easonable [a]ccommodation as a result of mobility challenges not related to Covid-19."

(Id. at 21)  As evidence of retaliation, Suarez cites "isolation from team members and exclusion

from Zoom meetings"; being "denied numerous request[s] for overtime compensation";

"experienc[ing] an unusual amount of computer connectivity issues, unlike [her] colleagues

performing the same remote-work office function"; the "failure to approve timely submission of

. . . timesheet(s)"; the "failure to address [her] 2nd [r]easonable [a]ccomodation request of June

---

[7]  Suarez submitted the Public Employee Safety and Health Bureau questionnaire as part of her
complaint to that agency.  (See id. at 17-40)

29th, 2021"; and "[l]oss of wages, [l]oss of employment[,] and consequently [loss of] medical insurance," which Suarez alleges is "especially egregious given the persistent and serious [h]ealth concerns A. Suarez faces with clinical diagnosis of respiratory failure." (Id. at 21-22)

Suarez further alleges that DANY is retaliating against her because she had requested "health/safety evaluation reports of air and water quality." Suarez explains that she requested these reports because "[p]revious reports demonstrated substandard, hazardous environmental conditions," and because she "suffers from respiratory failure, as per her treating pulmonary specialist." (Id. at 34) Suarez also complains that her "last pay raise" was "denied," that her normal 35-hour work week was denied "per FFCRA policy imposed under duress," that she was denied overtime work and her overtime pay rate, and that DANY had implemented a "forced . . . 'leave of absence,' [as] a consequence of misapplied FFCRA policy," resulting in Suarez receiving "no wages." (Id. at 34-35)

**E.    <u>Suarez Loses Medical Coverage and Applies for Retirement Benefits</u>**

On December 7, 2021, Defendant Argyros spoke with Suarez about her "'buying back' New York City service time [in exchange] for a more favorable . . . retirement package." (Id. at 13)

In January 2022, Suarez's medical and healthcare coverage ended. (Id. at 9)

On March 21, 2022, Suarez submitted an application to DANY for service retirement, indicating that the effective date of her retirement would be March 21, 2022. (Id. at 15) On March 25, 2022, the New York City Employees' Retirement System changed Suarez's effective retirement date to September 21, 2021 – the day after her final day on DANY's payroll. (Id.)

## II.    PROCEDURAL HISTORY

The pro se Complaint was filed on December 23, 2022; names DANY, Savur, Ortsman-Dauer, Argyros, and Chen as defendants; and alleges violations of Title VII, the ADA, the FMLA, the NYSHRL, the NYCHRL, and the Whistleblower Protection Act.  (Cmplt. (Dkt. No. 1))

On January 26, 2023, this Court referred the case to Magistrate Judge Wang for general pretrial supervision.  (Dkt. No. 8)

On July 26, 2023, Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).  (Def. Mot. (Dkt. No. 24))  On July 28, 2023, this Court referred Defendants' motion to Judge Wang for an R&R.  (Dkt. No. 27)

On February 16, 2024, Suarez filed her opposition to Defendants' motion to dismiss.[8]  (Pltf. Opp. (Dkt. No. 46))  On March 1, 2024, Defendants filed a reply, in which they noted that Plaintiff's opposition contained "a new legal claim pursuant to the Whistleblower Protection Act."  Defendants stated that – because of the new claim – they had construed Suarez's opposition "to include a motion seeking leave to amend the Complaint."  (Def. Reply (Dkt. No. 49) at 1) (citing Pltf. Opp. (Dkt. No. 46) at 2)  Defendants say that they "do not oppose Plaintiff's request to amend[,]" "[g]iven the more liberal standards applied to pro se plaintiffs and the fact that Plaintiff has not previously amended," but "ask[ed] that the Court grant no further amendments."  (Id.)

---

[8]  Judge Wang granted Suarez numerous extensions of time to file her opposition.  (See Dkt Nos. 33, 39, 43, 45)

On March 19, 2024, Judge Wang issued a 19-page R&R recommending that Defendants' motion to dismiss be granted, and that leave to amend be given only as to Plaintiff's ADA disability discrimination claim. (R&R (Dkt. No. 50) at 18)

Judge Wang recommends that Plaintiff's NYSHRL and NYCHRL claims be dismissed as barred by the election of remedies doctrine, given that Plaintiff had previously filed complaints with the New York State Division of Human Rights regarding the same allegedly discriminatory conduct. (Id. at 8-10)

Judge Wang recommends that Plaintiff's ADA disability discrimination claim also be dismissed, because "Plaintiff does not allege that the Defendants are subject to the ADA, that she was in fact disabled under the ADA, or that she suffered an adverse employment action under circumstances giving rise to an inference of disability discrimination." (Id. at 12-13) Given Plaintiff's pro se status, Judge Wang recommends that Plaintiff be given leave to amend as to this claim. (Id. at 18)

Judge Wang further recommends that Plaintiff's Title VII discrimination claim be dismissed, because Plaintiff does not allege that she was discriminated against on the basis of any characteristic protected by Title VII. (Id. at 13-14)

As to Plaintiff's retaliation claims under the ADA and Title VII,[9] Judge Wang recommends that these claims be dismissed, finding that "the timing [of the alleged retaliation] is illogical," given that "Defendants placed Plaintiff on FFCRA leave months before she filed her [Division of Human Rights] complaint, and she has not pleaded any connection between her

_____

[9] Judge Wang addresses the standard for pleading retaliation claims under "§ 1981, Title VII, [] the NYSHRL" and "the NYCHRL" (R&R (Dkt. No. 50) at 15, 15 n.8), but this Court construes her analysis as extending to Plaintiff's retaliation claim under the ADA as well. The Court further notes that Plaintiff does not assert a Section 1981 claim.

termination and the [Division of Human Rights] complaint." (Id. at 15-16)  Judge Wang

recommends that Plaintiff's Whistleblower Protection Act claim be dismissed for the same

reason.  (Id. at 16)

Judge Wang also recommends that Plaintiff's FMLA interference and retaliation

claims be dismissed, because Plaintiff does not plead "that she intended or sought to take leave

under the FMLA and that her request was denied," or "that she exercised her FMLA rights and

suffered an adverse employment action because of that exercise."  (Id. at 16-17)

In her R&R, Judge Wang notifies the parties that, "[i]n accordance with 28 U.S.C.

§ 636(b)(1) and Fed. R. Civ. P. 72(b)," they "have fourteen (14) days (including weekends and

holidays) from receipt of this Report to file written objections."  (Id. at 19)  The R&R further

states that a "failure to file objections within fourteen (14) days will result in a waiver of

objections and will preclude appellate review."  (Id.) (emphasis omitted) (citing, inter alia,

Thomas v. Arn, 474 U.S. 140, 155 (1985))

Neither side has submitted objections to the R&R.

