UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNABELLE SUAREZ,

Plaintiff,

- against -

NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE, et al.,

Defendants.

**MEMORANDUM OPINION & ORDER**

22 Civ. 10855 (PGG) (OTW)

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Annabelle Suarez – a former Victim Notifications Specialist at the New York County District Attorney's Office – brings discrimination and retaliation claims under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (the "ADA") against the District Attorney's Office ("DANY"). (Am. Cmplt. (Dkt. No. 81))

On March 24, 2025, this Court granted in part and denied in part a motion to dismiss the Complaint.[1] (See Order (Dkt. No. 71) at 1-2) On April 25, 2025, Plaintiff filed the Amended Complaint. (Dkt. No. 81)

Defendant DANY now moves to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 89) For the reasons stated below, DANY's motion will be granted in part and denied in part.

---

[1] The page numbers of documents referenced in this opinion correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

## BACKGROUND

## I. FACTS[2]

Plaintiff Annabelle Suarez was employed by DANY as a Victim Notification Specialist at DANY's Manhattan offices. (Am. Cmplt. (Dkt No. 81) ¶¶ 11-12) Her designated workspace "was configured such that many employees worked at desks in a large, shared room." (Id. ¶ 13)

---

2 "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) and then Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

On a motion to dismiss, "a court may [also] take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." Evans v. N.Y. Botanical Garden, No. 02 Civ. 3591(RWS), 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) (holding that plaintiff's New York State Division of Human Rights complaint and the agency's resulting decision "constitute the public records of an administrative body, of which this Court may take judicial notice without converting the [Rule 12(b)(6)] motion into one for summary judgment" (citations omitted)). Here, this Court takes judicial notice of decisions issued by the New York State Division of Human Rights on September 24, 2021 and July 28, 2022. (See Vapynar Decl., Ex. C (September 24, 2021 Division of Human Rights Determination) (Dkt. No. 91-3); id., Ex. D (July 28, 2022 Division of Human Rights Determination) (Dkt. No. 91-4)) "[I]n deciding motions to dismiss in discrimination actions, courts regularly take notice of NYDHR filings and determinations relating to a plaintiff's claims." Vargas v. Reliant Realty, No. 13 Civ. 2341(PGG), 2014 WL 4446165, at *1 n.2 (S.D.N.Y. Sept. 9, 2014) (alteration in original) (quoting Reyes v. Fairfield Properties, 661 F. Supp. 2d 249, 255 n.1 (E.D.N.Y. 2009)).

### A. Suarez Requests a Remote Work Accommodation

In August 2020, Suarez sought medical treatment for newly onset "cardiac and respiratory symptoms." (Id. ¶ 12) Suarez's doctors ordered tests to determine what was causing her symptoms. (Id.)

During this period of testing, Suarez's doctors advised her to "severely curtail her time in public due to her vulnerability to respiratory illnesses, such as Covid-19." (Id.) Suarez's doctors specifically recommended that she avoid public transit and crowded spaces, including her office space at DANY's Manhattan office. (Id. ¶ 13) Suarez was not required to work in person at the time, as DANY had closed its offices due to the COVID-19 pandemic. (Id.)

In October 2020, Suarez submitted a reasonable accommodation request in anticipation of DANY requiring its employees to return to in-person work. (Id. ¶ 14) Suarez sought permission to work remotely when employees were directed to return to the office. (Id.) Suarez's submission included a form completed by her physician, Dr. Lynne Glasser, and accompanying medical records. (Bonaparte Decl., Ex. A (Dkt. No. 26-1) at 15, 18-23 (Medical Information Form))

In response to the accommodation request, DANY informed Suarez that she had been approved for leave under the Federal Family First Coronavirus Response Act ("FFCRA"). (Am. Cmplt. (Dkt. No. 81) ¶ 15)

Suarez subsequently attended an October 28, 2020 Zoom meeting with DANY's then-Equal Employment Opportunity Officer, Nitin Savur, and Human Resources Director, George Argyros. (Id.) During the Zoom meeting, Suarez noted that she had not sought FFCRA leave but had instead requested "a reasonable accommodation" – remote work – in light of her respiratory and cardiac symptoms. (Id.) Savur responded that the only "'accommodation'" Suarez would receive would be permission "to stay home and not work at all on days that she

was expected in the office, and that the days she did not work would be deducted from her earned leave time either as sick days, vacation days and/or comp time." (Id. ¶ 16) Suarez objected – stating that she was capable of working remotely – but Savur "informed her that this was DANY's decision and that it would not reconsider." (Id. ¶ 17)

**B. Suarez Files a Complaint with the New York State Division of Human Rights**

On February 17, 2021, Suarez filed a complaint with the New York State Division of Human Rights (the "Human Rights Division") alleging that DANY was unlawfully discriminating against her by forcing her to use sick leave, vacation time, or comp time when she was scheduled to work in person in the office. (See id. ¶ 18; see also Vapynar Decl., Ex. C (September 24, 2021 Division of Human Rights Determination) (Dkt. No. 91-3) at 2)

According to Suarez, shortly after she filed the February 17, 2021 Human Rights Division complaint, DANY began increasing the number of days she was scheduled for in-person work. (Am. Cmplt. (Dkt. No. 81) ¶ 18) Suarez was directed to report for in-person work three days a week, and to work remotely two days a week. (Id.) Because Suarez refused to report to DANY's offices for in-person work, she "was expected to finish a full week's worth of work in only two days." (Id.) Suarez asked to work extra hours on the two days she was permitted to work remotely, but DANY denied her request. (Id.)