## DISCUSSION

### I.    LEGAL STANDARDS

#### A.    Review of Magistrate Judge's Report & Recommendation

In reviewing a magistrate judge's report and recommendation, a district court

"may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge." 28 U.S.C. § 636(b)(1)(C).  Where, as here, no timely objection has been

made to a magistrate judge's R&R – despite clear warning that a failure to file objections will

result in a waiver of judicial review – judicial review has been waived.  See Thomas v. Arn, 474

U.S. 140, 147-48 (1985); see also Spence v. Superintendent, Great Meadow Correctional

Facility, 219 F.3d 162, 174 (2d Cir. 2000) ("Failure to timely object to a report generally waives any further judicial review of the findings contained in the report.").

This rule is non-jurisdictional, however, and because "its violation may be excused in the interests of justice," DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993)), this Court has considered whether there is any "'clear error on the face of the record'" that precludes acceptance of Judge Wang's recommendation. Wingate v. Bloomberg, No. 11 Civ. 188 (JPO), 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note); see also Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.").

"Clear error is found only when, upon review of the entire record, the Court is left with 'the definite and firm conviction that a mistake has been committed.'" Grant v. Gonyea, No. 19CV743AJNDCF, 2022 WL 1173341, at *1 (S.D.N.Y. Apr. 20, 2022) (quoting Laster v. Mancini, No. 07-CV-8265 (DAB) (MHD), 2013 WL 5405468, at *2 (S.D.N.Y. Sept. 25, 2013)).

### B.    Rule 12(b)(1) Standard

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction) . . . ." Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Where subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject

matter jurisdiction exists.'" APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003)).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)[,] a district court may consider evidence outside the pleadings." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247 (2010) (citing Makarova, 201 F.3d at 113).

In reviewing a Rule 12(b)(1) motion, a court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).  The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." Id. A court may also "consider 'matters of which judicial notice may be taken.'" Greenblatt v. Gluck, No. 03-CV-597 (RWS), 2003 WL 1344953, at *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993)).

### C.    Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . , the court is to accept as true all facts alleged in the complaint[,]" Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish an entitlement to relief]." Iqbal, 556 U.S. at 678.

A "pro se complaint . . . [is] interpret[ed] . . . to raise the 'strongest [claims] that [it] suggest[s].'" Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)). "However, although pro se filings are read liberally and must be interpreted 'to raise the strongest arguments that they suggest,' a pro se complaint must still 'plead sufficient facts "to state a claim to relief that is plausible on its face."'" Wilder v. U.S. Dep't of Veterans Affairs, 175 F. Supp. 3d 82, 87 (S.D.N.Y. 2016) (citations omitted). Moreover, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact[,]'" Whitfield v. O'Connell, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)), and "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[,]'" even where a plaintiff is proceeding pro se. Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

II.    **ANALYSIS**

A.    **NYSHRL and NYCHRL Claims**

Judge Wang recommends that Suarez's NYSHRL and NYCHRL claims be dismissed as barred by the election of remedies doctrine.  (R&R (Dkt. No. 50) at 10)

1.    **Applicable Law**

Under New York law, "'the remedies of administrative review through the Human Rights Division or judicial review are mutually exclusive.'"  Moodie v. Fed. Reserve Bank of New York, 58 F.3d 879, 882 (2d Cir. 1995) (quoting Pan Am. World Airways, Inc. v. New York State Hum. Rts. Appeal Bd., 61 N.Y.2d 542, 548 (1984)) (emphasis in Moodie). "'[O]nce a complainant elects the administrative forum by filing a complaint with the Division of Human Rights, a subsequent judicial action on the same complaint is generally barred.'"  Id. at 883 (quoting Marine Midland Bank v. New York State Div. of Human Rights, 75 N.Y.2d 240, 245 (1st Dep't 1989)) (emphasis in Moodie).

The NYSHRL and the NYCHRL provide that an individual who files a complaint with either the New York State Division of Human Rights or the New York City Commission on Human Rights waives his or her right to sue in court.  In this regard, Section 297(9) of the NYSHRL states:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person ha[s] filed a complaint hereunder or with any local commission on human rights . . . provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

N.Y. Exec. Law § 297(9).

Similarly, Section 8-502(a) of the NYCHRL states:

> Except as otherwise provided by law, any person claiming to be a person aggrieved by an unlawful discriminatory practice as defined in chapter 1 of this title or by any act of discriminatory harassment or violence as set forth in chapter 6 of this title shall have a cause of action in any court of competent jurisdiction . . . unless such person has filed a complaint with the city commission on human rights or with the state division of human rights with respect to such alleged unlawful discriminatory practice or act of discriminatory harassment or violence.

N.Y.C. Admin. Code § 8-502(a).

"Thus, both the NYSHRL and the NYCHRL require dismissal of a suit in court if the complainant lodges a complaint with <u>either</u> the [New York State Division of Human Rights] or the [New York City Commission on Human Rights]. This bar applies in federal as well as state court." <u>Higgins v. NYP Holdings, Inc.</u>, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011) (emphasis in original) (citing <u>York v. Ass'n of the Bar of the City of New York</u>, 286 F.3d 122, 127 (2d Cir.2002)). "The election of remedies bar is jurisdictional, such that claims dismissed pursuant to it must be dismissed under Fed. R. Civ. P. 12(b)(1) rather than 12(b)(6)." <u>Id.</u> (citing <u>Moodie</u>, 58 F.3d at 882). "The election of remedies bar also precludes consideration of any claim – whether brought under the NYSHRL or the NYCHRL – arising out of the same incident on which [a plaintiff's] [New York State Division of Human Rights] complaint was based." <u>Id.</u> at 188. Accordingly, a plaintiff's claims are barred "if they are based on the same operative events he presented to the [New York State Division of Human Rights]." <u>Id.</u> at 189 (citing <u>Jackson v. New York State Dep't of Labor</u>, 709 F. Supp. 2d 218, 224-25 (S.D.N.Y. 2010)).

### 2.    <u>Analysis</u>

In concluding that Suarez's NYSHRL and NYCHRL claims are barred by the election of remedies doctrine, Judge Wang incorrectly treats this issue as arising under Fed. R. Civ. P. 12(b)(6). (R&R (Dkt. No. 50) at 7-8) As discussed above, "'[t]he election of remedies bar is jurisdictional, such that claims dismissed pursuant to it must be dismissed under Fed. R.

Civ. P. 12(b)(1) rather than 12(b)(6).'" Williams v. City of New York, 916 F. Supp. 2d 517, 521

(S.D.N.Y. 2013) (quoting Higgins, 836 F.Supp.2d at 187).

Judge Wang also incorrectly describes the Complaint as "devoid of any mention

of any filings seeking administrative remedies." (R&R (Dkt. No. 50) at 9)  In reality, the

Complaint repeatedly references Suarez's New York State Division of Human Rights

complaints.  (See, e.g., Cmplt. (Dkt. No. 1) at 6) (in response to a question on the form complaint

asking whether plaintiff had filed a charge of discrimination with the U.S. Equal Employment

Opportunity Commission ("EEOC") or any other government agency, answering "yes" and

stating that "[a] charge was filed at the same time . . . with the New York Division of Human

Rights (NYDHR) . . . in Jan./February 2021"); (id. at 19) (referring to "NYSDHR Complaint");

(id. at 38) (noting that Suarez was awaiting a "determination from a Complaint filed [with the]

New York Division of Human Rights case no. 10210950"); (id. at 41) (referring to Suarez's

"case currently pending with the New York State Division of Human Rights"); (id. at 42)

(referring to "open NYSDHR case no.10210950")  In sum, Suarez's New York State Division of

Human Rights complaints are incorporated by reference in the Complaint, and thus may properly

be considered in connection with Defendants' motion to dismiss pursuant to Rule 12(b)(1).