In June 2021, Suarez "received a diagnosis of chronic respiratory failure." (Id. ¶ 19) Suarez's doctors advised her "to severely limit her time in public, as a potential COVID-19 infection would have a more devastating effect on her due to her medical condition." (Id.)

Suarez then submitted a second request to DANY for a reasonable accommodation. (Id. ¶ 21) This request included "further information about her condition that she had received since making her first request and specifically identified that she was diagnosed with chronic respiratory failure." (Id.) Her submission also included a form completed by her

physician – Dr. Robert Kaner – on May 6, 2021, and accompanying medical records from a May 5, 2021 appointment with Dr. Kaner. (Bonaparte Decl., Ex. A (Dkt. No. 26-1) at 49, 69-74 (Medical Information Form)) DANY confirmed that it had received Suarez's second reasonable accommodation request, but did not otherwise respond to her submission. (Am. Cmplt. (Dkt. No. 81) ¶ 21)

In August 2021, DANY began to schedule Suarez for one day of remote work and four days of in-person work per week. (Id. ¶ 22)

### C. Suarez Files an Amended Complaint with the New York State Division of Human Rights

On September 10, 2021, Suarez submitted an amended complaint to the Human Rights Division. (Id. ¶ 23; see also Bonaparte Decl., Ex. A (Dkt. No. 26-1) at 43-84 (September 10, 2021 Division of Human Rights Complaint) Suarez's amended Human Rights Division complaint details her June accommodation request, DANY's failure to respond, and the fact that DANY had restricted her to only one day of remote work per week. (Am. Cmplt. (Dkt. No. 81) ¶ 23)

On or about September 21, 2021, the Human Rights Division sent a copy of Suarez's amended Human Rights Division complaint to DANY. (Id. ¶ 24) Later that day, Nicole Ortsman-Dauer – then an Equal Employment Officer with DANY – scheduled a virtual meeting with Suarez for September 23, 2021 to discuss her request for a reasonable accommodation. (Id. ¶ 25) When Suarez tried to log-in to the meeting, she learned that it had been canceled. (Id.)

On September 24, 2021, the Human Rights Division issued a decision in which it made a finding of "no probable cause" concerning Suarez's February 17, 2021 Human Rights Division complaint. (See Vapynar Decl., Ex. C (September 24, 2021 Division of Human Rights

Determination) (Dkt. No. 91-3) at 2) ("After investigation . . . the Division has determined that there is NO PROBABLE CAUSE to believe that [DANY] has engaged in or is engaging in the unlawful discriminatory practice complained of." (emphasis in original))

**D. DANY Places Suarez on Leave**

On or about September 24, 2021, DANY notified Suarez that it had approved her request for a leave of absence and taken her off of its payroll. (Id. ¶ 26) "Ms. Suarez informed DANY that she did not request any such leave." (Id.)

According to the Amended Complaint,

> Ms. Suarez attempted to schedule a meeting with Mr. Arygos and her legal representative. DANY did not respond to this, nor did it respond to any of Ms. Suarez's attempts to contact it over the subsequent weeks.

(Id. ¶ 27)

To the extent that the Amended Complaint suggests that DANY did not respond in any fashion to Suarez's statement that she had not requested "any such leave," it contradicts email traffic that Suarez attached to the Complaint.

In a September 27, 2021 email to George Argyros – DANY's Director of Human Resources – Suarez forwards to Argyros an email stating that her request for a leave of absence has been approved. Suarez goes on to say, "Please be advised that I *have not requested or submitted* a leave of absence or any severance of employment from the New York County District Attorney's Office." (Cmplt. (Dkt. No. 1) 43-44 (emphasis in original))

Later that same day, Argyros responds as follows:

> My dear Annabelle after reviewing your weekly timesheets we understand that recently you are not submitting any hours of work.
>
> In an effort to preserve your health insurance and possibly any other important benefit to you, we are attempting to place you on Special Leave of Absence Coverage (SLOAC). As part of this process it is important that we get in touch

> with you to make sure you understand the SLOAC process and for you to be able to make additional decisions.
>
> Please call me with any additional question at 914-336-6284.

(Id. at 42-43)

In a September 28, 2021 email to Argyros, Suarez said the following:

> Thank you for your prompt response.
>
> Given the open NYSDHR case no.10210950 it is advisable to schedule a teleconference meeting. I would prefer that my legal advocate(s); Jeffrey L. Kreisberg, Esq. and/or Jill Mendelberg, Esq. be in attendance.
>
> As always, your kind attention is appreciated.

(Id. at 42)

An email later that day from Mendelberg to Argyros follows, in which Mendelberg writes that her "client does not wish to be placed on any involuntary leave of absence and can perform the duties of her position if her request for a reasonable accommodation of working from home is granted." (Id. at 41) The record does not contain any response from DANY to Mendelberg's email.

The Amended Complaint goes on to plead that "Ms. Suarez[] received no further wages from DANY" after the leave of absence email was sent. (Am. Cmplt. (Dkt. No. 81) ¶ 28)

"In January 2022, Ms. Suarez discovered that DANY had dropped her from the medical insurance that she had received through her job, thereby learning for the first time that DANY had terminated her employment." (Id. ¶ 29)

On July 28, 2022, the Human Rights Division issued a decision in which it made a finding of "no probable cause" concerning Suarez's September 10, 2021 amended Human Rights Division complaint. (See Vapynar Decl., Ex. D (July 28, 2022 Division of Human Rights Determination) (Dkt. No. 91-4) at 2-4 ("After investigation . . . the Division has determined that

there is NO PROBABLE CAUSE to believe that [DANY] has engaged in or is engaging in the unlawful discriminatory practice complained of." (emphasis in original)))