As noted above, when subject matter jurisdiction is challenged, a plaintiff "bear[s]

the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction

exists.'" APWU, 343 F.3d at 623.  And "[i]n resolving a motion to dismiss for lack of subject

matter jurisdiction under Rule 12(b)(1)[,] a district court may consider evidence outside the

pleadings." Morrison, 547 F.3d at 170.

Here, Defendants have submitted copies of Suarez's Division of Human Rights

complaints as well as that agency's no probable cause determinations.  (See Bonaparte Decl., Ex.

A (Division of Human Rights Subm.) (Dkt. No. 26-1); id., Ex. B (Division of Human Rights

Determinations) (Dkt. No. 26-2))  And Defendants argue that Suarez's "NYSHRL and NYCHRL

claims should be dismissed with prejudice to the extent that they overlap with her [NY]SDHR

claims[,] because they are premised on the very same allegations she had unsuccessfully raised

in the prior [NY]SDHR proceeding": "a charge of disability discrimination (amended to include

harassment claims [in September 2021]) . . . alleging that DANY unlawfully denied her a

reasonable accommodation [given Suarez's] . . . . alleged heart, pulmonary, and shortness of

breath issues."  (Def. Br. (Dkt. No. 25) at 15)

   Suarez does not dispute that she filed the Division of Human Rights complaints.

(See Pltf. Opp. (Dkt. No. 46))  But Suarez says that she does not reference her Division of

Human Rights complaints in the Complaint as part of "an attempt to relitigate . . . , but [instead]

to establish that a proximate causal connection exists that may have contributed to being

separated from employment of 24 years as an act of disability discrimination unto itself or in

retaliation for having filed the NYSDHR complaint[s]."  (Id. at 2)

   Whatever Suarez's purpose in referencing her Division of Human Rights

complaints in her pleading, the election of remedies doctrine plainly bars her NYSHRL and

NYCHRL claims.  As discussed above, "both the NYSHRL and the NYCHRL require dismissal

of a suit in court if the complainant lodges a complaint with . . . the [New York State Division of

Human Rights]."  Higgins, 836 F. Supp. 2d at 187.  And, as Judge Wang finds, no exception to

the election of remedies doctrine applies here:  Suarez's Division of Human Rights complaints

were not dismissed for "administrative convenience, on the grounds of untimeliness, or on the

grounds that the election of remedies is annulled."  (N.Y. Exec. Law § 297(9); see also R&R

(Dkt. No. 50) at 10 (citing Williams, 916 F. Supp. 2d at 522-23); Bonaparte Decl., Ex. B

(Division of Human Rights Determinations) (Dkt. No. 26-2))  Instead, the Division of Human Rights rejected Suarez's claims on the merits, finding no probable cause.  (Bonaparte Decl., Ex. B (Division of Human Rights Determinations) (Dkt. No. 26-2))

Accordingly, Plaintiff's NYSHRL and NYCHRL claims will be dismissed without leave to amend.

## B.    Title VII and ADA Discrimination Claims

Judge Wang recommends that Suarez's Title VII and ADA discrimination claims be dismissed for failure to state a claim, because Suarez does not allege "that the Defendants are subject to the ADA, that she was in fact disabled under the ADA, [] that she suffered an adverse employment action under circumstances giving rise to an inference of disability discrimination," or that she was discriminated against on the basis of any characteristic protected by Title VII. (R&R (Dkt. No. 50) at 12-14)  Judge Wang also recommends that leave to amend be granted only as to Plaintiff's ADA disability discrimination claim.  (Id. at 18)

### 1.    Exhaustion of Administrative Remedies and Timeliness

#### a.    Applicable Law

"Title VII and the ADA require[] a plaintiff to first exhaust her administrative remedies before filing suit in federal court." Anderson v. City of New York, 712 F. Supp. 3d 412, 425 (S.D.N.Y. 2024) (citing 42 U.S.C. § 2000e-5(e); 42 U.S.C. § 12117(a); Williams v. New York City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006)).  "Exhaustion requires timely filing of charges with the EEOC and obtaining notice of the right to sue." Id. (citations omitted).

"A Title VII or ADA claim is time-barred if the plaintiff does not file a charge with the EEOC 'within three hundred days after the alleged unlawful employment practice occurred.'" Atherley v. New York City Dep't of Educ., No. 23-CV-383 (JGLC), 2024 WL

1345741, at *11 (S.D.N.Y. Mar. 29, 2024) (quoting <u>Duplan v. City of N.Y.</u>, 888 F.3d 612, 621

(2d Cir. 2018)). "A plaintiff who asserts claims under Title VII [or] the ADA . . . must file suit

within ninety days of receiving a right-to-sue letter from the agency." <u>Karupaiyan v. Experis US</u>

<u>Inc.</u>, No. 21 CIV. 4675 (LGS), 2024 WL 1119476, at *3 (S.D.N.Y. Mar. 14, 2024) (citing 42

U.S.C. § 2000e-5(f)(1) (Title VII) and 42 U.S.C. § 12117(a) (ADA)).

"The failure to exhaust administrative remedies 'should be treated as an

affirmative defense, since statutes of limitation typically function as affirmative defenses in

federal litigation.'" <u>Kirk v. Mount Vernon City Sch. Dist.</u>, No. 23-CV-7441 (CS), 2024 WL

3794591, at *4 (S.D.N.Y. Aug. 13, 2024) (quoting <u>Hardaway v. Hartford Pub. Works Dep't</u>, 879

F.3d 486, 491 (2d Cir. 2018)). "As an affirmative defense, a defendant bears the burden to plead

and prove it, and the defense may be properly considered 'where the circumstances are

sufficiently clear on the face of the complaint and related documents as to make the time-bar

ruling appropriate on a motion to dismiss.'" <u>Id.</u> (internal citations omitted) (quoting <u>Doe v. Nat'l</u>

<u>Ramah Comm'n, Inc.</u>, No. 16-CV-6869, 2018 WL 4284324, at *4 (S.D.N.Y. Sept. 7, 2018)).