## II. PROCEDURAL HISTORY

### A. The March 24, 2025 Order Granting Defendants' Motion to Dismiss

The Complaint was filed on December 23, 2022, names DANY, Nitin Savur, Nicole Ortsman-Dauer, George Argyros, and Ina Chen as defendants,[3] and asserts discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the New York State Human Rights Law, and the New York City Human Rights Law. (Cmplt. (Dkt. No. 1) at 1) at 3-4) The Complaint also alleges interference and retaliation claims under the Family and Medical Leave Act of 1993, and a claim under the Whistleblower Protection Act of 1989. (Id. at 4, 6)

On January 26, 2023, this Court referred the case to Magistrate Judge Wang for general pretrial supervision. (Dkt. No. 8)

On July 26, 2023, Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). (July 26, 2023 Mot. to Dismiss (Dkt. No. 24))

On July 28, 2023, this Court referred Defendants' motion to Magistrate Judge Wang for a Report & Recommendation ("R&R"). (Dkt. No. 27) On March 19, 2024, Judge Wang issued an R&R recommending that Defendants' motion to dismiss be granted, and that leave to amend be granted only as to Plaintiff's ADA disability discrimination claim. (R&R (Dkt. No. 50) at 18)

---

[3] At all relevant times, Ortsman-Dauer, Savur, and Chen were Equal Employment Officers at DANY; Argyros was DANY's Director of Human Resources. (Am. Cmplt. (Dkt. No. 81) ¶¶ 15, 25 (Argyros, Ortsman-Dauer, and Savur); Cmplt. (Dkt. No. 1) at 2 (Chen))

On March 24, 2025, this Court adopted Judge Wang's R&R in part, and granted Defendants' motion to dismiss except as to Plaintiff's ADA retaliation claim. (Order (Dkt. No. 71) at 42)

With respect to Plaintiff's ADA discrimination claim, this Court found that she had not pled a disability within the meaning of the ADA, and thus failed to state a claim. (Id. at 23-26) In this regard, the Court ruled that Plaintiff must plead facts showing that her alleged respiratory failure diagnosis "substantially limits one or more [of her] major life activities." (Id. at 25 (citing 42 U.S.C. § 12102(1)(A))) This Court further concluded that Plaintiff's allegation that "'a potential COVID-19 infection would have a more devastating effect on her due to her medical condition,' . . . is too vague and conclusory to adequately assert a substantial limitation on one or more of her major life activities." (Id. at 25-26 (citations omitted))

### B. Filing of Amended Complaint and Subsequent Motion to Dismiss

On March 14, 2025, Judge Wang entered a stipulation and order granting Plaintiff leave to file an amended complaint. (Dkt. No. 80) The Amended Complaint was filed on April 25, 2025. (Am. Cmplt. (Dkt. No. 81))

The Amended Complaint names only DANY as a defendant, and asserts the following violations of the ADA: (1) discrimination based on failure to accommodate; (2) discrimination based on "disparate treatment/hostile work environment"; and (3) retaliation. (Id. ¶¶ 6-10, 30-42 (alterations omitted))

On July 29, 2025, Defendant DANY moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6), arguing that Plaintiff is (1) collaterally estopped from bringing this action; and (2) barred from bringing her claims because she did not bring an Article 78 proceeding within the statute of limitations for such proceedings. (July 29, 2025 Mot. to Dismiss

(Dkt. No. 89) at 1; Def. Br. (Dkt. No. 90) at 6-7) DANY also contends that the Amended Complaint fails to state a claim as to failure to accommodate, disparate treatment, and retaliation under the ADA. (Def. Br. (Dkt. No. 90) at 6-7)

On July 30, 2025, Suarez filed her opposition to Defendant's motion to dismiss. (Pltf. Opp. (Dkt. No. 92)) DANY filed a reply on August 12, 2025 in which it, inter alia, "withdraws the portion of its motion arguing that Plaintiff has failed to adequately plead the elements of an ADA retaliation claim." (See Def. Reply (Dkt. No. 93) at 5 n.1)

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint[,]" Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish an entitlement to relief]." Iqbal, 556 U.S. at 678.

## II. ANALYSIS

In seeking dismissal of the Amended Complaint, DANY contends Suarez's claims (1) are barred by collateral estoppel; (2) are barred by her failure to bring an Article 78 proceeding within the statute of limitations for such proceedings; and (3) do not contain sufficient factual allegations to meet the plausibility standard. (Def. Br. (Dkt. No. 90) at 6-7)

### A. Collateral Estoppel

DANY argues that Suarez's claims are barred by collateral estoppel, because they "are based on the same factual allegations that have already been decided in the previous matters before the [Human Rights Division]." (Id. at 13) According to DANY, Suarez should be estopped from bringing her ADA discrimination claims because the Human Rights Division concluded in its September 24, 2021 decision that Suarez's "purported disability was reasonably accommodated and she was not discriminated against on the basis of her disability." (Id. (citing Vapynar Decl., Ex. C (September 24, 2021 Division of Human Rights Determination) (Dkt. No. 91-3) at 2)) Defendant similarly asserts that Plaintiff's ADA retaliation claims should be dismissed because the Human Rights Division found – in its July 28, 2022 decision – "that Defendants did engage in a dialogue regarding her accommodation requests, and any delay in the processing of her timesheets was not retaliatory in nature." (Id. (citing Vapynar Decl., Ex. D (July 28, 2022 Division of Human Rights Determination) (Dkt. No. 91-4) at 2-4))

#### 1. Applicable Law

"The doctrine of collateral estoppel, which is also known as issue preclusion, bars a party from re-litigating in a second proceeding a factual or legal issue that has already been

decided against him in a prior proceeding." Ferring B.V. v. Serenity Pharms., LLC, 391 F. Supp. 3d 265, 281-82 (S.D.N.Y. 2019) (citations omitted). "Under the doctrine of collateral estoppel, 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" United States v. U.S. Currency in Amount of $119,984.00, More or Less, 304 F.3d 165, 172 (2d Cir. 2002) (quoting Schiro v. Farley, 510 U.S. 222, 232 (1994)). Defendants may raise collateral estoppel challenges via a motion to dismiss for failure to state a claim under Rule 12(b)(6). Bd. of Managers of 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs., Inc., 652 F. Supp. 2d 463, 470 (S.D.N.Y. 2009) (citing Sassower v. Abrams, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993)).