**b.    <u>Analysis</u>**

In concluding that Suarez has exhausted her administrative remedies for purposes

of her Title VII and ADA claims, Judge Wang acknowledges that Suarez has submitted a

September 22, 2022 "Right to Sue letter from the EEOC."[10]  (R&R (Dkt. No. 50) at 10) (citing

---

[10]  As described above, Suarez filed complaints with the New York State Division of Human
Rights.  However, "'[i]n New York, a charge of discrimination may be filed with either the
EEOC or the New York State Division of Human Rights.  Moreover, based upon a worksharing
agreement between the EEOC and the [New York State Division of Human Rights], charges
received by the Human Rights Division are automatically deemed dual-filed with the EEOC.'"
<u>Moore v. City of New York</u>, No. 15 CIV. 4578 (KPF), 2016 WL 3963120, at *2 n.3 (S.D.N.Y.
July 21, 2016) (quoting <u>Campbell v. County of Onondaga</u>, No. 5:04-CV-1007 (NAM) (GHL),
2009 WL 3163498, at *11 (N.D.N.Y. Sept. 29, 2009)).  Accordingly, after Suarez filed her

Dkt. No. 3 at 5-6)  As to timeliness, Judge Wang finds that the Complaint was received by this

District's Pro Se Office on December 22, 2022 – within 90 days of the issuance of the Right to

Sue letter.  (Id.) (citing Cmplt. (Dkt. No. 1))  This Court finds no clear error in these

determinations.  As to whether Suarez filed her Division of Human Rights complaints within the

requisite 300 days of the alleged unlawful employment practices, Defendants have not argued to

the contrary.  (See Def. Br. (Dkt. No. 25) at 13)  Accordingly, Suarez's Title VII and ADA

claims will not be dismissed as time-barred at this stage of the proceedings.

### 2.    ADA Disability Discrimination Claim

Judge Wang recommends that Suarez's ADA disability discrimination claim be

dismissed for failure to state a claim, with leave to amend.  (R&R (Dkt. No. 50) at 13, 18)

### a.    Applicable Law

Under the ADA, an ADA plaintiff must plead facts demonstrating that he or she

suffers from a "disability": i.e., a "physical . . . impairment . . . that substantially limits one or

more [of plaintiff's] major life activities."  42 U.S.C. § 12102(1)(A); see Hamilton v.

Westchester Cnty., 3 F.4th 86, 92 (2d Cir. 2021) (same).  Major life activities include "caring for

oneself," "performing manual tasks," "walking," and "working."  42 U.S.C. § 12102(2)(A).  The

"substantial-limitation requirement in the definition of 'disability' is not an exacting one."

Woolf v. Strada, 949 F.3d 89, 94 (2d Cir. 2020) (citing ADA Amendments Act, Pub. L. No. 110-

325, § 2(b), 122 Stat. 3553, 3554 (2008)).  When the major life activity involved is "working[,]"

however, a plaintiff's "'inability to perform a single, particular job does not constitute a

substantial limitation.'"  Id. (quoting Cameron v. Cmty. Aid For Retarded Child., Inc., 335 F.3d

---

complaints with the Division of Human Rights, the EEOC "adopted the findings of the [New
York State Division of Human Rights]" and issued Suarez a Right to Sue letter.  (Dkt. No. 3 at 5)

60, 65 (2d Cir. 2003)). Plaintiff instead "must show that the limitation affects the ability to perform a class . . . or broad range of jobs." 29 C.F.R. § 1630.

ADA disability discrimination claims may be premised "both on adverse employment actions and on failures to accommodate." McMillan v. City of New York, 711 F.3d 120, 126 (2d Cir. 2013). Where a plaintiff proceeds on a theory of adverse employment action, she must plead facts demonstrating that "(1) [her] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of [her] disability." See Woolf, 949 F.3d at 93.

"To make out a prima facie disability discrimination case based upon a failure to accommodate, a plaintiff must establish that: '(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" Tafolla v. Heilig, 80 F.4th 111, 118 (2d Cir. 2023) (quoting McBride v. BIC Consumer Prod. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009)).

### b. **Analysis**

In concluding that Suarez has not stated a claim for ADA disability discrimination, Judge Wang finds that she has not adequately pled that she suffers from a disability. "At best, [Suarez] has alleged that she experienced chronic 'shortness of breath' and hypertension, and, as of October 14, 2020, did not have a clear diagnosis."[11] (R&R (Dkt. No.

---

[11] Judge Wang also finds that Suarez did not state "that she could perform the essential functions of her job with the reasonable accommodation she claimed, i.e., working from home," because "[w]hile she claims that her job duties could be accomplished by phone and email, she has also

50) at 13) (citing Bonaparte Decl., Ex. A (Division of Human Rights Subm.) (Dkt. No. 26-1) at 21)

In the Complaint, Suarez alleges that she suffers from an "ongoing, chronic respiratory health status" that puts her "at an increased risk for severe illness from Covid-19." (Cmplt. (Dkt. No. 1) at 10) "[I]n August 2020 . . . , [she] began to suffer cardiac and respiratory symptoms" such that "[h]er doctors specifically advised her not to take public transit or go into a crowded space, such as her workspace at DANY, which was configured such that many employees worked at desks in a large, shared room." "[I]n June 2021, [she] received a diagnosis of respiratory failure[,]" at which time "her doctors reiterated that she was to severely limit her time in public, as a potential COVID-19 infection would have a more devastating effect on her due to her medical condition." (Pltf. Opp. (Dkt. No. 46) at 12-13)[12]

As discussed above, however, for purposes of the ADA, a plaintiff must plead facts showing that her "physical . . . impairment . . . substantially limits one or more [of her] major life activities." 42 U.S.C. § 12102(1)(A). Moreover, "[i]t is well-established that a plaintiff must do more than assert 'conclusory statements' to adequately assert a substantial limitation." Dominguez v. Bd. of Educ. of Yonkers City Sch. Dist., No. 23 CIV. 2460 (NSR), 2024 WL 3427217, at *5 (S.D.N.Y. July 16, 2024). Suarez's assertion that "a potential COVID-

_____

asserted that she experienced 'professional isolation and alienation' and that she 'experienced an unusual amount of computer connectivity issues when working remotely (unlike [her] colleagues).'" (R&R (Dkt. No. 50) at 13) (quoting Cmplt. (Dkt. No. 1) at 9, 18-22) This Court construes these allegations as evidence of retaliation, and not as evidence that Suarez could not perform the essential duties of her job with a reasonable accommodation.

[12] "When analyzing a pro se pleading, a court may . . . consider factual allegations contained in the plaintiff's opposition papers and other court documents" where those allegations are consistent with, and expand upon, allegations pled in the complaint. Vlad-Berindan v. MTA New York City Transit, No. 14-CV-675 RJS, 2014 WL 6982929, at *3 n.1 (S.D.N.Y. Dec. 10, 2014).

19 infection would have a more devastating effect on her due to her medical condition" (Pltf. Opp. (Dkt. No. 46) at 12-13), is too vague and conclusory to adequately assert a substantial limitation on one or more of her major life activities.  See Dominguez, 2024 WL 3427217, at *1-5 (finding that ADA disability was not adequately pled where plaintiff alleged that his co-morbidities placed him at high risk of severe illness or death if he contracted COVID-19; plaintiff's allegations found vague and conclusory, given his failure "to detail the nature and severity of the impairment, its duration or expected duration, and the existence of any actual or expected permanent or long-term impact"); Earl v. Good Samaritan Hosp. of Suffern NY, 625 F. Supp. 3d 292, 307 (S.D.N.Y. 2022), aff'd, No. 22-2505-CV, 2023 WL 8708417 (2d Cir. Dec. 18, 2023) (summary order) (plaintiff failed to plausibly allege that he was disabled, despite asserting "his particular vulnerability to contract COVID-19 . . . with potentially severe consequences," because "'it is the nature of the ordinary limitations – not the severity of the consequences if a plaintiff fails to follow necessary treatment – that determines whether a limitation on a major life activity is substantial'") (quoting Krikelis v. Vassar Coll., 581 F. Supp. 2d 476, 485 (S.D.N.Y. 2008)).