In certain circumstances, collateral estoppel requires federal courts to give preclusive effect to determinations made by state administrative agencies. See Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 728 (2d Cir. 2001) (discussing the application collateral estoppel to state agency decisions). For example, "[i]t is well established that judicial affirmance of an administrative decision is entitled to preclusive effect." Kremer v. Chemical Constr. Corp., 456 U.S. 461, 480 n.21 (1982) (citations omitted).

"While unreviewed factual determinations of state agencies may be given preclusive effect in federal court, University of Tennessee v. Elliott, 478 U.S. 788, 799 (1986), this is not so in all circumstances[] . . . ." Akwesi v. Uptown Lube & C/W, Inc., No. 07 Civ. 335(NRB), 2007 WL 4326732, * 3 (S.D.N.Y. Dec. 7, 2007) (emphasis and footnote omitted). "[T]he threshold question that must be answered is whether, in enacting the [statute authorizing the relevant cause of action], Congress explicitly or implicitly limited the preclusive effect to be given to the determinations of state administrative agencies." Kosakow, 274 F.3d at 728 (citing Elliott, 478 U.S. 482-85). Put differently, the analysis turns on whether preclusion based on a

state agency determination "would be consistent with Congress' intent in enacting [the statute authorizing the relevant cause of action]." Elliott, 478 U.S. at 796. If Congress intended to restrict the preclusive effect of state agency decisions with respect to claims brought under a particular Federal statute, that Congressional intent must be honored by Federal courts. See id. Absent evidence of such Congressional intent, "federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Id. at 799

**2. Analysis**

In Elliott, the Supreme Court "held that Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." Elliott, 478 U.S. at 796 (footnote omitted). Because "state administrative proceedings are entitled to the same preclusive effect in the ADA context and the Title VII context," Volpe v. N.Y.C. Dep't of Educ., 195 F. Supp. 3d 582, 598 (S.D.N.Y. 2016) (citing Joseph v. Athanasopoulos, 648 F. 3d 58, 64 n.6 (2d Cir. 2011)), courts have concluded that "state administrative proceedings not reviewed by state court[s] do not have preclusive effect on an ADA claim." Dipinto v. Westchester County, No. 18-CV-793 (KMK), 2019 WL 4142493, at *5 (S.D.N.Y. Aug. 30, 2019) (citations and quotation marks omitted). Accordingly, "an unreviewed NYSDHR decision is not binding on a trier of fact in an ADA action." Cortes v. MTA N.Y.C. Transit, 802 F.3d 226, 232 (2d Cir. 2015); see also Kosakow, 274 F.3d at 735 ("[T]o the extent [plaintiff's] employment discrimination claims were based on the ADA, the determinations of [the New York State Division of Human Rights] would have had no effect on subsequent federal litigation." (citations omitted)); Ferraro v. N.Y.C. Dep't of Educ., 752 F. App'x 70, 73 (2d Cir. 2018) ("[A]s to certain federal civil rights claims, including those brought under Title VII and the ADA, there is an

additional prerequisite: We give preclusive effect only to a state agency's findings that have been judicially reviewed." (citations omitted)).

Because the Human Rights Division decisions at issue here were not reviewed by state courts, the findings set forth in those decisions are not entitled to collateral estoppel effect. Accordingly, DANY's motion to dismiss arguments are rejected to the extent they are premised on collateral estoppel.

**B. Article 78**

DANY argues that Suarez's ADA claims should be dismissed because she did not file an action pursuant to Article 78 of the New York Civil Practice Law and Rules. And according to DANY, any Article 78 proceeding would now be time-barred. (See Def. Br. (Dkt. No. 90) at 6-7, 14 ("To the extent Plaintiff seeks to challenge Defendant's decisions with respect to Plaintiff's accommodation requests, Plaintiff's claims are also untimely under the four-month statute of limitations period for Article 78 proceedings."))

DANY contends that an Article 78 proceeding is the proper vehicle for reviewing "decisions with respect to Plaintiff's accommodation requests, rather than bringing this federal action[] . . . ." (Id. at 14) DANY further asserts that "the Second Circuit has previously limited a plaintiff's ability to bring a federal claim where it could have been raised in an Article 78 proceeding." (Def. Reply (Dkt. No. 93) at 9 (citing Kern v. Joyce, 857 F. App'x 691, 693 (2d Cir. 2021)))

In Purcell v. N.Y. Inst. of Tech.-Coll. of Osteopathic Med., 931 F.3d 59 (2d Cir. 2019), the Second Circuit considered whether a student attending a New York medical school – who was asserting claims of discrimination in violation of the ADA and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. – was required to bring those claims in an Article 78 proceeding. The court had no difficulty in concluding that plaintiff's federal claims could be heard in federal court, without regard to Article 78:

> Purcell has raised federal claims in federal court. "[A]bsent a 'plain indication to the contrary' we presume that 'the application of [a] federal act [is not] dependent on state law.'" Bakoss v. Certain Underwriters at Lloyds of London Issuing Certificate No. 0510135, 707 F.3d 140, 143 (2d Cir. 2013) (quoting Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 43 (1989)); see also Van Gemert v. Boeing Co., 553 F.2d 812, 813 (2d Cir. 1977) ("It is the source of the right . . . which determines the controlling law."). Aside from the statute of limitations issue we have just canvassed, there is no plain indication in the ADA or Title IX that either federal-court jurisdiction or the scope of a claim under those statutes is dependent on state law. To the contrary, both laws clearly lay out the standards for asserting a claim, see 20 U.S.C. § 1681; 42 U.S.C. § 12182, and both just as clearly apply to private colleges like NYIT. However strongly New York may feel about the need to defer to academic decision-making, and however justified its decision to funnel all related state claims into Article 78 proceedings may be, New York cannot "nullify a federal right or cause of action [it] believe[s] is inconsistent with [its] local policies." Haywood v. Drown, 556 U.S. 729, 736 (2009).

Id. at 64-65 (alterations and emphasis in original; footnotes omitted).

Kern v. Joyce, 857 F. App'x 691 (2d Cir. 2021) – cited by DANY (Def. Reply (Dkt. No. 93) at 9) – is not to the contrary. In that case, plaintiff had brought an Article 78 proceeding challenging the results of an administrative proceeding. Kern, 857 F. App'x at 692. After plaintiff lost in state court, she brought another lawsuit in federal court challenging the results of the administrative proceeding. Id. Applying res judicata, the Second Circuit ruled that the final judgment on the merits in state court barred plaintiff from bringing the federal due process claim that she could have raised in her state court action. Id. at 692-93 ("[T]he fact that

the prior proceeding was an Article 78 proceeding of an administrative determination does not foreclose the application of res judicata to [plaintiff]'s § 1983 claims." (citing Burka v. N.Y.C. Transit Auth., 32 F.3d 654, 658 (2d Cir. 1994))).

Applying Purcell here, this Court concludes that Suarez may bring her "federal claims in federal court" without first bringing an Article 78 proceeding in state court. Purcell, 931 F.3d at 64. "An available Article 78 remedy does not supplant federal remedies under the ADA or require an ADA plaintiff to bring [her] claims in state court." Dossous v. NYC Health & Hosps., 19-CV-3098 (MKB), 2020 WL 5752175, at *6 (E.D.N.Y. Sept. 25, 2020) (citing Purcell, 931 F.3d 59 at 64). Accordingly, DANY's motion to dismiss arguments are rejected to the extent they are premised on Suarez's failure to bring an Article 78 proceeding.

### C. Whether Suarez Has Alleged a Plausible ADA Disability Discrimination Claim

The Amended Complaint asserts ADA discrimination claims against DANY for (1) denial of reasonable accommodation; and (2) "disparate treatment/hostile work environment." (Am. Cmplt. (Dkt. No. 81) ¶¶ 30-38 (alterations omitted)) DANY contends that Suarez has failed to state an ADA discrimination claim under Rule 12(b)(6). (Def. Br. (Dkt. No. 90) at 15-18, 20-21)

#### 1. Applicable Law

ADA discrimination claims may be premised on a variety of theories, including "failure to make a reasonable accommodation," "disparate treatment," and hostile work environment. Fox v. Costco Wholesale Corp., 918 F.3d 65, 69 (2d Cir. 2019); Davis v. Shah, 821 F.3d 231, 260 (2d Cir. 2016) (citing Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009)).

To proceed on a failure to accommodate theory, an ADA plaintiff "must establish that: '(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer

covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" Tafolla v. Heilig, 80 F.4th 111, 118 (2d Cir. 2023) (quoting McBride v. BIC Consumer Prod. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009)).

To "establish a prima facie case of discrimination based on disparate treatment, [plaintiff] 'must show by a preponderance of evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.'" Fox, 918 F.3d at 71 (quoting McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013)).

An ADA plaintiff alleging a hostile work environment must show "'(1) that the harassment was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment," and (2) that a specific basis exists for imputing the objectionable conduct to the employer.'" Id. at 74 (quoting Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (alteration in original) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997))).

Under all of these theories, an ADA plaintiff must plead facts demonstrating that he or she suffers from a "disability." 42 U.S.C. § 12102(1)(A); see Hamilton v. Westchester County., 3 F.4th 86, 92 (2d Cir. 2021) (same). For Suarez "[t]o demonstrate that [s]he is a 'qualified individual with a disability,' [s]he must establish that [s]he has a physical or mental impairment and provide evidence that such impairment 'substantially limits one or more of [her] major life activities.'" Andino v. Fischer, 698 F. Supp. 2d 362, 378 (S.D.N.Y. 2010) (quoting Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 722 (2d Cir. 1994)); see also 42 U.S.C. §

12102(1)(A) (defining "disability"). Major life activities include "caring for oneself," "performing manual tasks," and "breathing." 42 U.S.C. § 12102(2)(A).

The "substantial-limitation requirement in the definition of 'disability' is not an exacting one." Woolf v. Strada, 949 F.3d 89, 94 (2d Cir. 2020) (citing ADA Amendments Act, Pub. L. No. 110-325, § 2(b), 122 Stat. 3553, 3554 (2008)). Nevertheless, "a plaintiff must do more than assert 'conclusory statements' to adequately assert a substantial limitation." Dominguez v. Bd. of Educ. of Yonkers City Sch. Dist., No. 23 Civ. 2460 (NSR), 2024 WL 3427217, at *5 (S.D.N.Y. July 16, 2024) (quoting Kelly v. N.Y. State Off. of Mental Health, 200 F. Supp. 3d 378, 393 (E.D.N.Y. 2016)). A claim that provides only "[v]ague, conclusory assertions without details on how a plaintiff's condition actually affects a major life activity" will not survive a motion to dismiss. Cain v. Mandl Coll. of Allied Health, No. 14 Civ. 1729 (ER), 2017 WL 2709743, at *4 (S.D.N.Y. June 22, 2017) (citation omitted).