This Court finds no clear error in Judge Wang's determination that Suarez does not adequately plead a disability for purposes of her ADA disability discrimination claim. Accordingly, her ADA disability discrimination claim will be dismissed.[13]

---

[13]  Given Plaintiff's failure to plead a disability, her ADA claim fails whether premised on a failure to promote, constructive discharge, or hostile work environment theory of liability.  (See Cmplt. (Dkt. No. 1) at 5) (checked boxes alleging that Defendants "did not promote me"; "harassed me or created a hostile work environment"; and caused "constructive discharge result[ing] in the loss of medical health insurance")

3.    **Title VII Employment Discrimination Claim**

Judge Wang recommends that Suarez's Title VII employment discrimination claim be dismissed for failure to state a claim.  (R&R (Dkt. No. 50) at 14)

a.    **Applicable Law**

To state a prima facie case of discrimination under Title VII, a plaintiff must plead facts showing "'(1) that [s]he belonged to a protected class; (2) that [s]he was qualified for the position [s]he held; (3) that [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.'"  Sassaman v. Gamache, 566 F.3d 307, 312 (2d Cir. 2009) (quoting Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008)).  To survive a motion to dismiss, a plaintiff must plausibly allege that her "race, color, religion, sex, or national origin was a motivating factor in the employment decision."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 86 (2d Cir. 2015).  A plaintiff's factual allegations "need only give plausible support to a minimal inference of discriminatory motivation."  Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015).

b.    **Analysis**

In concluding that the Complaint does not adequately allege a Title VII employment discrimination claim, Judge Wang finds that Suarez "complain[s] only that she was denied the ability to work from home on the basis of her alleged disability.  She makes no mention of her race, color, religion, or national origin, nor does she allege discrimination on any of these bases."  (R&R (Dkt. No. 50) at 14)  And while Suarez's "sex, female, is discernable from the Complaint," she "does not assert discrimination on the basis of her sex."  (Id.)

This Court agrees that the Complaint does not adequately plead a Title VII discrimination claim, because Suarez does not allege that she was discriminated against on the basis of any characteristic protected by Title VII.  (See Cmplt. (Dkt. No. 1); see also Vega, 801 F.3d at 86)  Accordingly, Suarez's Title VII discrimination claim (whether premised on a failure to promote, constructive discharge, or hostile work environment theory of liability) will be dismissed.

### C.    ADA and Title VII Retaliation Claims

Judge Wang recommends that Suarez's ADA and Title VII retaliation claims be dismissed for failure to state a claim.  (R&R (Dkt. No. 50) at 16)

### 1.    Applicable Law

To make out a prima facie case of retaliation under Title VII or the ADA, a plaintiff must allege facts that show "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'"  Littlejohn, 795 F.3d at 316 (quoting Hicks v. Barnes, 593 F.3d 159, 164 (2d Cir. 2010)) (addressing standard for retaliation claims under Title VII); Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (applying same analysis to retaliation claims under the ADA).

"Protected activity" for purposes of a retaliation claim is "'action taken to protest or oppose statutorily prohibited discrimination.'"  Natofsky v. City of New York, 921 F.3d 337, 354 (2d Cir. 2019) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000)).  "Complaining about general unfairness, unaccompanied by any indication that plaintiff's protected class status caused the unfairness, does not qualify as protected activity." Batiste v. City Univ. of N.Y., 16-CV-3358 (VEC), 2017 WL 2912525, at *10 (S.D.N.Y. July 7, 2017)

(citing, inter alia, Rojas v. Roman Cath. Diocese of Rochester, 660 F.3d 98, 107-08 (2d Cir. 2011)). But "'[r]equests for accommodation constitute protected activity under the ADA.'" Gomez v. NYHS Design Inc., 2022 WL 4284143, at *6 (S.D.N.Y. Sept. 16, 2022), report and recommendation adopted, 2022 WL 6175174 (S.D.N.Y. Oct. 6, 2022) (quoting Pacheco v. Park S. Hotel, LLC, 2014 WL 292348, at *4 (S.D.N.Y. Jan. 27, 2014)).

In the context of a retaliation claim, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Vega, 801 F.3d at 90 (Title VII) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)); see also Richards v. New York City Dep't of Educ., 2022 WL 329226, at *16 (S.D.N.Y. Feb. 2, 2022) (applying the same standard in the ADA context). "'This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination' and is not limited to discriminatory actions that affect the terms and conditions of employment." Richards, 2022 WL 329226, at *16 (quoting Vega, 801 F.3d at 90).

"[I]t is important[, however,] to separate significant from trivial harms" when analyzing a retaliation claim. Burlington, 548 U.S. at 68. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Id.

For purposes of pleading a retaliation claim, "[c]ausation can be sufficiently established through temporal proximity." Craven v. City of New York, No. 20-CV-8464 (ER), 2023 WL 3097434, at *5 (S.D.N.Y. Apr. 26, 2023) (citing Vega, 801 F.3d at 92). "Although 'temporal proximity alone will not be enough to support [a retaliation] claim on summary judgment,' it is sufficient at the pleading stage." Ahmad v. New York City Health & Hosps. Corp., No. 20 Civ. 675 (PAE), 2021 WL 1225875, at *27 (S.D.N.Y. Mar. 31, 2021) (internal

citation omitted) (quoting Huda v. New York City Health & Hosps. Corp., No. 19 Civ. 11556

(AJN), 2021 WL 1163975, at *8 (S.D.N.Y. Mar. 26, 2021)); see also Clark v. Jewish Childcare

Ass'n, Inc., 96 F. Supp. 3d 237, 262 (S.D.N.Y. 2015) (causation for purposes of an ADA

retaliation claim can be demonstrated through proof "'that the protected activity was closely

followed in time by the adverse action'") (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 217 (2d

Cir. 2001)). "There is no firm outer limit to the temporal proximity required, but most courts in

the Second Circuit have held that a lapse of time beyond two or three months will break the

causal inference." De Figueroa v. New York, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) (citing

Walder v. White Plains Bd. of Educ., 738 F. Supp. 2d 483, 503-04 (S.D.N.Y. 2010) (collecting

cases)).

        In the context of an ADA retaliation claim – even if a plaintiff is mistaken about

whether he suffers from a "disability" for purposes of the ADA – plaintiff may succeed in

pleading a retaliation claim if he plausibly alleges that he had a "'good faith, reasonable belief

that the underlying challenged actions of the employer violated [the ADA].'" Muller v. Costello,

187 F.3d 298, 311 (2d Cir. 1999) (quoting Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183

F.3d 155, 159 (2d Cir. 1999)); see also Teachout v. New York City Dep't of Educ., No. 04 CIV.