"To determine whether an impairment 'substantially limits' a major life activity, a court may consider, inter alia, 'the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact.'" Williams v. Geiger, 447 F. Supp. 3d 68, 79 (S.D.N.Y 2020) (quoting Capobianco v. City of New York, 422, F.3d 57, 67 (2d Cir. 2005)).

**2. Analysis**

DANY contends that Suarez has not adequately pled that she suffers from a disability under the ADA, because the Amended Complaint "offers only a single, conclusory statement that her chronic respiratory failure diagnosis interferes with the major life activity of breathing." (Def. Br. (Dkt. No. 90) at 15-16 (citing Am. Cmplt. (Dkt. No. 81) ¶ 20))

The Amended Complaint alleges that

> [i]n or around August 2020, during the height of the Covid-19 Pandemic, Ms. Suarez began to suffer cardiac and respiratory symptoms that led her to seek medical treatment. While she was undergoing testing to determine the cause of these symptoms, her doctors recommended that she severely curtail her time in public due to her vulnerability to respiratory illnesses, such as Covid-19.
>
> Plaintiff's doctors specifically advised her not to take public transit or go into a crowded space, such as her workspace at DANY, which was configured such that many employees worked at desks in a large, shared room. . . .

(Am. Cmplt. (Dkt. No. 81) ¶¶ 12-13) The Amended Complaint further pleads that "in June 2021, Ms. Suarez received a diagnosis of respiratory failure[,] at which time "her doctors reiterated that she was to severely limit her time in public, as a potential COVID-19 infection would have a more devastating effect on her due to her medical condition." (Id. ¶ 19)

Suarez made these same allegations in the Complaint and in her opposition to Defendants' motion to dismiss the Complaint. (See Pltf. Opp. (Dkt. No. 46) at 12-13)[4] As this Court noted in its March 24, 2025 dismissal order, Suarez asserted that

> she suffers from an "ongoing, chronic respiratory health status" that puts her "at an increased risk for severe illness from Covid-19." (Cmplt. (Dkt. No. 1) at 10) "[I]n August 2020 . . . , [she] began to suffer cardiac and respiratory symptoms" such that "[h]er doctors specifically advised her not to take public transit or go into a crowded space, such as her workspace at DANY, which was configured such that many employees worked at desks in a large, shared room." "[I]n June 2021, [she] received a diagnosis of respiratory failure[,]" at which time "her doctors reiterated that she was to severely limit her time in public, as a potential COVID-19 infection would have a more devastating effect on her due to her medical condition." (Pltf. Opp. (Dkt. No. 46) at 12-13)

---

[4] In connection with Defendants' motion to dismiss the Complaint, this Court considered the allegations set forth in Suarez's opposition papers, because she was then proceeding pro se. (Order (Dkt. No. 71) at 25-26 ("'When analyzing a pro se pleading, a court may . . . consider factual allegations contained in the plaintiff's opposition papers and other court documents" where those allegations are consistent with, and expand upon, allegations pled in the complaint." (quoting Vlad-Berindan v. MTA New York City Transit, No. 14-CV-675 RJS, 2014 WL 6982929, at *3 n.1 (S.D.N.Y. Dec. 10, 2014))

(Order (Dkt. No. 71) at 25) The only difference between these allegations and those in the Amended Complaint is that the latter refers to Plaintiff's June 2021 diagnosis as "chronic respiratory failure." (Am. Cmplt. (Dkt. No. 81) ¶ 19; see Pltf. Opp. (Dkt. No. 46) at 12-13)

In the March 24, 2025 dismissal order, this Court held that these allegations do not suffice to adequately plead a disability within the meaning of the ADA. In so ruling, the Court rejected Plaintiff's argument that she alleged an ADA disability because her doctor advised her to stay out of public spaces:

> Suarez's assertion that "a potential COVID-19 infection would have a more devastating effect on her due to her medical condition" (Pltf. Opp. (Dkt. No. 46) at 12-13), is too vague and conclusory to adequately assert a substantial limitation on one or more of her major life activities. See Dominguez, 2024 WL 3427217, at *1-5 (finding that ADA disability was not adequately pled where plaintiff alleged that his co-morbidities placed him at high risk of severe illness or death if he contracted COVID-19; plaintiff's allegations found vague and conclusory, given his failure "to detail the nature and severity of the impairment, its duration or expected duration, and the existence of any actual or expected permanent or long-term impact"); Earl v. Good Samaritan Hosp. of Suffern NY, 625 F. Supp. 3d 292, 307 (S.D.N.Y. 2022), aff'd, No. 22-2505-CV, 2023 WL 8708417 (2d Cir. Dec. 18, 2023) (summary order) (plaintiff failed to plausibly allege that he was disabled, despite asserting "his particular vulnerability to contract COVID-19 . . . with potentially severe consequences," because "'it is the nature of the ordinary limitations – not the severity of the consequences if a plaintiff fails to follow necessary treatment – that determines whether a limitation on a major life activity is substantial'") (quoting Krikelis v. Vassar Coll., 581 F. Supp. 2d 476, 485 (S.D.N.Y. 2008)).