945 (GEL), 2006 WL 452022, at *13 n.20 (S.D.N.Y. Feb. 22, 2006) ("The fact that [plaintiff's]

accommodation request was related to an impairment – his diabetes – that is not a disability as

defined by the ADA does not render that request unprotected.  It is enough that [plaintiff] had a

good faith belief that his request and the underlying impairment were covered by the ADA.");

Rodriguez v. New York City Dep't of Educ., No. 1:21-CV-3561 (MKV), 2022 WL 4484576, at

*9 n.13 (S.D.N.Y. Sept. 26, 2022) ("As previously noted, the Complaint does not allege that

Plaintiff has an actual disability under the ADA.  However, this finding is not necessarily fatal to

the ADA retaliation claim because Plaintiff need not establish that she was disabled for this

claim to proceed. Instead, [to satisfy the first element of a <u>prima</u> <u>facie</u> ADA retaliation claim,]

Plaintiff must only allege that [] she possessed a good faith, reasonable belief that [her employer]

violated the ADA, and engaged in a protected activity by reporting that alleged violation in her

administrative charges. . . . ") (internal citations omitted).

"In order to bring Title VII retaliation claims, . . . the retaliation must occur as a

result of reporting discrimination based on a [characteristic protected by Title VII]." <u>Chacko v.</u>

<u>Off. of New York State Comptroller</u>, No. 20-CV-10697 (VEC), 2021 WL 5605063, at \*5 n.6

(S.D.N.Y. Nov. 30, 2021) (citing <u>Ramsy v. Marriot Int'l, Inc.</u>, 952 F.3d 379, 391 (2d Cir. 2020)).

## 2.    **Analysis**

Suarez contends that DANY retaliated against her by "placing [her] . . . on leave

and on a separate work schedule" beginning October 28, 2020, through a "misappl[ication of the]

FFCRA [and] to . . . punish [her], interfere with [her] work duties, and place [her] in financial

burden" after she submitted a reasonable accommodation request on October 26, 2020. (Cmplt.

(Dkt. No. 1) at 11, 20-21) According to Suarez, DANY's retaliation involved "[w]orkplace

disparities includ[ing] but . . . not limited to":

- "[p]rofessional isolation and alienation . . . result[ing] in the interference of union delegate activity";

- "[u]nreasonable withholding [of] permission to attend . . . trainings and/or similar events or submit time-sheets expeditiously";

- "[d]isp[r]oportionate monitoring of timekeeping and denial of overtime request";

- "[u]nreasonable pressure to complete task[s] while denied the ability to work a full-time schedule";

- "[i]nvasion of privacy concerns voiced to [Defendant Savur] <u>i.e.</u> personal medical documents viewed by all of Human Resource Department personnel via internal-office-portal in place";

- "an unusual amount of computer connectivity issues when working remotely (unlike my colleagues).  Thirty (30) separate incident[s] were identified and reported to unit supervisors and IT department";

- "failure of employer to respond to second [r]easonable accommodation request of June/2022";

- removing her from the DANY payroll at the end of September 2021, leading to an "interruption of direct deposit of wages as of Oct. 1, 2021";

- being "[d]ropped from medical/health coverage as of January 2022."

(Id. at 9)

In construing Suarez's retaliation claims, Judge Wang finds that she "may be claiming" that (1) "she was not permitted to work from home in late 2020 because she had previously complained of environmental health hazards in the office in 2016"; and (2) her Division of Human Rights claim, "filed on or around March 2021, and amended September 10, 2021 . . . 'may have contributed to being separated from [her] employment of 24 years. . . .'" (R&R (Dkt. No. 50) at 16) (quoting Pltf. Opp. (Dkt. No. 46) at 2)

As to Suarez's alleged complaints about environmental issues in 2016, those complaints do not provide any basis for a retaliation claim.  It is not plausible that she was retaliated against in October 2020 or thereafter for action she engaged in during 2016. Moreover, Suarez's complaints about environmental issues in 2016 do not implicate a disability or any protected characteristic under Title VII.  Accordingly, to the extent that Suarez's retaliation claims are premised on her 2016 complaints about environmental issues, those claims will be dismissed.

As to Suarez's claim that she was retaliated against because of her filing of the Division of Human Rights complaint in February 2021, Judge Wang finds that "the timing is illogical.  Defendants placed [Suarez] on FFCRA leave months before she filed her [Division of

Human Rights] complaint, and she has not pleaded any connection between her termination and the [Division of Human Rights] complaint."  (Id.)

As noted above, "requests for accommodation constitute protected activity under the ADA."  Gomez, 2022 WL 4284143, at *6 (internal quotations and citations omitted).  Here, Suarez alleges that she first requested an accommodation on October 26, 2020 (Cmplt. (Dkt. No. 1) at 11), and that she made a second reasonable accommodation request on June 29, 2021.  (Id. at 22; see also Bonaparte Decl., Ex. A (June 29, 2021 Reasonable Accommodation Req.) (Dkt. No. 26-1) at 69-70)

As to the retaliatory acts that Suarez claims that she suffered after requesting an accommodation, the requirement that Suarez use FFCRA leave on days that she was assigned to report to the office does not constitute an adverse action for purposes of a retaliation claim.  See Porter v. Donahoe, 962 F. Supp. 2d 491, 499 (E.D.N.Y. 2013) ("the rejection of [plaintiff's] requests for leave on the terms he demanded – either administrative, or leave without pay . . . , instead of sick leave and annual leave –" do not constitute adverse actions for purposes of a retaliation claim); cf. Evarts v. Quinnipiac Univ., No. 3:15-CV-1509 (CSH), 2018 WL 4845743, at *22 (D. Conn. Oct. 4, 2018) (placing injured plaintiff on FMLA leave, rather than modifying his work responsibilities, did not provide a basis for an ADA reasonable accommodation claim, because "[p]lacing Plaintiff on FMLA leave at that time was neither an adverse action nor a proven act of discrimination").

As to the other retaliatory acts alleged by Suarez, the timing of many of these events is not clear.  Suarez does allege, however, that DANY did not respond to her June 29, 2021 reasonable accommodation request; took her off payroll at the end of September 2021 and stopped the direct deposit of her wages beginning October 1, 2021; and terminated her medical

and health coverage in January 2022. (Cmplt. (Dkt. No. 1) at 9, 22) Each of these alleged

retaliatory actions took place after Suarez submitted her February 17, 2021 Division of Human

Rights complaint. This Court thus disagrees with Judge Wang's statement that, "to the extent

[Suarez] claims retaliation for filing the [Division of Human Rights] complaint, the timing is

illogical." (R&R (Dkt. No. 50) at 16)

   As to causation, as discussed above, "[c]ausation [in the context of pleading a

retaliation claim] can be sufficiently established through temporal proximity." Craven, 2023 WL

3097434, at *5. "[M]ost courts in the Second Circuit have held[, however,] that a lapse of time

beyond two or three months will break the causal inference." De Figueroa, 403 F. Supp. 3d at

157. Assuming arguendo that (1) DANY's failure to respond to Suarez's June 29, 2021

reasonable accommodation request; (2) the decision to take her off payroll and stop paying her

wages as of October 1, 2021; and (3) the January 2022 termination of Suarez's medical and

health coverage constitute adverse actions, the more than three-month gap between the

submission of Suarez's February 2021 Division of Human Rights complaint and these alleged

retaliatory actions is too long to permit an inference of retaliatory animus. See Wilson v.