(Order (Dkt. No. 71) at 25-26)

In opposing DANY's motion to dismiss the Amended Complaint, Suarez again argues that she has sufficiently alleged an impairment posing a substantial limitation on a major life activity by asserting that she "received medical advice to stay out of public, crowded spaces." (Pltf. Opp. (Dkt. No. 92) at 13) But this Court has already considered this allegation and concluded that it does not suffice to establish a substantial limitation on a major life activity under the ADA. (Order (Dkt. No. 71) at 25-26)

Plaintiff has offered no reason why this Court should revisit its determination that the allegations discussed above are insufficient to state a disability under the ADA. Nor has she cited any authority suggesting that the medical advice she received is sufficient to demonstrate that she suffers from a condition that constitutes a substantial limitation on a major life activity under the ADA.

However, the Amended Complaint includes two new allegations that bear on whether Suarez's impairment "substantially limits one or more major life activities." See 42 U.S.C. § 12102(1)(A). First, as noted above, the Amended Complaint alleges that Suarez was diagnosed with "chronic respiratory failure" in June 2021, as opposed to mere "respiratory failure." (Compare Am. Cmplt. (Dkt. No. 81) ¶ 19, with Order (Dkt. No. 71) at 25 (citation omitted)) Second, the Amended Complaint alleges that "[c]hronic respiratory failure interferes with the major life activity of breathing." (Am. Cmplt. (Dkt. No. 81) ¶ 20)

Plaintiff argues that these new allegations suffice to establish a substantial limitation because "the nature and duration of 'chronic respiratory failure,' Plaintiff's diagnosis, is set forth in its name." (Pltf. Opp. (Dkt. No. 92) at 12-13)

"Not every impairment that affects an individual's major life activities is a substantially limiting impairment[, however.]" B.C. v. Mount Vernon Sch. Dist., 837 F.3d 152, 160 (2d Cir. 2016) (citations, quotation marks, alterations, and emphasis omitted). For that reason, an ADA plaintiff must plead that her impairment does more than "'merely affect major life activities'"; she must instead allege "'that any limitations are in fact substantial, not amounting to only a mere difference in conditions, manner, or duration.'" Id. (emphasis in original) (first quoting Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 870 (2d Cir. 1998); then Bartlett v. N.Y. State Bd. of Law Exam'rs, 226 F.3d 69, 80 (2d Cir. 1998)).

Accordingly, an ADA plaintiff cannot plead a substantial limitation by merely asserting that her impairment is a chronic condition. While "[t]he duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity," McSweeney v. Cohen, 776 F. Supp. 3d 200, 234 (S.D.N.Y. 2025) (quoting Norman v. NYU Langone Health Sys., 492 F. Supp. 3d 154, 163 (S.D.N.Y. 2020)), the fact that a condition is chronic is not dispositive. See Hamilton, 3 F.4th at 95 (remanding to consider whether, "putting aside the issue of duration, [plaintiff] failed to plausibly plead a qualifying disability"). Just as a temporary injury that is sufficiently severe may pose a substantial limitation, a chronic impairment may not pose such a limitation where the condition is not severe.

Indeed, courts in this Circuit regularly dismiss ADA discrimination claims premised on a chronic condition where the plaintiff has not pled facts demonstrating how the condition impairs major life activities. For example, in Dominguez v. Bd. of Educ. of Yonkers City Sch. Dist., Judge Román dismissed ADA discrimination claims premised on a plaintiff's atrial fibrillation and hypertension. No. 23 Civ. 2460 (NSR), 2024 WL 3427217, at *4-5 (S.D.N.Y. July 16, 2024). In so ruling, Judge Román found that plaintiff had not pled a substantial limitation. Plaintiff had instead "merely provide[d] conclusory statements about his condition without explaining how his impairments . . . significantly impacted his life activities." Id. at *5. Other courts in this Circuit have reached the same result when faced with conclusory allegations involving other chronic illnesses. See, e.g., Earl v. Good Samaritan Hosp. of Suffern NY, No. 22-2505-CV, 2023 WL 8708417 (2d Cir. Dec. 18, 2023) (summary order) ("Earl does not adequately allege that his chronic kidney disease constituted a disability . . . under the [ADA or Rehabilitation Act]."); McSweeney, 776 F. Supp. 3d at 234 (noting that alcoholism "is not a disability per se under the ADA")); Koonce v. Whole Foods Market Grp., Inc., 22 CV 10418

(VB), 2023 WL 8355926, at *4 (S.D.N.Y. Dec. 1, 2023) ("[P]laintiff fails plausibly to allege his diabetes-related incontinence is a disability under the ADA."); Langella v. Mahopac Cent. Sch. Dist., No. 18-cv-10023 (NSR), 2023 WL 2529780, at *3 (S.D.N.Y. Mar. 15, 2023) ("Plaintiff does not allege how, if at all, his hypertension or heart disease impacts a major life activity." (citations omitted)).

Here, the Amended Complaint alleges only that Suarez's chronic respiratory failure "interferes" with her breathing. (Am. Cmplt. (Dkt. No. 81) ¶ 20)) Plaintiff does not allege that this alleged interference is substantial, nor does she plead that she has a particularly severe case of chronic respiratory failure. See Williams, 447 F. Supp 3d at 79 (noting that the "'nature and severity of the impairment'" bears on whether an impairment presents a substantial limitation (quoting Capobianco, 422 F.3d at 67)). Nor does she provide "details on how her condition actually affects [the] major life activity" of breathing. See Cain, 2017 WL 2709743, at *4 (citation omitted). The Amended Complaint merely offers a conclusory statement that Suarez's respiratory condition has some effect on her breathing. But an ADA "plaintiff must do more than assert 'conclusory statements' to adequately assert a substantial limitation." Dominguez, 2024 WL 3427217, at *5 (quoting Kelly, F. Supp. 3d at 393)). In sum, Plaintiff's allegations – including her new assertion that her chronic respiratory failure condition interferes with her breathing – do not suffice to state a disability under the ADA.