JPMorgan Chase Bank, N.A., No. 20-CV-4558 (JMF), 2021 WL 918770, at *7 (S.D.N.Y. Mar.

10, 2021) ("[D]istrict courts in this Circuit have generally held that an interval of two to three

months is too long to support an inference of causation"); Graham v. Macy's, Inc., No. 14-CV-

3192 (PAE), 2016 WL 354897, at *9 (S.D.N.Y. Jan. 28, 2016) ("[C]ourts in this Circuit

generally hold that a gap longer than two months severs the inferred causal relationship."), aff'd,

675 F. App'x 81 (2d Cir. 2017); Ragin v. E. Ramapo Cent. Sch. Dist., No. 05 Civ. 6496 (PGG),

2010 WL 1326779, at *24 (S.D.N.Y. Mar. 31, 2010) ("[M]any courts in this circuit have held

that periods of two months or more defeat an inference of causation.").

As discussed above, however, on September 10, 2021, Suarez filed a new complaint against Defendants with the Division of Human Rights.  In that submission, Suarez reiterates her claims that she is suffering unlawful discrimination because DANY is forcing her to use her earned leave on days she is scheduled to work in-person, rather than properly accommodating her pulmonary and heart conditions by allowing her to work remotely. (Bonaparte Decl., Ex. A (Division of Human Rights Subm.) (Dkt. No. 26-1) at 48-50)  In addition, Suarez alleges that:  (1) on June 29, 2021, she submitted a second reasonable accommodation request to DANY, which confirmed receipt of the request but did not otherwise respond; (2) she was permitted to work remotely only one day per week in August 2021; and (3) despite submitting her timesheets for August 2021 in the normal fashion, her timesheets went unapproved, delaying her paychecks.  (Id. at 49)  Suarez further alleges that being scheduled to work remotely only one day per week in August 2021, and the failure to approve her timesheets, were retaliation for her submission of the February 17, 2021 Division of Human Rights complaint.  (Id.)  Suarez also attaches the doctor's notes from a June 5, 2021 office visit in which the doctor states that Suarez's "[r]espirations are labored."[14]  (Bonaparte Decl., Ex. A (June 5, 2021 Doctor's Note) (Dkt. No. 26-1) at 71)

Although Suarez repeats in her September 10, 2021 filing many of the allegations she made in her February 17, 2021 complaint, the Division of Human Rights treats her September 10, 2021 filing as a separate complaint, and later issued separate determinations as to each complaint.  (See Bonaparte Decl., Ex. B (Division of Human Rights Determinations) (Dkt. No. 26-2) at 1-6)  In any event, Suarez's September 10, 2021 filing with the Division of Human

---

[14]  As to Suarez's alleged heart condition, the doctor notes that "[h]er cardiologist has not identified any cardiac pathology."  (Bonaparte Decl., Ex. A (June 5, 2021 Doctor's Note) (Dkt. No. 26-1) at 73)

Rights "constitutes protected activity for the purposes of a retaliation claim," <u>Castro v. City of New York</u>, 24 F. Supp. 3d 250, 269 n.33 (E.D.N.Y. 2014), and necessitates another evaluation of temporal proximity for purposes of the causation analysis.

As discussed above, Suarez alleges that Defendants stopped paying her wages as of October 1, 2021 – three weeks after Suarez made her September 10, 2021 submission to the Division of Human Rights. This period of time is sufficient to demonstrate temporal proximity for purposes of a retaliation claim. <u>See Crawford v. Bronx Cmty. Coll.</u>, No. 22 CIV. 1062 (PGG) (SLC), 2024 WL 3898361, at *18 (S.D.N.Y. Aug. 21, 2024) ("A two-month period between protected activity and an adverse employment action is short enough to support an inference of retaliatory intent.").

In her September 10, 2021 Division of Human Rights submission, Suarez asserts that Defendants discriminated against her on the basis of her alleged disability: her heart[15] and pulmonary conditions. (<u>See</u> Bonaparte Decl., Ex. A (Division of Human Rights Subm.) (Dkt. No. 26-1) at 43-50) While, as noted above, Suarez has not adequately pled a disability under the ADA, this Court concludes that Suarez has plausibly alleged that she had a reasonable, good faith belief that she was engaging in protected activity under the ADA when she made the September 10, 2021 submission alleging disability discrimination. <u>See Weissman v. Dawn Joy Fashions, Inc.</u>, 214 F.3d 224, 234 (2d Cir. 2000) (for purposes of an ADA retaliation claim, "'[a] plaintiff need not establish that the conduct he opposed was actually a violation of the statute so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated th[at] law.' Thus, even if [plaintiff] has failed to

---

[15]  As discussed above, there is no evidence that Suarez suffered from a heart condition as of June 2021. (<u>See</u> Bonaparte Decl., Ex. A (June 5, 2021 Doctor's Note) (Dkt. No. 26-1) at 73) ("[Suarez's] cardiologist has not identified any cardiac pathology.").

prove that there was a violation of the ADA, the defendant may still have retaliated against [plaintiff] for engaging in protected conduct.") (quoting Sarno, 183 F.3d at 159) (internal citations omitted).

The Court concludes that Suarez has adequately pled a prima facie case of retaliation under the ADA premised on the following:  (1) her September 10, 2021 Division of Human Rights submission alleging disability discrimination, which constitutes protected activity, see Castro, 24 F. Supp. 3d at 269 n.33; (2) Defendants' knowledge of this protected activity (see Bonaparte Decl., Ex. A (Division of Human Rights Subm.) (Dkt. No. 26-1) at 34 (indicating that DANY received notice of Suarez's September 10, 2021 Division of Human Rights submission on September 21, 2021)); (3) Suarez's loss of wages as of October 1, 2021, which constitutes an adverse action for purposes of a retaliation claim, see Gaughan v. Rubenstein, 261 F. Supp. 3d 390, 420 (S.D.N.Y. 2017) ("[t]ermination and the withholding of wages are adverse acts for purposes of stating a retaliation claim"); and (4) causation demonstrated through temporal proximity, see Crawford, 2024 WL 3898361, at *18.  Accordingly, Defendants' motion to dismiss Suarez's ADA retaliation claim will be denied.

The outcome is different as to Suarez's Title VII retaliation claim.  Because Suarez had not alleged that she – at any point – complained about discrimination premised on a characteristic protected by Title VII, she has not adequately pled a Title VII retaliation claim. Chacko, 2021 WL 5605063, at *5 n.6.  Accordingly, Suarez's Title VII retaliation claim will be dismissed.