This conclusion is supported by Suarez's own requests for a reasonable accommodation, which explicitly state that she suffers from "no significant limitation." (See Am. Cmplt. (Dkt. 81) ¶¶ 14, 21 (referencing Plaintiff's requests for accommodation))[5]

---

[5] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider . . . documents incorporated by reference in the complaint." United States ex rel. Foreman v. AECOM, 19 F.4th 85, 106 (2d Cir. 2021) (quoting DiFolco, 622 F.3d

Each of Plaintiff's requests for accommodation are accompanied by a "Request for Medical Information" form completed by one of her physicians. (See Bonaparte Decl., Ex. A (Dkt. No. 26-1) at 15, 18-21 (Request for Medical Information Form completed by Lynne Glasser, M.D.); id. at 49, 69-70 (Request for Medical Information Form completed by Robert Kaner, M.D.)) This form asks health care providers to "provide a detailed description of the specific physical and/or mental health restrictions/limitations affecting the patient's ability to perform certain tasks and engage in certain activities. Please describe how the impairment affects the patient's daily functioning." (Id. at 18-21, 69-70)

In the completed medical information forms submitted by Suarez to DANY, her physicians write that her impairments pose "no significant limitation." (See Bonaparte Decl., Ex. A (Dkt. No. 26-1) at 18-20 (Request for Medical Information Form completed by Lynne Glasser, M.D.); id. at 49, 69-71 (Request for Medical Information Form completed by Robert Kaner, M.D.)) For example, Dr. Lynne Glasser – who submitted a medical information form in connection with Plaintiff's October 2020 request for accommodation – states that Plaintiff "has chronic [shortness of breath], no significant limitations, has seen Dr. Kaner, pulmonary at [New York Hospital]." (See Bonaparte Decl., Ex. A (Dkt. No. 26-1) at 15, 21 (Request for Medical Information Form completed by Lynne Glasser, M.D.)) The second medical information form – completed by Dr. Robert Kaner and attached to Plaintiff's May 2021 request for accommodation – also states that Suarez "has chronic [shortness of breath], no significant limitation." (Id. at 69) In short, the medical documentation submitted by Plaintiff's doctors states that Suarez does not suffer from an impairment that significantly limits her major life activities.

---

at 111). Here, the Amended Complaint references Plaintiff's requests for accommodation. (Am. Cmplt. (Dkt. No. 81) ¶¶ 14, 21))

The Court concludes that the Amended Complaint does not plausibly assert that Suarez suffers from an impairment that constitutes a disability within the meaning of the ADA. Because Suarez does not adequately plead a disability for purposes of a disability discrimination claim under the ADA, her ADA disability discrimination claim will be dismissed.

**D. ADA Retaliation Claim**

In Defendant's moving brief, DANY seeks dismissal of Suarez's ADA retaliation claim for failure to state a claim. (See Def Br. (Dkt. No. 90) at 18-20) In Defendant's reply brief, however, DANY "withdraws the portion of its motion arguing that Plaintiff has failed to adequately plead the elements of an ADA retaliation claim." (Def. Reply (Dkt. No. 93) at 5 n.1) Accordingly, Suarez's ADA retaliation claim will proceed.

**E. Leave to Amend**

Although Suarez has not requested leave to re-plead, the Court has considered whether she should be given an opportunity to do so. Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts "'ha[ve] broad discretion in determining whether to grant leave to amend.'" United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 18 (2d Cir. 2016) (quoting Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000)). "Where the possibility exists that [a] defect can be cured," leave to amend "should normally be granted" at least once. Wright v. Ernst & Young LLP, No. 97 CIV. 2189 (SAS), 1997 WL 563782, at *3 (S.D.N.Y. Sept. 10, 1997), aff'd, 152 F.3d 169 (2d Cir. 1998) (citing Oliver Schs., Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991)).

Leave to amend may properly be denied, however, in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Williams v. Citigroup Inc., 659 F.3d 208, 213-14 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Leave to amend may also properly be denied "where a plaintiff does not request to amend her pleading." Hintermaier v. Equifax Info. Servs., LLC, No. 1:24-cv-09697 (ALC) (RFT), 2026 WL 82479, at *10 (S.D.N.Y. Jan. 12, 2026) (citing Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011)).

Here, the Court concludes that amendment as to Plaintiff's ADA discrimination claim would be futile. Suarez has previously been granted leave to amend, and her amendment did not cure the defect – identified by the Court – regarding the pleading of an ADA disability. Given this history – and the fact that Suarez's medical records indicate that she does not suffer from a condition that imposes a "significant limitation" – there is no reason to believe that further amendment would be productive. Suarez has also not sought leave to amend.

For all these reasons, leave to amend is denied.

## CONCLUSION

Defendant DANY's motion to dismiss (Dkt. No. 89) is granted in part and denied in part. The motion is granted as to Suarez's ADA discrimination claim, but is otherwise denied.

The Clerk of Court is directed to terminate Nitin Savur, Nicole Ortsman-Dauer, George Argyros, and Ina Chen as Defendants, and terminate the motion (Dkt. No. 89).

A Rule 16 conference in this matter is scheduled for October 1, 2026, at 2:00 p.m., in Courtroom 705 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. By September 24, 2026, the parties will file a joint letter and proposed case management plan, in accordance with this Court's Individual Rules of

Practice in Civil Cases.

Dated: New York, New York
September 11, 2026

SO ORDERED.

Paul G. Gardephe
United States District Judge