### D.    Whistleblower Protection Act Claim

In recommending that Suarez's Whistleblower Protection Act claim be dismissed (R&R (Dkt. No. 50) at 16), Judge Wang cites the same inaccurate "illogical timing" reasoning

discussed earlier.  (Id.)  This claim is nonetheless subject to dismissal, because "[t]he

[Whistleblower Protection Act] . . . applies only to federal employees."  Bota v. Hunter Coll.

City Univ. of New York, No. 21-CV-8977 (LLS), 2022 WL 179627, at *3 (S.D.N.Y. Jan. 19,

2022) (citing 5 U.S.C. § 2302).  Because it is undisputed that Suarez was employed by DANY, a

New York City municipal entity, her Whistleblower Protection Act claim will be dismissed.

### E.    FMLA Claims

Judge Wang recommends that Suarez's FMLA claims be dismissed for failure to

state a claim.  (R&R (Dkt. No. 50) at 16-17)

### 1.    Applicable Law

The FMLA entitles eligible employees to twelve weeks of unpaid leave every

year "[b]ecause of a serious health condition that makes the employee unable to perform the

functions of [her] position."  29 U.S.C. § 2612(a)(1)(D); see Sista v. CDC Ixis N. Am., Inc., 445

F.3d 161, 174 (2d Cir. 2006) (same).

The FMLA bars interference with the assertion of rights under the Act, and it

prohibits retaliation against employees who assert their rights under the Act.  See Woods v.

START Treatment & Recovery Ctrs., Inc., 864 F.3d 158, 166 (2d Cir. 2017).  The FMLA

"'makes it illegal for employers to:  (1) interfere with, restrain, or deny the exercise of or the

attempt to exercise, any right provided under the FMLA; or (2) discharge or in any other manner

discriminate against any individual for opposing any practice made unlawful by the FMLA,'"

and "'creates a private right of action to seek both equitable relief and money damages against

any employer' that 'interfere[s] with, restrain[s], or den[ies] the exercise of FMLA rights.'"

Stuart v. T-Mobile USA, Inc., No. 14 Civ. 4252 (JMF), 2015 WL4760184, at *3 (S.D.N.Y. Aug.

12, 2015) (quoting first <u>Smith v. Westchester Cnty.</u>, 769 F. Supp. 2d 448, 462 (S.D.N.Y. 2011) and then quoting <u>Nevada Dept. of Human Resources v. Hibbs</u>, 538 U.S. 721, 724-25 (2003)).

A plaintiff alleging an FMLA interference claim must plead facts demonstrating "[1] that [plaintiff] is an eligible employee under the FMLA; [2] that defendant is an employer as defined in the FMLA; [3] that [plaintiff] was entitled to leave under the FMLA; [4] that [plaintiff] gave notice to the defendant of her intention to take leave; and [5] that [plaintiff] was denied benefits to which she was entitled under the FMLA." <u>Wells v. Achievement Network</u>, No. 18 Civ. 6588 (KPF), 2021 WL 810220, at *12 (S.D.N.Y. Mar. 2, 2021) (quotation marks and citation omitted).

To make out a <u>prima facie</u> case of retaliation under the FMLA, "'a plaintiff must establish that: (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.'" <u>Graziadio v. Culinary Inst. of Am.</u>, 817 F.3d 415, 429 (2d Cir. 2016) (quoting <u>Donnelly v. Greenburgh Cent. Sch. Dist. No. 7</u>, 691 F.3d 134, 147 (2d Cir. 2012)).

### 2.    **Analysis**

In recommending that Suarez's FMLA interference claim be dismissed, Judge Wang finds that the Complaint does not plead facts showing that Suarez "intended or sought to take leave under the FMLA and that her request was denied. Indeed, [Suarez] alleges that she was forced to take leave (and exhaust her paid leave), rather than being given permission to work from home at all times, on days that she did not come to work in the office." (R&R (Dkt. No. 50) at 17)

In recommending that Suarez's FMLA retaliation claim be dismissed, Judge Wang finds that Suarez "has not asserted that she exercised her FMLA rights and suffered an adverse employment action because of that exercise. Rather, DANY's requirement that [Suarez] use paid leave in order to stay home appears to have been an attempt to accommodate or address her request to continue working from home due to her concerns about her pulmonary issues." (Id.)

This Court agrees that the Complaint does not plead facts showing that Suarez sought to exercise her rights under the FMLA. Because Suarez did not seek to exercise her rights under the FMLA, she cannot state a claim for FMLA interference or FMLA retaliation. See Wells, 2021 WL 810220, at *12; Graziadio, 817 F.3d at 429. Accordingly, her FMLA interference and retaliation claims will be dismissed.

### F.    Leave to Amend

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts "ha[ve] broad discretion in determining whether to grant leave to amend." Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000). "When a liberal reading of [a pro se] complaint gives any indication that a valid claim might be stated," the complaint "should not be dismiss[ed] without granting leave to amend at least once." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotations and citations omitted).

Leave to amend may properly be denied, however, in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191

(2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see Terry v. Inc. Vill. of

Patchogue, 826 F.3d 631, 633 (2d Cir. 2016) ("Although district judges should, as a general

matter, liberally permit pro se litigants to amend their pleadings, leave to amend need not be

granted when amendment would be futile.").

   Here, Judge Wang recommends that Suarez "be given one final opportunity to

replead only her disability discrimination claim." Judge Wang goes on to say that any "amended

complaint must allege facts to support her claims, including: (1) [i]dentifying her disability

under the ADA; (2) [i]dentifying the specific DANY employees who engaged in the allegedly

discriminatory acts; and (3) [i]dentifying and describing the specific acts by DANY employees

that constitute discriminatory acts." (R&R (Dkt. No. 50) at 18) (emphasis in original)

   This Court finds that amendment would be futile as to Suarez's (1) NYSHRL and

NYCHRL claims, because those claims are barred by the election of remedies doctrine; (2) Title

VII discrimination claim, because there is no suggestion in the Complaint that Suarez

experienced discrimination as a result of a characteristic protected under Title VII; (3) Title VII

retaliation claim, because there is no suggestion in the Complaint that Suarez was retaliated

against after reporting discrimination based on a characteristic protected by Title VII; (4)

Whistleblower Protection Act claim, because Suarez was not a federal employee; and (5) FMLA

interference and retaliation claims, because there is no suggestion in the Complaint that Suarez

sought to exercise her rights under the FMLA.

   As to Suarez's ADA disability discrimination claim, leave to amend is granted,

because it is not clear that any amendment would be futile.

## CONCLUSION

Judge Wang's R&R (Dkt. No. 50) is adopted as set forth above.  Defendants'
motion to dismiss (Dkt. No. 24) is granted in part and denied in part.  The motion is granted as to
all claims other than Suarez's ADA retaliation claim, as to which the motion is denied.  Plaintiff
may seek leave to amend as to her ADA disability discrimination claim.  Any motion seeking
leave to file an Amended Complaint will be filed by **April 25, 2025**.  The proposed Amended
Complaint will be attached as an exhibit to the motion.

The Clerk of Court is directed to terminate the motion (Dkt. No. 24).

Dated: New York, New York
       March 24, 2025

SO ORDERED.

Paul G. Gardephe
United States District Judge